UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C. | Case No. 1:14-cv-209 |
| Plaintiff, | Judge J. Frederick Motz |
| vs. | |
| GRANT TOWNSHIP, | |
| Defendant. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
MOTION TO INTERVENE BY LITTLE MAHONING WATERSHED
AND EAST RUN HELLBENDERS SOCIETY, INC.**

Plaintiff, Pennsylvania General Energy Company, L.L.C. ("PGE"), by its undersigned counsel, submits this Brief in Opposition to Motion to Intervene by Little Mahoning Watershed and East Run Hellbenders Society, Inc.

**I.   INTRODUCTION AND FACTUAL BACKGROUND**

The Lower Mahoning Watershed (the "Watershed"), allegedly, and the East Run Hellbenders Society, Inc. (the "Hellbenders") (collectively, the "Intervenors") seek to intervene in the above-captioned matter to advocate in support of the validity of an ordinance adopted by Grant Township and known as the Community Bill of Rights Ordinance (the "Ordinance"). Incredibly, the Motion to Intervene seeks, apparently for the first time in American jurisprudence, for a condition of nature, in this case the Watershed, to intervene in a lawsuit.

The Watershed does not meet the definition of a "person" under the Federal Rules of Civil Procedure, and lacks the most fundamental capacities necessary to be a participant in the judicial process. The Watershed is neither an appropriate candidate for party status in a court of

law, nor feasibly represented. The Watershed obviously cannot consent to this intervention, cannot be a party to a lawsuit and cannot be provided the ethical protections represented parties are afforded by the Pennsylvania Rules of Professional Conduct.

As a result, the Motion to Intervene should be summarily denied for the Watershed. The Intervenors' Motion to Intervene should also be denied because, under clear Third Circuit precedent, Grant Township is presumed to adequately represent the Intervenors' interests, and the Intervenors have failed to overcome that presumption.

Grant Township passed the Ordinance targeted directly at PGE to stop PGE's lawful operations within the Township, including the injection of brine and other produced fluids resulting from natural gas exploration. The Ordinance seeks to protect rights purportedly held by the residents of Grant Township, including the alleged "right to self government," the "right to scenic preservation," and the "rights of natural communities and ecosystems." (Ordinance, § 2(a) – (d).)

The Hellbenders allegedly "formed in response to PGE's planned waste disposal injection well and residents' desire to exercise their right of local, community self-government to protect their health, safety, welfare, and natural environment." (Memorandum in Support of Motion to Intervene ("Motion to Intervene")), Docket No. 38, p. 5). The Hellbenders' proclaimed mission and purpose in forming is "to advance the rights of communities to protect their local environment and residents' health, safety, and welfare against corporate exploitation." (Motion to Intervene, Docket No. 38, p. 5). The Hellbender's board members organized to advocate for Grant Township's adoption of the Ordinance (*Id.*, p. 6), and the Hellbenders has the same goals and objectives in upholding the Ordinance as Grant Township.

Despite having the same objectives as Grant Township and seeking the same relief as Grant Township, the Intervenors seek to intervene in this lawsuit by alleging their interests are not protected by Grant Township's efforts. PGE requests that this Court deny the request to intervene because the Intervenors' interests are already adequately represented by Grant Township and any intervention is wholly unnecessary, unwarranted and superfluous. Further the same lawyers are representing Hellbenders as are representing Grant Township. Although the same lawyers purport to represent the Watershed, it is obvious that the Watershed has not approved of that representation and that those lawyers cannot meet their Pennsylvania ethical obligations to a client, since the lawyers cannot communicate with the Watershed or obtain consent for any legal positions.

## II.  ARGUMENT

### A.  Legal Standard.

A party is permitted to intervene as of right "when a party 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.'" *United States v. Territory of the Virgin Islands*, 784 F.3d 514, 519 (3d Cir. 2014); *see also* Fed R. Civ. P. 24(a). "A potential intervenor must satisfy four criteria to succeed on a motion pursuant to Rule 24(a)(2): '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) **the interest is not adequately represented by an existing party in the litigation**.'" *Id.* (emphasis added) (citations omitted). Each requirement must be met to intervene as of right. *Id.*

**B.    This Court Should Deny Intervention by the Watershed Because a Natural Condition is not a Proper Party to Litigation.**

The Intervenors' counsel claims that the Watershed should be a party to this lawsuit. This claim is spurious.

