UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C., ) ) ) Plaintiff, ) ) v. ) ) GRANT TOWNSHIP, ) ) Defendant, ) ) and ) ) LITTLE MAHONING WATERSHED, an ecosystem within the Township, along with its associated aquatic and terrestrial natural communities, the Little Mahoning Creek and its tributaries including East Run Creek and Mill Run Creek, and underlying groundwater systems, ) ) ) ) ) ) ) ) ) ) and ) ) EAST RUN HELLBENDERS SOCIETY, INC., a Pennsylvania non-profit corporation, ) ) ) ) Defendant Intervenor-Applicants. ) ) | CIV. NO.: 1:14-cv-209 Magistrate Judge Susan Paradise Baxter <br><br> REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE BY LITTLE MAHONING WATERSHED AND EAST RUN HELLBENDERS SOCIETY, INC. <br><br> *Electronically Filed* |

**INTERVENOR-APPLICANTS LITTLE MAHONING WATERSHED AND EAST RUN HELLBENDERS SOCIETY, INC. REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO THEIR MOTION TO INTERVENE**

Lindsey Schromen-Wawrin, WA 46352
Community Environmental Legal Defense Fund
306 West Third Street, Port Angeles, WA 98362
(360) 406-4321 (phone), (306) 752-5767 (fax)
lindsey@world.oberlin.edu

*Attorney for Defendant Intervenor-Applicants
Little Mahoning Watershed and East Run Hellbenders Society, Inc.*

December 18, 2014

## Table of Contents

I. ARGUMENT....................................................................................................................2

   A. The Little Mahoning Watershed is a proper party and may defend its rights in this litigation......................................................................................................................3

      1. Standing issues do not limit the ecosystem here............................................................3

         i. Standing for ecosystems is judicially cognizable......................................................5

         ii. The Community Rights Ordinance provides statutory standing by expressly authorizing ecosystems to appear in court to protect their legal rights........................6

      2. Federal Rules of Civil Procedure are not a barrier, as the law of the state recognizes the ecosystem's capacity...................................................................................................8

      3. The ecosystem's spokespeople assure adequate representation in court........................9

   B. Intervenor-Applicants' have sufficiently demonstrated that their interests are not adequately represented, where, as here, the presumption of adequate governmental representation is overcome with a "comparatively light" showing that the interests are not identical...................................................................................................................11

   C. Alternatively, the Court should grant permissive intervention.......................................17

## I.    ARGUMENT

Pennsylvania General Energy ("PGE") makes three arguments to oppose intervention by Little Mahoning Watershed and East Run Hellbenders Society, Inc. ("Intervenor-Applicants" or "Applicants") (PGE opposition, Dkt. 45; *see also* Applicants' intervention motion and memorandum, Dkt. 37-38.) First, PGE argues the Little Mahoning Watershed is not a proper party. Second, PGE argues both Applicants' interests are adequately represented by Grant Township, so this Court should deny intervention as of right. And finally, for the same reason, PGE argues this Court should deny permissive intervention.

Intervenor-Applicants address these three arguments in turn.

### A.      The Little Mahoning Watershed is a proper party and may defend its rights in this litigation.

PGE appears to make three general arguments against the Little Mahoning Watershed's intervention: first, an ecosystem is not a proper party, which is a question of standing; second and third, the Federal Rules of Civil Procedure and Rules of Professional Conduct cannot handle an ecosystem as a party. (PGE opposition, Dkt. 45, at 4-6.)

Legal systems around the world are beginning to recognize the rights of ecosystems. The leading example is Ecuador, where the people, in 2008, amended their constitution to recognize rights for nature. ECUADOR CONST. Art. 10 ("Nature shall be the subject of those rights that the Constitution recognizes for it."), Art. 71 ("Nature, or Pacha Mama, where life is reproduced and occurs, has the right to integral respect for its existence and for the maintenance and regeneration of its life cycles, structures, functions and evolutionary processes. . . ."), Art. 72-74.[1] An Ecuadorian court enforced these rights to protect a river in 2011.[2]

Here, Grant Township law recognizes the rights of ecosystems. (Am. Compl., Dkt. 5, Ex. 1 (hereinafter "Community Rights Ordinance" or "Ordinance").) Thus, the Little Mahoning Watershed's intervention is not analogous to previous cases where species or organisms have sued under laws that do not recognize their rights, as discussed below.

