IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, LLC, <br> Plaintiff | ) <br> ) <br> ) <br> ) | |
| | ) | C.A.No. 14-209ERIE |
| vs. | ) <br> ) | |
| GRANT TOWNSHIP, <br> Defendant. | ) <br> ) | Magistrate Judge Baxter |

## MEMORANDUM OPINION

Magistrate Judge Susan Paradise Baxter[1]

Plaintiff Pennsylvania General Energy Company, LLC, ("PGE") filed this action challenging the constitutionality, validity and enforceability of an ordinance adopted by Grant Township that established a so-called Community Bill of Rights. Plaintiff seeks injunctive and declaratory relief, as well as damages, against Defendant Grant Township on the grounds that the Ordinance purports to strip Plaintiff of its constitutional rights. Additionally, Plaintiff contends the Ordinance is in direct conflict with a number of Pennsylvania statutes and is therefore preempted. Presently before this Court is Defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack of standing based upon the failure of PGE to secure a Pennsylvania Department of Environmental Protection ("DEP") permit.

---

[1] This civil action was originally assigned to District Judge Frederick J. Motz and was subsequently assigned to District Judge Arthur J. Schwab. Thereafter, this case was reassigned to the undersigned. In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

1

## The Allegations of the Amended Complaint

*Plaintiff PGE*

Plaintiff PGE is a Pennsylvania limited liability company with offices in Warren, Pennsylvania. ECF No. 5, Amended Complaint, ¶ 1. PGE is in the business of exploration and development of oil and gas. Id. PGE's exploration and development activities include drilling and operating oil and natural gas wells and managing brine and produced fluids generated from operating wells. Id. at ¶ 18. The operation of oil and gas wells unavoidably requires engaging in the activity of "disposing of waste from oil and gas extraction" since any producing hydrocarbon well also produces oil and gas materials, such as production brine, which must be stored at the well site temporarily until they are removed. Id. at ¶ 28.

In 1997, Pennsylvania General Energy Corp., PGE's predecessor in interest, put into production a deep gas well in Grant Township on property known as the Yanity Farm pursuant to Well Permit No. 37-063-31807-00-00 (hereinafter referred to as the "Yanity Well") issued by the Pennsylvania Department of Environmental Protection. Id. at ¶ 19. PGE currently has tanks located on the Yanity Well site used for the storage of oil and gas materials. Id. at ¶ 20. PGE intends to use the Yanity Well to inject produced fluids from its other oil and gas development operations. Id. at ¶ 26. PGE operates seven other currently producing conventional hydrocarbon wells in Grant Township, all of which have appropriate active DEP permits. Id. at ¶ 27.

On September 11, 2014, the United States Environmental Protection Agency ("EPA") issued a final Underground Injection Control ("UIC") permit to PGE allowing it to convert the Yanity Well into a Class II-D brine injection well and to inject produced fluids generated at other PGE oil and gas wells into the Yanity Well. Id. at ¶¶ 21-23.

2

The Commonwealth of Pennsylvania also regulates injection wells and ancillary facilities under the authority of the Pennsylvania Oil and Gas Act, 58 Pa.C.S. § § 2301, et seq., and other Pennsylvania environmental statutes. Id. at ¶ 24. On April 16, 2014, PGE applied to the DEP to reclassify the Yanity Well from a production well to an injection well. Id. at ¶ 25.

*Defendant Grant Township and the Ordinance*

Defendant Grant Township is a Second Class Township located in Indiana County, Pennsylvania. Id. at ¶ 2. On June 3, 2014, Grant Township adopted an Ordinance that bears a title reading an Ordinance "establishing a Community Bill of Rights for the people of Grant Township, Indiana County, Pennsylvania, which prohibits activities and projects that would violate the Bill of Rights and which provides for enforcement of the Bill of Rights" (hereinafter, the "Community Bill of Rights Ordinance" or "Ordinance"). Id. at ¶ 7.