The definition of a watershed is "a line of hills or mountains from which rivers drain; a ridge between two rivers; the area of land that includes a particular river or lake and all the rivers, stream, etc., that flow into it." Merriam Webster Online Dictionary. A watershed is in essence a geographical area identified by science to have some hydrologic interrelation. A watershed lacks consciousness, intelligence, cognition, communicability, or agency. A watershed can neither recall nor forget; neither articulate nor remain silent; neither agree nor dispute. The Watershed cannot decide to intervene, cannot accept representation or engage with counsel as a client, and cannot appear in court or testify. It cannot knowingly participate in the adversarial system of justice.

Moreover, counsel for the Watershed cannot meet his ethical obligations if the Watershed is to be named a party. The Pennsylvania Rules of Professional Conduct require a lawyer to "abide by a client's decisions concerning the objectives of representation" and require the lawyer to "consult with the client as a means by which [the objectives of the representation] are to be pursued." Pa Rules of Professional Conduct, Rule 1.2(a). It is a bedrock of this profession and a direct ethical limitation that a lawyer can only "take such action on behalf of the client as is impliedly authorized to carry out the representation." *Id*. In addition, a lawyer is ethically obligated to perform a number of steps with clients, including consulting with the client, keeping the client informed of the matter, explaining a matter to the client, etc. *Id*. at Rule 1.4. It is apparent that the attorneys seeking to represent the Watershed, the Community Environmental Legal Defense Fund ("CELDF"), simply cannot meet its ethical obligations by claiming to

represent an object incapable of communication or decision-making. Could the Watershed have authorized CELDF's effort to intervene in this case? Of course not.

CELDF asserts that the Watershed "presently enjoys the 'right to exist, flourish, and naturally evolve," as well as the "right to clean air, water, and soil.' It's [sic] intervention is necessary to protect these rights, because PGE challenges the validity of the Ordinance that recognizes and protects these rights." (Motion to Intervene, Docket No. 38, p. 10.) Noticeably absent from the Brief is *any* case law support for their bold assertion that a natural conditon, such as a watershed, can be a party to a lawsuit. In fact, the Watershed's counsel admits that this is the first a lawyer has had the audacity to seek to have a watershed intervene as a party to a lawsuit. CELDF admits that the request for the Watershed to intervene represents "the first time, an ecosystem in the United States filed a motion to intervene in a lawsuit to defend its own rights to exist and flourish."
See http://www.celdf.org/downloads/PR_Ecosystems_File_Intervention_Grant_PA_111814.pdf.

The law does not support this misguided effort. In order to be a party to a lawsuit, the purported party must have the capacity to sue or be sued. Rule 17(b) of the Federal Rules of Civil Procedure identifies the situations in which the capacity to sue or be sued is determined. That capacity is limited to individuals, corporations and others where permitted by the law of the state where the court is located. The Watershed cannot meet these requirements. There are no reported decisions in which a natural resource has been permitted to be a party to a lawsuit. However, *Hawaiian Crow ('Alala) v. Lujan*, 906 F.Supp. 549 (D.Hawaii 1991) is an analogous case.

In *Lujan*, an endangered species of bird, the 'Alala, and several environmental groups filed a citizens suit against the Secretary of the Department of Interior and the Director of the

United States Fish and Wildlife Service alleging that the defendants failed in their statutory duty to protect the bird. *Id.* at 551. The defendants moved to dismiss and to delete the bird from the caption of the lawsuit arguing that a bird has no standing to sue. *Id.* The defendants also sought sanctions "on the ground that there is no authority for naming a bird as a plaintiff." *Id.* The defendants argued that the bird is not a "person" within the meaning of the Environmental Species Act (the "ESA") and that Federal Rule of Civil Procedure 17, which governs parties to an action, "speaks only to infants and incompetent persons, not birds." *Id.* The plaintiffs conceded that no court had addressed expressly whether an animal may constitute a "person" for purposes of the ESA's citizens suit provision. *Id.* at 552. The court held that "the plain language of Rule 17(c) and [the citizens' suit provision of the ESA] does not authorize the 'Alala to sue. It is clearly neither a 'person' as defined in Section 1532(13), nor an infant or incompetent person under Rule 17(c)." *Id.* The court further held that "All of the relief sought in this action can be obtained by the Audubon Societies, regardless whether the 'Alala itself remains a named plaintiff" and the "plaintiffs offer no explanation as to *why* the 'Alala must appear as a named plaintiff in this particular suit." *Id.* Accordingly, the court granted the defendants' motion to dismiss the endangered bird as a plaintiff in the action. *Id.*