### *1.*      Standing issues do not limit the ecosystem here.

Perhaps the leading case on this issue within the Third Circuit is *Hawksbill Sea Turtle v. FEMA*, where the court entertained an Endangered Species Act ("ESA") claim with plaintiffs as

---

[1]  English translation at pdba.georgetown.edu/Constitutions/Ecuador/english08.html.
[2]  *See* Natalia Greene, *The first successful case of the Rights of Nature implementation in Ecuador, available at* http://therightsofnature.org/first-ron-case-ecuador/; *see also Wheeler v. Director de la Procuraduria General del Estado en Loja*, Corte Provincial de Justicia del Loja, March 20, 2011, *available in Spanish at* mariomelo.files.wordpress.com/2011/04/proteccion-derechosnatura-loja-11.pdf.

several sea turtle species along with named individuals and an entity. 126 F.3d 461 (3d Cir. 1997). The court "note[d] in passing, however, that the standing to sue of the animals protected under the ESA is far from clear," but since the non-sea turtle plaintiffs had standing to sue, the court "need not consider the standing to sue of the animals named as plaintiffs." *Id.* at 534 fn.2 (citations omitted). The *Hawksbill Sea Turtle* rule would thus consider the Little Mahoning Watershed's standing to be an irrelevant issue, since an entity that has standing to sue (the Hellbenders Society) accompanies the ecosystem.

The standing issue is more complex when the species or ecosystem seeks to litigate on its own.

> Standing involves two distinct inquires. First, an Article III federal court must ask whether a plaintiff has suffered injury to satisfy the "case or controversy" requirement of Article III. . . . Second, if a plaintiff has suffered sufficient injury to satisfy Article III, a federal court must ask whether a statute has conferred "standing" on that plaintiff. Non-constitutional standing exists when "a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit."

*Cetacean Community v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004) (citations omitted).

In the first inquiry, whether cetaceans (whales, dolphins, and porpoises) have constitutional standing, the Ninth Circuit concluded "Article III does not compel the conclusion that a statutorily authorized suit in the name of an animal is not a 'case or controversy.'" *Id.* at 1175.

> It is obvious that an animal cannot function as a plaintiff in the same manner as a juridically competent human being. But we see no reason why Article III prevents Congress from authorizing a suit in the name of an animal, any more than it prevents suits brought in the name of artificial persons such as corporations, partnerships or trusts, and even ships, or of judicially incompetent persons such as infants, juveniles, and mental incompetents.

*Id.* at 1176 (citations omitted).

In the second inquiry, whether the statutes under which the cetaceans sued authorized their private right of action, the Ninth Circuit found that the language of the statutes relied on by

the plaintiff animals (the Endangered Species Act, the Marine Mammal Protection Act, the National Environmental Policy Act, and the federal Administrative Procedures Act) did not provide statutory standing for animals.  *Id.* at 1176-79.  The Ninth Circuit concluded

> that if Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly.  In the absence of any such statement in the ESA, the MMPA, or NEPA, or the APA, we conclude that the Cetaceans do not have statutory standing to sue.

*Id.* at 1179 (quotation omitted).

*Cetacean Community* is instructive here, even though it concerns animal standing (rather than ecosystem standing), and concerns laws that do not confer statutory standing (rather than one that expressly does so).  *Cetacean Community* shows that the restriction on species standing in past cases is based in the lack of legislative authorization, not in a limitation inherent in the judiciary.