The "Whereas" clauses at the beginning of the Ordinance lay out the community's beliefs that:

- This community finds that the depositing of waste from oil and gas extraction violates the rights of Grant Township residents, including our right to make decisions about what happens to the places where we live;

- private corporations engaged in the depositing of waste from oil and gas extraction are wrongly recognized by the federal and state government as having more 'rights' than the people who live in our community, and thus, recognition of corporate 'rights' is a denial of the rights of the people of Grant Township;

- such denials violate the inherent right of people to local self-government, the guarantees of the Pennsylvania Constitution, and the guarantees of the Declaration of Independence and the United States Constitution;

- the 1776 Pennsylvania Constitution recognized the inherent right of Pennsylvanians to local self government by declaring that 'all government out to be instituted and supported for the security and protection of the community as such;

3

- the right to local self government, now recognized and secured by Article 1, Section 2 of the current Pennsylvania Constitution, declares that 'all power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness;'

- this ordinance establishes a Community Bill of Rights to further recognize the right to local self government in Grant Township, and secures that right by prohibiting those activities that would violate this local bill of rights ...

ECF No. 5-1, page 1.

Section 2 of the Ordinance, entitled "Statement of Law - A Community Bill of Rights" enumerates the following:

(a) Right to Local Self-Government. All residents of Grant Township possess the right to a form of governance where they live which recognizes that all power is inherent in the people and that all free governments [sic] founded on the people's consent. Use of the municipal corporation "Grant Township" by the people for the making and enforcement of this law shall not be deemed, by any authority, to eliminate, limit, or reduce that sovereign right.

(b) Right to Clear Air, Water and Soil. All residents of Grant Township, along with natural communities and eco-systems within the Township, possess the right to clean air, water, and soil, which shall include the right to be free from activities which may pose potential risks to clean air, water, and soil within the Township, including the depositing of waste from oil and gas extraction.

(c) Right to Scenic Preservation. All residents of Grant Township possess a right to the scenic, historic and aesthetic values of the Township, including unspoiled vistas and a rural quality of life. That right shall include the right of the residents of the Township to be free from the activities which threaten scenic, historic, and aesthetic values, including the depositing of waste from oil and gas extraction.

(d) Rights of Natural Communities and Ecosystems. Natural communities and ecosystems within Grant Township, including but not limited to, rivers, streams, and aquifers, possess the right to exist, flourish, and naturally evolve.

(e) Right to Sustainable Energy Future. All residents of Grant Township possess the right to a sustainable energy future, which includes, but is not limited to, the development, production, and use of energy from renewable and sustainable fuel sources, the right to establish local sustainable fuel sources, the right to establish local sustainable energy policies to further secure this right, and the right to be free from energy extraction, production, and use that

4

> may adversely impact the rights of human or natural communities. That right shall include the right to be free from activities related to fossil fuel extraction and production, including the depositing of waste from oil and gas extraction.
>
> (f) Right to Enforce. All residents of Grant Township possess the right to enforce the rights and prohibition secured by this Ordinance, which shall include the right of Township residents to intervene in any legal action involving rights and prohibitions of this Ordinance.
>
> (g) Rights as Self-Executing. All rights delineated and secured by this Ordinance are inherent, fundamental, and unalienable, and shall be self-executing and enforceable against both private and public actors. The rights secured by this Ordinance shall only be enforceable against actions specifically prohibited by this Ordinance.

ECF No. 5-1, page 2.

Section 3 of the Ordinance expressly prohibits any corporation or government from "engaging in the depositing of waste from oil and gas extraction" and invalidates any "permit, license, privilege, charter, or other authority issued by any state or federal entity which would violate [this prohibition] or any rights secured by [the Ordinance], the Pennsylvania Constitution, the United States Constitution, or other laws." Id. at ¶ 8. See also ECF No. 5-1, § 3. Any corporation or government "that violates any provision [of the Ordinance] shall be guilty of an offense and, upon conviction thereof, shall be sentenced to pay the maximum fine allowable under State law[2] for that violation" and "[e]ach day or portion thereof, and violation of each section [of the Ordinance], shall count as a separate violation." ECF No. 5, ¶ 15; ECF No. 5-1, § 4.