The same result should be reached here. The Watershed offers no legal support for its absurd attempt to intervene as a party to this lawsuit. Clearly, if an animal is not considered a "person" under Rule 17, then a natural condition, such as a watershed, cannot be deemed to be a "person" with standing to sue. Indeed, who would testify on the Watershed's behalf if PGE served a corporate deposition notice pursuant to Rule 30(b)(6)? Who would make decisions about settlement? Who would pay PGE's damages or attorneys' fees after a finding of liability?

Quite simply, this circus-act of a move by CELDF should be summarily rejected and PGE should be permitted to recoup fees it incurred to respond to the spurious requested intervention.

      **C.    The Intervenors should not Be Permitted to Intervene as of Right under Rule 24(a) Because their Interests Are Already Adequately Represented by Grant Township.**

In addition, in order to assess the element of adequacy of the representation, the intervenor must demonstrate that its interests are *not* adequately represented by one of the existing parties to the action. "Representation is generally considered adequate if no collusion is shown between the representative and the opposing party, if the representative does not represent an interest that is adverse to the proposed intervenor, and if the representative has been diligent in prosecuting the litigation." *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 970, 973 (3d. Cir. 1982). "A presumption of adequacy attaches, however, 'if one party is a government entity charged by law with representing the interests of the applicant for intervention.'" *Virgin Islands*, 784 F.3d at 520 (citations omitted). "In such an instance, a potential intervenor can only overcome the presumption and thereby intervene by making a '**compelling showing** . . . to demonstrate why [the government's] representation is not adequate.'" *Id.* (citations omitted, emphasis added). Intervenors have not made the necessary compelling showing in this case.

In *Virgin Islands*, the intervenor's brief in support of intervention demonstrated a substantial overlap between his interests and those of the United States, which was already a party to the litigation. 784 F.3d at 521. Specifically, the Court noted the intervenor "extensively quotes from the United States' pleadings in this case." *Id.* "This reliance upon the United States' pleadings belie[d] [the intervenor's] argument that his interests diverge from those of the United States." *Id.* "To that end, [the intervenor's] interests not only overlap with those of the

United States, they are essentially identical." *Id.* The Court found unpersuasive the intervenor's argument that his interests diverged from those of the United States because he is the "exact constituent" the United States is attempting to protect and because the intervenor shares the same objective as the United States. *Id.* at 523. Notably, the Court held that the *Kleissler*[1] opinion (which is cited and relied upon heavily by the Intervenors) did not apply where the alleged "personal" and "parochial" views of the proposed intervenor actually align with the constitutional interests of the particular government agency. *Id.* at 524. Accordingly, the Third Circuit held that intervention was not appropriate. *Id.*

Similarly, in *ACRA Turf Club, LLC v. Zanzuccki*, 561 Fed.Appx. 219, 222 (3d Cir. 2014), the Third Circuit affirmed the District Court's decision to deny a motion to intervene because the intervenor's interest was adequately represented by the New Jersey Attorney General, who was an existing party to the litigation. *ACRA Turf Club* involved a Section 1983 claim asserting that certain amendments to New Jersey's Off-Track and Account Wagering Act violated the plaintiffs' rights under the United States Constitution. *Id.* at 220. In affirming, the Third Circuit noted the Attorney General is charged with defending the constitutionality of state statutes and that there was no indication that the Attorney General had not vigorously defended the statutory amendments. *Id.* at 222. "In this situation, 'a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with