### i. Standing for ecosystems is judicially cognizable.

When it comes to constitutional standing requirements, there is no distinction between an animal and an ecosystem.  Indeed, contrary to PGE's assertion that "[t]here are no reported decisions in which a natural resource has been permitted to be a party to the lawsuit," (PGE opposition, Dkt. 45, at 5) at least one river, one marsh, and one brook, have already been parties in United States federal courts.  *Byram River v. Village of Port Chester*, 394 F. Supp. 618, 621 (S.D.N.Y. 1975) ("The River (which is named as a plaintiff in the action) is a federal navigable river . . . ."); *Sun Enterprises, Ltd. v. Train*, 532 F.2d 280, 284 (2d Cir. 1976) ("The appellants-petitioners, who were plaintiffs below, are: . . . No Bottom Marsh, the marsh through which the brook which receives the discharge flows; and Brown Brook, which is classified by New York State as a trout stream on Sun's property.").

Justice Douglas, in a dissent, famously described the potential of ecosystem standing:

> The critical question of "standing" would be simplified and also put neatly in focus if we fashioned a federal rule that allowed environmental issues to be litigated before federal agencies or federal courts in the name of the inanimate object about to be despoiled, defaced, or invaded by roads and bulldozers and where injury is the subject of public outrage.  Contemporary public concern for protecting nature's ecological equilibrium should lead to the conferral of standing upon environmental objects to sue for their own preservation. . . .
>
> Inanimate objects are sometimes parties in litigation.  A ship has a legal personality, a fiction found useful for maritime purposes.  The corporation sole – a creature of ecclesiastical law – is an acceptable adversary and large fortunes ride on its cases.  The ordinary corporation is a "person" for purposes of the adjudicatory processes, whether it represents proprietary, spiritual, aesthetic, or charitable causes.
>
> So it should be as respects valleys, alpine meadows, rivers, lakes, estuaries, beaches, ridges, groves of trees, swampland, or even air that feels the destructive pressures of modern technology and modern life.  The river, for example, is the living symbol of all the life it sustains or nourishes – fish, aquatic insects, water ouzels, otter, fisher, deer, elk, bear, and all other animals, including man, who are dependent on it or who enjoy it for its sight, its sound, or its life.  The river as plaintiff speaks for the ecological unit of life that is part of it.  Those people who have a meaningful relation to that body of water – whether it be a fisherman, a canoeist, a zoologist, or a logger – must be able to speak for the values which the river represents and which are threatened with destruction.
>
> . . .
>
> Those who have that intimate relation with the inanimate object about to be injured, polluted, or otherwise despoiled are its legitimate spokesmen.

*Sierra Club v. Morton*, 405 U.S. 727, 741-45 (Douglas, J., dissenting) (citations and footnotes omitted).

### ii. The Community Rights Ordinance provides statutory standing by expressly authorizing ecosystems to appear in court to protect their legal rights.

In *Cetacean Community* the animal plaintiffs did not have standing because the legislature did not authorize animal plaintiffs when it created the private rights of actions under which the animals sued.  *Cetacean Community*, 386 F.3d at 1179 (lawmakers who "intended to

6

take the extraordinary step of authorizing animals as well as people and legal entities to sue . . . should, have said so plainly" (quotation omitted)).

Here, in contrast, Grant Township law recognizes rights held by natural communities and ecosystems. Specifically, the Community Rights Ordinance section 2(b) provides

> [a]ll residents of Grant Township, along with natural communities and ecosystems within the Township, possess the right to clean air, water, and soil, which shall include the right to be free from activities which may pose potential risks to clean air, water, and soil within the Township, including the depositing of waste from oil and gas extraction.

Section 2(d) provides "[n]atural communities and ecosystems within Grant Township, including but not limited to, rivers, streams, and aquifers, possess the right to exist, flourish, and naturally evolve."

PGE does not challenge the validity of this section of the Ordinance. (Am. Compl., Dkt. 5, *passim*.) PGE has not argued that this Ordinance section is preempted or otherwise challengeable under any other legal doctrine. *Id.*

A law is valid until a court rules otherwise. *See Robinson Twp. v. Commonwealth of Pennsylvania*, 83 A.3d 901, 943 (Pa. 2013). As an ecosystem[3] within Grant Township, the Little Mahoning Watershed has legal rights threatened by PGE's lawsuit.