Section 5 of the Ordinance provides that corporations that "violate" or that "seek to violate" the Ordinance "shall not be deemed to be 'persons,' nor possess any other legal rights, privileges, powers, or protections which would interfere with the rights or prohibitions enumerated by this Ordinance." ECF No. 5, ¶ 12; ECF No. 5-1, § 5. The Ordinance further

---
[2] The Ordinance does not reference any specific provision of state law.

5

explains that "'rights, privileges, powers, or protections' shall include the power to assert state or federal preemptive laws in an attempt to overturn this Ordinance, and the power to assert that the people of the municipality lack the authority to adopt this Ordinance." ECF No. 5, ¶ 12. See also ECF No. 5-1, at § 5(a). The Ordinance provides that all laws of the Commonwealth of Pennsylvania, and rules adopted by its state agencies, "shall be the law of Grant Township only to the extent that they do not violate the rights or prohibitions of this Ordinance." ECF No. 5, ¶ 13. See also ECF No. 5-1, at § 5(b).

The Enforcement Section of the Ordinance provides that any corporation that violates any provision of the Ordinance shall be guilty of an offense and, upon conviction, shall be sentenced to pay the maximum fine allowable under state law with each day and each violation of each Section of the Ordinance constituting a separate violation. ECF No. 5-1, § 4(a). The Ordinance allows any resident of Grant Township or Grant Township itself to bring an action "to enforce or defend the natural rights of ecosystems or natural communities secured by [the Ordinance]" and such an action must be brought "in the name of the ecosystem or natural communities secured by [the Ordinance] in a court possessing jurisdiction over activities occurring within the Township." ECF No. 5, ¶ 17; ECF No. 5-1, § 4. Damages "shall be measured by the cost of restoring the ecosystem or natural community to its state before the injury, and shall be paid to the Township to be used exclusively for the full and complete restoration of the ecosystem or natural community." Id.

The Ordinance provides that "use of the courts or the Pennsylvania legislature in attempts to overturn the provisions of this Ordinance shall require community meetings focused on changes to local governance that would secure the right of the people to local self-government." Id. at page 3. Furthermore, the Ordinance provides that "through the adoption of this Ordinance,

6

the people of Grant Township call for amendment of the Pennsylvania Constitution and the federal Constitution to recognize a right to local self-government free from and or nullification by corporate 'rights.'" Id. at page 4.

*Plaintiff's Causes of Action*

Plaintiff raises thirteen separate legal claims in the Amended Complaint. Plaintiff claims the Ordinance violates the Supremacy Clause, the Equal Protection Clause, the Petition Clause of the First Amendment, the Contract Clause, and both the substantive and procedural components of the Due Process Clause of the United States Constitution. Plaintiff also claims the Ordinance is preempted by Pennsylvania's Second Class Township Code, the Oil and Gas Act, the Limited Liability Companies Act, and the Sunshine Act and violates state law as it is an impermissible exercise of police power and is exclusionary.

At Count I, Plaintiff's Supremacy Clause claim is based on the fact the Ordinance purports to divest corporations, such as PGE, of virtually all of their constitutional rights. Plaintiff alleges that the Ordinance strips corporations of: "1) their status as 'persons' under the law; 2) their right to assert state or federal preemptive laws in an attempt to overturn the Community Bill of Rights Ordinance; and 3) their power to assert that Grant Township lacks the authority to adopt the Community Bill of Rights Ordinance." Plaintiff alleges that the Ordinance conflicts with the United States Constitution in that corporations are considered persons for purposes of the First and Fourteenth Amendments and the Contract Clause. ECF No. 5, ¶¶ 31-35.

At Count II, PGE's Equal Protection claim is based on assertions that because the Ordinance only applies to corporations and governments and not to individuals, it is

7

discriminatory. The Ordinance prohibits only corporations and governments from depositing waste from oil and gas extraction and purports to strip those violators of their constitutional rights, but does not similarly penalize individuals engaged in the same conduct. Plaintiff also alleges that it has been singled out as a "class of one" for disparate treatment by Grant Township. Id. at ¶¶ 37-46.