---

[1] The Third Circuit in *Virgin Islands* distinguished the *Kleissler* decision because the proposed intervenors relied heavily on *Kleissler* in support of their motion to intervene. The Third Circuit held that "[the intervenor's] reliance upon *Kleissler* is misplaced because the proposed intervenors in that case all had a singular, direct financial stake in the underlying litigation that was necessarily in tension with the 'thicket of sometimes inconsistent [Forest Service] policies.'" *Virgin Islands*, 748 F.3d at 522. "The potential intervenors' financial interests were more limited and thus in tension with those of the government." *Id.* The Third Circuit found that a similar conflict did not exist in *Virgin Islands* where the intervenor relied almost exclusively upon the United States' allegations in defining the scope of his own. *Id.* Therefore, the intervenor and the United States shared the same goal, and the intervenor did not argue that any of the relief sought by the United States would be antithetical to his own personal interests. *Id.* Similarly, in the instant case, Hellbenders share the same goals as Grant Township and do not argue that any of the provisions of the Ordinance are antithetical to its members' personal interests. To the contrary, Hellbenders seek to uphold the Ordinance.

representing the interests of the absentee." *Id.* Moreover, the Attorney General and the intervenor had aligned interests: they both wanted the statutory amendments to be upheld. *Id.* Accordingly, the Third Circuit held that the District Court did not abuse its discretion in denying the motion to intervene. *Id.*

The Third Circuit has consistently held that representation is presumed adequate where the representative is a governmental entity charged with enforcing the challenged law, policy or practice. *See, e.g., Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976) ("[A] presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee. Where official policies and practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers."); *Point Pleasant Canoe Rental, Inc. v. Tinicum Twp.*, 110 F.R.D. 166, 168 (E.D.Pa. 1986) ("A party charged by law with representing the interests of the absent party—***such as a municipality or state with respect to its citizens***—is presumed to provide adequate representation") (emphasis added); *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) ("A party charged by law with representing the interests of the absent party will usually be deemed adequate to represent the absentee.").

In the instant case, the Intervenors have failed to meet their burden of showing that their interests are not adequately represented by Grant Township. As set forth above, where the representative is a government entity, such as a municipality like Grant Township, the representation is presumed to be adequate. The crux of this lawsuit is the challenge to the constitutionality and enforceability of the Ordinance. Grant Township adopted the Ordinance, is charged with enforcing the Ordinance, and is vigorously defending the Ordinance in this lawsuit.

It is unlikely that anyone is better situated to defend the Ordinance than the governmental entity responsible for its adoption and enforcement, especially since CELDF represents Grant Township, has been hired by Hellbenders and has told the Court that it has been retained by the Watershed.

The Intervenors have failed to overcome this presumption of adequacy.  They do not allege any collusion between Grant Township and PGE, nor do they argue that Grant Township has not exercised diligence in the defense of the Complaint or the prosecution of its Counterclaim.  Rather, the Intervenors argue in general, non-specific terms that their interests are somehow different from the interests advanced by Grant Township in this litigation.  Further, the Intervenors do not assert, nor can they, that Grant Township represents an interest that is *adverse* to the Intervenors.  *See Delaware Valley*, 674 F.2d at 973.  Instead, the Intervenors make vague and general allegations that do not overcome the presumption of adequate representation.  For example, they allege that the Hellbenders "has a specific and unique interest different in degree than Grant Township's broader, more general interest" and that the Watershed's "interests are specific to its own ecological health."  (Motion to Intervene, Docket No. 38, p. 17.)  The Intervenors also argue that Grant Township "has to weigh other interests against the Watershed's ecological health," but they fail to identify the "specific," "unique" or "other interests."

Despite their vague assertions to the contrary, it is clear that the Intervenors share the *same* interests and goals as Grant Township.  In this regard, the Hellbender's proclaimed mission is "to advance the rights of communities to protect their local environment and residents' health, safety, and welfare against corporate exploitation."  (Motion to Intervene, Docket No. 38, p. 5.) Grant Township avers in its Counterclaim that the "people of Grant Township" adopted the Ordinance, which "recognizes the right of the people of Grant Township to local self-

government, to clean air, water, and soil, to a sustainable energy future, and to scenic preservation, among other rights secured by the Ordinance." (Answer, Affirmative Defenses and Counterclaim, Docket No. 10, at p. 20.) Moreover, the Hellbenders allegedly "formed in response to PGE's planned waste disposal injection well and resident's desire to exercise their right of local, community self-government to protect their health, safety, welfare, and natural environment." (*Id.*) Additionally, the Hellbenders "was the primary advocate for the Community Rights Ordinance." (*Id.*, at p. 7.) In its Counterclaim, Grant Township asserts that "The people of Grant Township possess a federal, state, and locally-secured constitutional right of local, community self-government." (Answer, Affirmative Defenses and Counterclaim, Docket No. 10, p. 19.)