Further, the Township supervisors intended the ecosystem to have standing to defend its rights, and "said so plainly":

> Any action brought by either a resident of Grant Township or by the Township to enforce or defend the rights of ecosystems or natural communities secured by this Ordinance *shall bring that action in the name of the ecosystem or natural community* in a court possessing jurisdiction over activities occurring within the Township. Damages shall be measured by the cost of restoring the ecosystem or natural

---

[3] PGE takes issue with the Little Mahoning Watershed name, emphasizing that a watershed is a geographic area or "natural condition." (PGE Opposition, Dkt. 45, at 4.) The Little Mahoning Watershed, as made clear in Intervenor-Applicants memorandum in support of this motion, (Dkt. 38, at 8-9.), is a name for the numerous natural communities and ecosystems within Grant Township, just as, for example, "Lake Erie" is a geographic area, a natural condition, and also an ecosystem.

7

community to its state before the injury, and shall be paid to the Township to be used exclusively for the full and complete restoration of the ecosystem or natural community.

Community Rights Ordinance § 4(c) (emphasis added).

Here, the Little Mahoning Watershed has statutory authorization to present its own defense. It is not claiming authorization, like in *Hawksbill Sea Turtle*, *Cetacean Community*, or *Hawaiian Crow*, based on a statute that the courts have determined does not confer animal or ecosystem standing. Rather, the Little Mahoning Watershed relies on express rights and an express statutory standing provision.

## 2. Federal Rules of Civil Procedure are not a barrier, as the law of the state recognizes the ecosystem's capacity.

PGE claims Rule 17(b), concerning capacity to sue or be sued, prevents an ecosystem from being a party. (PGE opposition, Dkt. 45, at 5 (citing Fed. R. Civ. P. 17(b); *Hawaiian Crow ('Alala) v. Lujan*, 906 F. Supp. 549, 552 (D. Haw. 1991)).)

PGE's reliance on *Hawaiian Crow* is misplaced, as the court in *Hawaiian Crow* was concerned with a species having capacity to sue under the Endangered Species Act. *Hawaiian Crow*, 906 F. Supp. at 552. "The basic purpose of Rule 17(a)'s insistence that every action be prosecuted in the name of the real party in interest is to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata." *E.g.*, *Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Management, Inc.*, 620 F.2d 1, 4 (1st Cir. 1980) (citations omitted). Here, the Little Mahoning Watershed is seeking to intervene as a defendant. Under these facts, there is no concern that the Defendants will be subject to multiple suits by the same plaintiff ecosystem.

Where an individual dolphin brought suit, the court applied Rule 17(b) to determine

8

whether the dolphin had capacity to sue. *Citizens to End Animal Suffering and Exploitation, Inc. v. New England Aquarium*, 836 F. Supp. 45 (D. Mass. 1993). The court looked to "the law of the individual's domicile" to see whether the dolphin had capacity. *Id.* at 45 (citing Fed. R. Civ. P. 17(b)(1)). The court determined that the dolphin lacked capacity because there was no law on point. *Id.*

In contrast, here, there is a law on point that provides ecosystems, such as the Little Mahoning Watershed, with the capacity to sue.[4] The Ordinance provides "[a]ny action brought by either a resident of Grant Township or by the Township to enforce or defend the rights of ecosystems or natural communities secured by this Ordinance shall bring that action in the name of the ecosystem or natural community . . . ." Community Rights Ordinance § 4(c). This is the relevant law for determining whether the Little Mahoning Watershed has capacity under Rule 17(b), and it clearly confers capacity on an ecosystem to defend its rights by appearing in court with the help of "either a resident of Grant Township or . . . the Township."

The Federal Rules of Civil Procedure do not bar the ecosystem's participation in this suit.

### 3. The ecosystem's spokespeople assure adequate representation in court.

PGE raises a number of concerns that the Little Mahoning Watershed's counsel cannot adequately represent the ecosystem. (PGE opposition, Dkt. 45, at 4-6.)