At Count III, Plaintiff alleges that the Ordinance is aimed at suppressing PGE's right to make a complaint to, or seek the assistance of, the government for the redress of grievances related to the Ordinance in violation of PGE's First Amendment right to petition for redress of grievances. Id. at ¶¶ 48-51.

At Count IV, Plaintiff alleges that Grant Township's conduct in enacting the Ordinance and "abrogating PGE's interest in environmental and UIC permits at the Yanity Well is deliberate, arbitrary, irrational, exceeds the limits of government authority, amounts to an abuse of official power, and shocks the conscience" in violation of its substantive due process rights under the Fifth and Fourteenth Amendments. Plaintiff alleges that Grant Township intended to deny corporations, such as PGE, their legal constitutional rights including their rights under the First, Fifth and Fourteenth Amendment and the Contract Clause. Id. at ¶¶ 53-56.

At Count V, Plaintiff alleges that the Ordinance's prohibition of underground injection and storage of oil and gas materials "significantly and materially devalues PGE's legal rights and interests" within Grant Township "including PGE's UIC permit" thereby depriving Plaintiff of its property interest without any due process in violation of the procedural due process clause of the Fourteenth Amendment. Id. at ¶¶ 58-62.

Plaintiff's Contract Clause claim at Count VI is based upon PGE's being unable to realize the benefits of the preexisting contracts (leases) it has obtained with the owners of the subsurface

8

estates at great cost to PGE. The Ordinance bans PGE from engaging in the injection and storage of oil and gas materials within Grant Township. Id. at ¶¶ 64-67.

At Counts VII and VIII, Plaintiff alleges that the Ordinance constitutes an impermissible exercise of police power under, and is preempted by, the Second Class Township Code of Pennsylvania. Id. at ¶¶ 68-82.

At Count IX, Plaintiff alleges that the Ordinance is preempted by the Pennsylvania Oil and Gas Act, which exclusively and comprehensively regulates the development of oil and gas within the Commonwealth. Id. at ¶¶ 83-92.

At Count X, Plaintiff claims that the Ordinance is exclusionary in violation of Pennsylvania law that requires that a municipality authorize all legitimate uses somewhere within its boundaries. Id. at ¶¶ 93-97.

At Count XI, Plaintiff claims that the Ordinance which purports to divest corporations of their rights as "persons" is pre-empted by the Pennsylvania Limited Liability Companies Act which provides that LLCs "have the legal capacity of natural persons to act." 15 Pa.C.S. § 8921. Id. at ¶¶ 98-102.

At Count XII, Plaintiff claims that the Board of Supervisors of Grant Township violated the Pennsylvania Sunshine Act by voting to authorize an Agreement between the Township and the Community Environmental Legal Defense Fund related to legal defense of the Ordinance. Id. at ¶¶ 103-113.

Finally, at Count XIII, Plaintiff seeks a declaratory judgment as "A judicial declaration is necessary as to whether the Community Bill of Rights Ordinance: 1) violates the Supremacy Clause, the First and Fourteenth Amendment, and the Contract Clause of the United States

9

Constitution; 2) deprives PGE of substantive and procedural due process, and 3) is preempted by or is unenforceable under relevant Pennsylvania law." ECF No. 5, ¶ 120.

As relief, Plaintiff seeks a judgment in its favor:

a) Declaring that the Community Bill of Rights Ordinance is unconstitutional under the Supremacy Clause, the First and Fourteenth Amendments, and the Contract Clause of the United States Constitution;

b) Declaring that the Community Bill of Rights Ordinance violates PGE's substantive and procedural due process rights;

c) Declaring that the Community Bill of Rights Ordinance is invalid and unenforceable, and its remedy provisions are preempted by the Second Class Township Code;

d) Declaring that the Community Bill of Rights Ordinance is preempted by the Pennsylvania Oil and Gas Act;

e) Declaring that the Community Bill of Rights Ordinance is exclusionary and therefore unenforceable;

f) Declaring that the Community Bill of Rights Ordinance is preempted by the Pennsylvania Limited Liability Company Law;