It is readily apparent that Grant Township maintains the same goals and advances the same interests as those advanced by the Intervenors. Indeed, Grant Township claims in its pleadings that it "represents the people of the Township." *Id.* Grant Township has been vehemently defending those interests since the onset of this litigation. Most notably, Grant Township filed a Counterclaim against PGE seeking, among other things, "a declaration that the Ordinance is a constitutional and valid assertion of the right of the people of Grant Township to local, community self-government." (Answer, Affirmative Defenses and Counterclaim, Docket No. 10, p. 29.) There simply can be no question that the Intervenors' interests are adequately represented by Grant Township, a government party who is diligently defending the Ordinance at issue.

Upon examination of the Ordinance, all of the Hellbenders' goals were fully executed by the Township and embodied in the text of the Ordinance. The Ordinance denies personhood to corporations; it includes an environmental home rule statement; and it allows private citizens to

file suit in the name of the ecosystem. The Ordinance, if given deference as the rule of law, would fulfill the purpose specific to the Hellbenders' formation. Therein lies the fundamental contradiction in the Hellbenders' argument to intervene; the more complete the Ordinance's prohibitions and the Ordinance's faithfulness to the purpose and language requested by the Hellbenders, the more redundant is the Hellbenders' presence as a party in this suit.

The instant case is a prime example of a situation where the presumption of adequacy of representation is most fitting. Accordingly, since the Intervenors have failed to overcome this presumption, they should not be permitted to intervene in this lawsuit.

### D. The Court Should Exercise Its Discretion and Deny Permissive Intervention to the Intervenors.

Rule 24(b) provides that a "court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id. See also*, *United States v. Territory of the Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014). In the *Virgin Islands* decision, the District Court denied permissive intervention under Rule 24(b) for the same reasons it denied intervention pursuant to Rule 24(a), one of those reasons being that "intervention [was] unnecessary given that the United States adequately represents [the intervenor's] interests in this matter." 748 F.3d at 524.

Similarly, in *ACRA Turf Club, LLC v. Zanzuccki*, 561 Fed.Appx. 219, 222 (3d Cir. 2014), the district court denied permissive intervention relying, in part, on the fact that the interests of the intervenor were already adequately represented, and that its interjection of unrelated new claims would delay the proceedings. The Third Circuit held that "The District Court had good reason to deny permissive intervention." *Id.* In this regard, the Third Circuit found that "'where,

as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'"  *Id.* (citing *Hoots v. Commonwealth of Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982)).

In the instant case, this Court should similarly exercise its discretion and deny permissive intervention by the Intervenors.  As discussed above, the interests and goals of the Intervenors are virtually identical to the interests and goals of Grant Township.  Grant Township adopted the Ordinance on behalf of the people of Grant Township and claims in its pleadings to represent those same people.  Because Grant Township is an adequate representative for the Intervenors, this Court is well within its discretion to decide that the Intervenors' contributions to these proceedings, if any, would be unnecessary, unwarranted and superfluous.  Accordingly, PGE respectfully requests that this Court deny permissive intervention.

### III.   CONCLUSION

For the foregoing reasons, PGE respectfully requests that this Honorable Court exercise its discretion and deny intervention to the Hellbenders and the Watershed.

Respectfully submitted,

Dated: December 8, 2014   By:  */s/ James V. Corbelli*
Kevin J. Garber, Esquire
Pa. I.D. 51189
James V. Corbelli, Esquire
Pa. I.D. #56671
Alana E. Fortna, Esquire
Pa. I.D. #309691
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 6th Floor
Pittsburgh, PA  15222
412-394-5400

*Counsel for Plaintiff, Pennsylvania General Energy Company, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed a true and correct copy of the foregoing Brief in Opposition to Motion to Intervene by Little Mahoning Watershed and East Run Hellbenders Hellbenders, Inc. this 8th day of December, 2014 using the Court's CM/ECF system, which will automatically serve a copy upon all counsel of record:

                                        Babst, Calland, Clements and Zomnir, P.C.

                        By:   /s/    *James V. Corbelli*

{B1848371.1}