The Community Rights Ordinance requires that an action "brought by either a resident of

---

[4] For determining the capacity of a corporation, a court looks to "the law under which it was organized," and for determining the capacity of "all other parties," the court looks to "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(2), (3). Courts apply local law when considering capacity under "the law of the state where the court is located." *E.g.*, *Gaston v. New York City Dept. of Health Office of Chief Medical Examiner*, 432 F. Supp. 2d 321, 329 (S.D.N.Y. 2006) ("Under the New York City Charter, 'all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.' Thus, the OCME is not a suable entity, and claims against OCME are subject to dismissal." (citation omitted)).

Grant Township or by the Township to enforce or defend the rights of ecosystems or natural communities secured by this Ordinance shall [be brought] in the name of the ecosystem or natural community." § 4(c).  The law does not contemplate the ecosystem appearing on its own, but rather through the residents or the Township.  This puts the local people in the position of speaking in defense of the ecosystem and its rights.  *Sierra Club v. Morton*, 405 U.S. 727, 745 (Douglas, J., dissenting) ("Those who have that intimate relation with the inanimate object about to be injured, polluted, or otherwise despoiled are its legitimate spokesmen.").  Indeed, the human inhabitants of the Little Mahoning Watershed are a part of the ecosystem, and able to communicate.

    Adequate client representation is no joking matter, yet the irony here must be pointed out.  PGE's lawyers represent a legal fiction, which is itself incapable of doing the things PGE's lawyers require an ecosystem to be able to do:

> A [business entity] lacks consciousness, intelligence, cognition, communicability, or agency.  A [business entity] can neither recall nor forget; neither articulate nor remain silent; neither agree nor dispute.  The [business entity] cannot decide to intervene, cannot accept representation or engage with counsel as a client, and cannot appear in court or testify.  It cannot knowingly participate in the adversarial system of justice.

(PGE opposition, Dkt. 45, at 4 (with "watershed" in the original replaced by "business entity").)  Pennsylvania General Energy Company, L.L.C., a limited liability company, can not do any of those things (its members, managers, and lawyers do them).  Yet, we pretend that it is PGE acting.[5]  PGE's lawyers' argument is that our system of justice allows lawyers to accommodate legal fictions, but not accommodate the living ecosystems upon which we all depend and within which we are a part, even when those ecosystems are recognized by law to have rights.  If that is

---

[5] Justice Holmes said "[t]he substance of the law at any given time pretty nearly corresponds, so far as it goes, with what is then understood to be convenient," and cautioned against "supposing, because an idea seems very familiar and natural to us, that it has always been so.  Many things which we take for granted have had to be laboriously fought out or thought out in past times."  Oliver Wendell Holmes, THE COMMON LAW 1-2 (1881).

indeed true, then it is the greatest legal fiction of all.[6]

## B. Intervenor-Applicants' have sufficiently demonstrated that their interests are not adequately represented, where, as here, the presumption of adequate governmental representation is overcome with a "comparatively light" showing that the interests are not identical.

PGE does not contest Intervenor-Applicants' satisfaction of the first three criteria for intervention as of right.  *See* PGE opposition, Dkt. 45, *passim*; *United States v. Territory of the Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (the first three criteria being timely application, sufficient interest, and possibility of impairment).  Instead, PGE's opposition rests on the fourth criterion: that the Applicants' "interest is not adequately represented by an existing party in the litigation." *Virgin Islands*, 748 F.3d at 519.  To achieve its argument, PGE erroneously shoehorns this case into the "compelling showing" standard recently applied in *Virgin Islands*. *Id.* at 520 ("A presumption of adequacy attaches, however, if one party is a government entity charged by law with representing the interests of the applicant for intervention.  In such an instance, a potential intervenor can only overcome the presumption and thereby intervene by making a compelling showing to demonstrate why the government's representation is not adequate." (citations, internal quotation marks, and modifications from quoted text omitted)). PGE's application of this standard is wrong because PGE ignores the presumption of adequate governmental representation's alternative "comparatively light" standard, which is more appropriate to the facts of this case.[7]

---

[6] PGE appears to request fees for responding to the Little Mahoning Watershed's application for intervention. (PGE opposition, Dkt. 45, at 7.)  Regardless of whether that request is well plead, it should not be entertained by the Court.  As demonstrated in the filings concerning this motion, past case law on this issue relies upon the language of federal statutes, whereas the Watershed relies upon express rights and procedures established by the new local law at issue in this case.  This is not an Endangered Species Act case.  The issue here is whether local law can authorize substantive and procedural rights for an ecosystem, an issue of first impression.