g) Declaring that the Agreement between Grant Township and the Community Environmental Legal Defense Fund is invalid, null, and void under the Pennsylvania Sunshine Act;

h) Permanently enjoining and restraining Grant Township from violating provisions of the Pennsylvania Sunshine Act;

i) Issuing an injunction prohibiting Grant Township from enforcing the Community Bill of Rights Ordinance;

j) Awarding PGE compensatory and consequential damages pursuant to 42 U.S.C. § 1983, including its legal rights taken as a result of the Community Bill of Rights Ordinance;

k) Awarding PGE all fees and costs incurred in this action, including all reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

l) Granting such other relief and this Court shall deem just and equitable under the circumstances.

ECF No. 5, pages 20-22.

**Defendant's Motion to Dismiss**

### 1) Standard of Review -- Motion to dismiss pursuant to Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a complaint if the court lacks subject matter jurisdiction to hear the case. Among other things, a defendant may challenge the court's subject matter jurisdiction based on the plaintiff's lack of standing. Id. Absent standing, and by extension subject matter jurisdiction, the court does not possess the power to decide the case, and any disposition it renders is a nullity. Int'l Ass'n of Machinists & Aerospace Workers v. NW. Airlines, 673 F.2d 700, 711 (3d Cir. 1982).

A defendant may challenge a court's subject matter jurisdiction with either a facial or factual attack. Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). Here, Defendant Grant Township acknowledges its motion to dismiss presents a factual attack. In such an attack, the defendant challenges the factual basis underlying the court's subject matter jurisdiction with extrinsic evidence, essentially making the argument that the allegations supportive of jurisdiction are not true. Cunningham v. Lenape Regional High Dist. Bd. of Educ., 492 F.Supp.2d 439, 477 (D.N.J. 2007). Because this Court must be satisfied at all times that it has the power to hear the case, it "may consider evidence outside the pleadings" in order "to resolve factual issues bearing on jurisdiction." Gould Electronics, 220 F.3d at 176; Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997).

Once the defendant presents extrinsic evidence contesting the jurisdictional facts set forth in the complaint, the court must permit the plaintiff to respond. Gould Electronics, 220 F.3d at 177. "The court may then determine jurisdiction by weighing the evidence presented by

11

the parties," "evaluating for itself the merits of the jurisdictional claims." Id.; Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In making this evaluation, no presumption of truthfulness attaches to the allegations set forth in the complaint. Mortensen, 549 F.2d at 891. Rather, the challenge must be evaluated solely on the merits of the evidence submitted on jurisdiction. Id.

### 2) Standing

The question of standing is a threshold inquiry. City of Pittsburgh v. West Pennsylvania Power Co., 147 F.3d 256, 264 (3d Cir. 1998). The party invoking federal jurisdiction bears the burden of establishing standing. Berg v. Obama, 586 F.3d 234, 238 (3d Cir. 2009).

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The standing inquiry "involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975).

To maintain an action in federal court, a plaintiff must demonstrate constitutional standing by satisfying several requirements imposed by Article III of the Constitution. See Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137-38 (3d Cir. 2009). The Third Circuit has summarized the "irreducible constitutional minimum" of Article III's standing requirements as consisting of three elements:

> First, the plaintiff must have suffered a concrete, particularized injury-in-fact, which must be actual or imminent, not conjectural or hypothetical. Second, that injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.

12

> Third, the plaintiff must establish that a favorable decision likely would redress the injury.

Id. (internal citation omitted). See also Perelman v. Perelman, 793 F.3d 368, 373 (3d Cir. Jul.13, 2015); Community Country Day School v. Erie School Dist., 2015 WL 3895348, at * 1 (3d Cir. Jun. 25, 2015) (summarizing the constitutional standing requirements as "injury in fact, causation and redressability.").

### 3) Status of DEP Permit Application

At the time of the commencement of this litigation in August of 2014, PGE had already applied to the DEP to reclassify the Yanity Well from a production well to an injection well and had already received the EPA permit. ECF No. 5, ¶ 25. Since the commencement of this action, the application for the DEP permit has taken an unusual procedural course, the details of which provide the basis for Defendant's argument for lack of standing.