[7] The alternative "comparatively light" standard did not make sense in *Virgin Islands*.  In that

The "compelling standard" language comes from Wright and Miller's Federal Practice and Procedure treatise. *Virgin Islands*, 748 F.3d at 520 (citing *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (1986))). In context, that treatise shows that the required showing for adequacy of representation depends upon the

---

case, the United States Department of Justice was bringing a claim against the Territory of the Virgin Islands for prison conditions in violation of the Civil Rights of Institutionalized Persons Act (CRIPA). Congress expressly provided that CRIPA enforcement claims are actionable by "the Attorney General, for or in the name of the United States," not by private citizens. *Virgin Islands*, 748 F.3d at 520 ("Because that statute authorizes the Attorney General to pursue civil rights actions on behalf of prisoners who are suffering deprivations of their constitutional rights, we presume that the United States adequately represents the interests of those prisoners." (citing *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992))); 42 U.S.C. § 1997a(a); *see also Sosa v. Lantz*, 660 F. Supp. 2d 283, 288 (D. Conn. 2009) (noting that the "except" clause in this statute does not confer upon prisoners the same authority to bring a claim as is conferred upon the Attorney General). The Attorney General plaintiff in *Virgin Islands* did not suffer from the inherent challenge of balancing multiple public welfare concerns, but rather was pursuing a specific Congressionally-authorized cause of action, and thus the "compelling showing" standard was properly applied. In addition, the intervenor appellant's motion was untimely, by about twenty-eight years. *Virgin Islands*, 748 F.3d at 516, 525.

PGE cites several other cases to reinforce its attempt to shoehorn the presumption of adequate governmental representation's "compelling showing" standard into this intervention. (PGE opposition, Dkt. 45, at 8-9.) But none of these cases support PGE's application of the "compelling showing" standard instead of the "comparatively light" showing standard:

In *ACRA Turf Club, LLC v. Zanzuccki*, 561 Fed. Appx. 219, 222 (3d Cir. 2014), an unpublished opinion examined in PGE opposition on pages 8-9, the intervenor applicant was officially connected to the government commission being sued. *See ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 129 n.1 (3d Cir. 2014); N.J. Stat. § 5:5-23 (providing that two of the nine commissioners be recommended for nomination by the intervenor applicant). For good reason, the *ACRA* court did not imbue its opinion with precedential authority. This Court should not consider *ACRA*, due to the influence of its almost unique facts upon the intervention ruling.

PGE's remaining three authorities, in PGE opposition page 9, all consider the adequate governmental representation criterion within the context of the timeliness criterion. These cases stand for the rule that an untimely intervention motion is not excused just because the intervenor applicants would have litigated differently, retrospectively. *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 504-06 (3d Cir. 1976) (discussing the adequate representation criterion only in the context of the intervenor applicants' defense that they were lolled into not intervening earlier due to a belief that their interests were actually adequately represented by the government); *Point Pleasant Canoe Rental, Inc. v. Tinicum Twp.*, 110 F.R.D. 166, 166-67, 169-72 (E.D. Pa. 1986) (holding the untimely intervention

similarity of the parties' interests:

> The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate. Finally, if his interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee.