In April of 2014, PGE applied to reclassify the Yanity Well from a production well to an injection well. The permit was granted around October of 2014, but by letter dated March 12, 2015, the DEP revoked the modification to the PGE permit "so that the Department may perform additional required review of the application under applicable law." ECF No. 80-2.

PGE reapplied to the DEP for modification on March 31, 2015.[3] PGE was informed by DEP that a decision on the application would be completed by the end of June (and according to state law, Section 3211(e) of Act 13, the DEP should have issued a permit within sixty days of the date of the application); yet, to date, no decision has been made. Instead, the DEP recently

---

[3] Grant Township makes much of PGE's decision to reapply for a permit, rather than to appeal the revocation of the permit.

13

suspended its review of the application. By letter dated August 12, 2015, the DEP notified PGE that it would not make a decision on the permit application. The letter reads:

> This letter is to inform you that the Department [of Environmental Protection] has suspended its review of your permit application submitted on March 31, 2015 ...
>
> The Department has nearly completed its technical review of this permit application, and is preparing responses to public comments the Department received pertaining to the application. However, a conflict between this project and an ordinance adopted by Grant Township entitled Community Bill of Rights Ordinance (Grant Township Ordinance) has been brought to our attention.
>
> The Department is aware that you are disputing the validity of the Grant Township Ordinance in the United States District Court for the Western District of Pennsylvania (Dkt. No. 14-209). The Department also recognizes that there is a serious question regarding the constitutional validity of the Grant Township Ordinance, and that a similar local ordinance enacted by Blaine Township was determined to be invalid in *Pennsylvania Ridge Coal, LLC v. Blaine Township*. However, as part of its permit application review, the Department has an obligation to consider applicable local ordinances related to environmental protection and the Commonwealth's public natural resources. In the event of a conflict between a permit application and a local ordinance, the Department may suspend its review of the application until the conflict has been resolved.
>
> As a result of the conflict between your application and the Grant Township Ordinance, and the potential for legal action against Department employees[4] being brought pursuant to this local ordinance, the Department has decided to suspend its review of your permit application pending a court decision concerning the validity of the Grant Township Ordinance. The Department will take a final action regarding issuance of the permit once a court has determined the validity of the local ordinance.

ECF No. 109-1.

### 4) Defendant's Argument

Defendant now moves to dismiss this entire action for lack of constitutional standing based upon PGE's failure to obtain a DEP permit. ECF No. 80. The only evidence presented by

---

[4] Grant Township's counsel, through its agent Chad Nicholson, testified before the DEP at a hearing on June 1, 2015 that the DEP may not issue a permit to PGE because to do so would violate local law.

14

Defendant in support of its motion to dismiss is the DEP's March 12, 2015 letter to PGE revoking the modification permit. Defendant's argument focuses on the proposition that PGE must obtain both the DEP and EPA permits as a "condition precedent" for standing to pursue this legal action.[5]

Defendant argues that without a valid state permit, PGE is unable to create or operate the injection well, which is the subject of this dispute. Defendant believes that any injury to PGE is not caused by the Grant Township Ordinance, but is caused by the Commonwealth's refusal to grant PGE a modification permit to operate its proposed injection well. ECF No. 81, page 9. Most recently, since the DEP's suspension of the application review, Grant Township maintains that PGE has suffered no harm as a result of the Ordinance and that "PGE's remedy is to pursue an action against the DEP to obtain a final decision on its permit application which, as PGE has continuously argued, is nearly two months overdue. In essence, PGE's argument currently before this Court is that DEP's inaction confers jurisdiction upon this Court." ECF No. 110, page 11.