7C Wright & Miller, *supra* §1909, at 318-19 (1986) (footnotes omitted). The "compelling showing" requirement is the extreme end of the intervention spectrum. In the context of public interest and governmental parties, the Third Circuit has explained:

> The burden of establishing inadequacy of representation by existing parties varies with each case. A government entity charged by law with representing a national policy is presumed adequate for the task . . . . But the presumption notwithstanding, when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light. . . . This overview demonstrates that Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise. Nonetheless, the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citations omitted). The "comparatively light" showing standard applies where intervenor applicants are focused on particular concerns while the government party must consider the general public welfare, which

---

motion had mooted intervenor applicants' possibly valid arguments against adequate representation); *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 674 F.2d 970, 972-74 (3d Cir. 1982) (denying intervention motion "nearly four years after the actions were filed" when the intervenor applicants' argument against adequate representation was merely "that the Commonwealth agreed to implement [an emissions monitoring] program in a consent decree."). These cases do not apply here, where the timeliness of Intervenor-Applicants' motion is not contested.

must balance the particular concerns against other concerns.  Where, as here, the Intervenor-Applicant's "interest is similar to, but not identical with, that of one of the parties," the comparatively light standard applies.

The "comparatively light" presumption standard was applied last month within the Third Circuit by the New Jersey District Court, in a case with similar facts to this one.  In *Shipyard Associates, L.P. v. City of Hoboken*, a developer sued a municipality to overturn two ordinances.  No. 14-1145, 2014 U.S. Dist. LEXIS 165786, at *2-3 (D.N.J. Nov. 26, 2014) (unpublished).  The court granted intervention as of right to a nonprofit public interest group.  *Id.*  For the adequate representation criterion, the public interest group merely "point[ed] to [the municipality's] delicate position as the entity with the police power to protect residents and the entity responsible for managing and interacting with municipal planning, zoning, and development interests," and the possibility of the city changing its position with regard to defending the ordinances in the future.  *Id.* at *11.  "The Court [was] satisfied that [the public interest group] has established the 'possibility' that [the city] will not adequately represent its interests."  *Id.*  The "mere 'possibility' – which is all that is required – that [the public interest group and the municipality] could have distinct interests that [the municipality] may not be positioned to fully protect" was sufficient to overcome the presumption of adequate representation.  *Id.* at *12 (citing *Kleissler*, 157 F.3d at 974).  The court also noted the "conflicting interests arising out of the myriad of responsibilities attendant to any municipality."  *Id.* (citing *Kleissler*, 157 F.3d at 973-74; *Dimond v. District of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986); *Amer. Farm*, 278 F.R.D. at 110-11).  The court held the public interest group had "carried its burden to show the possibility that its interests will not be fully protected by the [municipality]."  *Id.* at *13.

Here, the Township law recognizes rights for the Intervenor-Applicants.  The perceived value of those rights – rights held by the Intervenor-Applicants, not by the Township – is

different between the Township and the Intervenor-Applicants.  The additional public welfare considerations weighing on the Township means that the Township's "interest is similar to, but not identical with" the interests of the Intervenor-Applicants.  7C Wright & Miller, *supra* §1909, at 319 (1986).  While at present, the Township's and Intervenor-Applicants' interests appear aligned, it is reasonable to foresee several scenarios where their interests diverge.  Such conceivable future divergence is sufficient for intervention.  *See Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) ("We cannot predict now the specific instances when appellants might wish to urge before the Court a timetable different from EPA's, including conceivably a faster timetable in some instances, but, with the recognition of the clear possibility of disparate interests, we think appellants have shown that EPA representation may not be adequate.").

In addition, the Township and Intervenor-Applicants' financial risk tolerance is very likely different, which would affect their settlement decisions.  The Township may agree to scuttle the challenged local law in exchange for less financial risk.  The Intervenor-Applicants may not want to settle at the same point that the Township does.  Their interests can easily diverge,[8] and the Township could easily cease to represent the Intervenor-Applicants interests at a crucial future point when the Intervenor-Applicants would then not have the opportunity to intervene.

This example also demonstrates the irrelevance of PGE's central argument that the Township and Intervenor-Applicants' interests are aligned because the same law firm currently represents all those parties.  (*See* PGE opposition, Dkt. 45, at 10.)  Whether to accept an offer of settlement is a decision made by the client.  Pa. RPC 1.2(a) and 1.2 Cmt. 1.  Thus, the fact that

---

[8] Indeed, this event is expressly contemplated by the Rules of Professional Conduct.  *See* Pa. RPC 1.7 Cmt. 23 ("A conflict may exist by reason of . . . the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.").

the same law firm currently represents the Township and the Intervenor-Applicants has no bearing on whether these parties' interests diverge in their settlement decisions, because those decisions are made by each party, not by its lawyer.

Also, the Township and the Intervenor-Applicants may make different decisions about whether to appeal an adverse judgment. As with the settlement scenario, the Intervenor-Applicants would not have the opportunity to intervene within the short time required between learning of the Township's appeal decision and the due date for a notice of appeal.

Finally, and most importantly, the Intervenor-Applicants interests are "personal to it" as those interests include rights held by the Intervenor-Applicants and not held by the Township. The Township, just like the Forest Service in *Kleissler*, "represents numerous complex and conflicting interests." *See Kleissler*, 157 F.3d at 973. While the Township and Intervenor-Applicants' interests may be "inextricably intertwined," *id.* at 974, or "similar . . . , but not identical," 7C Wright & Miller, *supra* § 1909, at 319, the Intervenor-Applicants' have still met their burden to show "that representation may be inadequate, not that such representation is inadequate." *Chester Water Auth. v. Susquehanna River Basin Commission*, 2014 U.S. Dist. LEXIS 110512, at *11 (M.D. Pa. Aug. 11, 2014) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

PGE asks this Court to use the wrong standard when PGE argues that the Intervenor-Applicants must make a "'compelling showing . . . to demonstrate why [the government's] representation is not adequate.'" (PGE opposition, Dkt. 45, at 7 (alterations in PGE brief).) Instead, this Court must apply the "comparatively light" showing standard, *Kleissler*, 157 F.3d at 972, and allow the intervention as of right.

## C. Alternatively, the Court should grant permissive intervention.

Applicants' intervention does not unduly delay or prejudice the adjudication of PGE and Grant Township's rights. *See Virgin Islands*, 748 F.3d at 524 (citing Fed. R. Civ. P. 24(b)(3)) (denying permissive intervention due primarily to "late point in litigation" where the case had been ongoing for twenty-eight years prior to the intervention motion). In the recent analogous case *Shipyard*, discussed above, the court noted that the public interest group "will add a valuable perspective and voice to this litigation. Moreover, [the public interest group's] joining in this action will not delay the case or prejudice any party. The requirements of permissive intervention are clearly met." *Shipyard*, 2014 U.S. Dist. LEXIS 165786, at *13 n.9.

Here, Intervenor-Applicants are present at the start of the litigation, and will cause no undue delay, or prejudice the parties. The Court should grant permissive intervention, if it determines that intervention as of right is not appropriate.


Respectfully submitted December 18, 2014.



Lindsey Schromen-Wawrin, WA 46352
Community Environmental Legal Defense Fund
306 West Third Street, Port Angeles, WA 98362
(360) 406-4321 (phone), (306) 752-5767 (fax)
lindsey@world.oberlin.edu

*Attorney for Defendant Intervenor-Applicants*
*Little Mahoning Watershed and East Run Hellbenders Society, Inc.*

**Certificate of Service**

I certify that I electronically filed a true and correct copy of the foregoing Reply to Plaintiff's Opposition to Motion to Intervene on December 18, 2014 using the Court's CM/ECF system, which will automatically serve a copy upon the following:

*Counsel for PGE:*

Kevin Garber
Alana Fortna
James Corbelli
Babst, Calland, Clements & Zomnir, P.C.
603 Stanwix Street
Two Gateway Center
6th Floor
Pittsburgh, PA 15222
kgarber@babstcalland.com
afortna@babstcalland.com
jcorbelli@bccz.com

Lisa McManus
Pennsylvania General Energy Company, L.L.C.
120 Market Street
Warren, PA 16365
lisamcmanus@penngeneralenergy.com

*Counsel for PIOGA:*

Kevin Moody
Pennsylvania Independent Oil & Gas Association
212 Locust Street
Suite 300
Harrisburg, PA 17101
kevin@pioga.org

*Counsel for Grant Township:*

Thomas Linzey
Community Environmental Legal Defense Fund
P.O. Box 360
Mercersburg, PA 17236
tal@pa.net

Lindsey Schromen-Wawrin