By focusing its standing argument solely on the end result that Plaintiff seeks (i.e., the use of the Yanity Well for storage and injection purposes), Defendant has lost sight of the constitutional challenges before this Court. As presented in the Amended Complaint, the issue is not whether PGE should be permitted to store and inject oil and gas materials within Grant Township, but rather whether the Community Bill of Rights Ordinance enacted by Grant Township infringes on Plaintiff's federal constitutional rights, and violates, or is preempted by,

---

[5] For example, Defendant's proposed Order urges this Court to dismiss the entire action "without prejudice to re-file if, or when, the Commonwealth of Pennsylvania issues the necessary permits to PGE for the creation of, and operation of, the frack injection well which was the subject of this dispute." ECF No. 81-1. See also ECF No. 108, Transcript of Oral Argument, page 11 ("[W]ithout the state permit, the Ordinance does not affect the actions of the corporation. So that becomes a precondition ... So that precondition status is where we are resting now. Because without that state permit, there's actually nothing that is triggered, this is nothing that is vested.").

15

state law. The lack of a DEP permit is irrelevant to the legal claims pled in this case. See Allen v. Wright, 468 U.S. 737, 752 (1984) abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., ___ U.S. ___, 134 S.Ct. 1377 (2014) ("The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.").

Rather than engage in the proper inquiry, Defendant attempts to re-write Plaintiff's pleading by shifting the focus of the inquiry. In its argument, Defendant emphasizes that the Yanity Well is the subject of this dispute and its use as an injection site is the relief that Plaintiff seeks. This overlooks the legal claims as pled, and the declaratory and injunctive relief sought, by Plaintiff. This is particularly demonstrated by a review of the requested relief. See supra, pages 10-11. Perhaps this shift of focus is because the actual constitutional, statutory, and preemption claims made in the Amended Complaint are difficult to defeat on standing grounds.

Beyond attempting to re-characterize Plaintiff's Amended Complaint, Defendant also does not engage in the required legal standing analysis for each of Plaintiff's claims. Instead, Defendant's motion to dismiss takes a one-size-fits-all approach to standing in this case. In order to move for dismissal of this case in its entirety based upon lack of standing, Defendant is required to analyze the three elements required for constitutional standing (injury-in-fact, causation, and redressability) for each of Plaintiff's thirteen distinct claims. Only then is the Court able to review Defendant's motion appropriately under the law. See, for example, SWEPI, LP v. Mora County, New Mexico, 81 F.Supp.3d 1075 (D.N.M. Jan.19, 2015). Defendant does not do that here. Instead, Defendant provides the letter suspending review of Plaintiff's permit application as "evidence" and makes a sweeping argument that Plaintiff lacks standing to proceed with this entire legal action. The Court is not an advocate. It is not required to conduct a

16

lengthy legal examination of each element in a standing inquiry on each of Plaintiff's thirteen claims on behalf of Defendant, and, in fact, it will not do so. Instead, the Court notes that Defendant's attempt to circumvent the laborious legal work required to defeat standing on all thirteen causes of action has been rejected specifically by the Supreme Court of the United States: "standing is not dispensed in gross." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008).

One additional aspect of Defendant's argument bears discussion here: the alleged non-enforcement of part of the Ordinance was brought to light at the oral argument on the motion to dismiss on June 10, 2015. Apparently, in November of 2014, the Grant Township Supervisors informed PGE by letter that Grant Township would not enforce the First Amendment provisions of the Community Bill of Rights Ordinance. Although this letter is not before the Court, but was simply alluded to by the parties at the oral argument held on June 10, 2015 [ECF No. 108, pages 9, 22], its contents are not dispositive of the standing inquiry. A defendant's voluntary cessation of a challenged practice rarely moots a federal case because a "'party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001) citing Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000) and Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 48 U.S. 49, 66-67 (1987).[6] See also SWEPI, LP, 81 F.Supp.3d at 1155 ("That the Defendants have not prosecuted SWEPI, LP for violating the Ordinance by filing this case also does not undermine its standing to bring a First

---

[6] A defendant's voluntary cessation may moot a case when a challenged regulation is repealed and the government does not openly express intent to reenact it. Camfield v. City of Okla. City, 248 F.3d 1214, 1223-24 (10th Cir. 2001). Such is not the case here as Grant Township has not repealed the Ordinance.

17

Amendment claim."). Thus, Grant Township's purported non-enforcement of the Ordinance in this regard is irrelevant to the issue of standing.

The motion to dismiss will be denied. An appropriate Order will issue.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge