UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA GENERAL ENERGY
COMPANY, L.L.C.

                           Plaintiff,

    vs.

GRANT TOWNSHIP,

                    Defendant.

Case No.  1:14-cv-209

Magistrate Judge Susan Paradise Baxter

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, Pennsylvania General Energy Company, L.L.C. ("PGE"), by its undersigned counsel, submits this Brief in Support of Motion for Summary Judgment.

**I.**     **INTRODUCTION**

This Court is fully familiar with this matter and Grant Township's Community Bill of Rights Ordinance (the "Ordinance"), which is at the heart of this dispute. PGE filed this action to challenge the constitutionality, validity and enforceability of the Ordinance.  In response, Grant Township filed a Counterclaim alleging a civil rights violation under 42 U.S.C. § 1983 on the grounds that PGE violated the people of Grant Township's "right of local, community self-government" by filing an action to challenge the Ordinance.

PGE previously moved this Court for judgment on the pleadings as to some of its constitutional claims, as well as the majority of its state law claims.  On October 14, 2015, this Court entered a Memorandum Opinion and Order in which it determined, for purposes of judgment on the pleadings, that it did not need to reach a decision on the constitutional claims

since the Court could invalidate the requested portions of the Ordinance without reaching the merits of the constitutional claims. (Docket No. 113, Memorandum Opinion, p. 21.)

Because PGE's damages and request for attorneys' fees arise out of its constitutional claims, PGE now moves for summary judgment on its constitutional claims, which are set forth in Counts I through VI of the Amended Complaint. PGE also respectfully requests that this Court enter summary judgment in favor of PGE on Grant Township's Counterclaim. PGE is entitled to compensatory and consequential damages for Grant Township's violation of 42 U.S.C. § 1983, as well as attorneys' fees pursuant to 42 U.S.C. § 1988.  Upon entry of summary judgment in favor of PGE, the only remaining issue for trial will be the amount of damages to be awarded to PGE.  A petition for attorneys' fees and costs will be filed after the trial is concluded.

## II.   FACTUAL BACKGROUND

PGE is in the business of exploration and development of oil and gas, and PGE currently owns and operates natural gas wells in Grant Township, Pennsylvania.  (Plaintiff's Concise Statement of Material Facts ("SOF"), ¶ 1.)   PGE's exploration and development activities include drilling and operating oil and gas wells and managing brine and other produced fluids from operating wells.  (SOF, ¶ 2.)  In 1997, PGE's predecessor in interest put into production a deep gas well in Grant Township on property known as the Yanity Farm (the "Yanity Well"). (SOF, ¶ 3.) Based on its intention to convert the use of the Yanity Well to an injection well for disposal of produced fluids generated at other PGE oil and gas wells, PGE proceeded to obtain regulatory approval for such use. (SOF, ¶¶ 3, 8.)

The United States Environmental Protection Agency ("EPA") issues underground injection control ("UIC") permits to authorize the injection of brine and other produced fluids for disposal.  (SOF, ¶ 4.)  PGE submitted an application to EPA for a UIC permit to convert the

Yanity Well into an injection well and to inject produced fluids generated at other PGE oil and gas wells into the Yanity Well.  (SOF, ¶ 5.)  EPA issued the UIC permit to PGE on March 19, 2014, which was subsequently appealed to the United States Environmental Appeals Board.  On August 21, 2014, the Environmental Appeals Board issued an order denying review of the petitions for appeal, and on September 11, 2014, EPA issued a final UIC permit to PGE.  (SOF, ¶ 6.)

Pennsylvania also regulates injection wells and ancillary facilities under the authority of Pennsylvania environmental statutes. (SOF, ¶ 7.) PGE submitted an application to the Pennsylvania Department of Environmental Protection ("DEP") to change the status of the Yanity Well so that it could be used as an injection well. (SOF, ¶ 9.) On October 22, 2014, DEP issued a permit which authorized a change in the status of the Yanity Well and which allowed PGE to use the Yanity Well as an injection well ("DEP Permit"). Starting on October 22, 2014, PGE had all permits required to start to use the Yanity Well to inject produced fluids from PGE's other oil and gas development operations. (SOF, ¶ 10.) The only reason PGE did not start to operate the Yanity Well to receive produced fluids on or around October 22, 2014, was the enactment by Grant Township of the ordinance known as the Community Bill of Rights Ordinance (the "Ordinance").  (*Id*.) On March 12, 2015, DEP withdrew the DEP Permit. PGE, which possessed all required federal and state permits, would have operated the Yanity Well as an injection well from on or around October 22, 2014 until March 12, 2015, but for the enactment of the Ordinance. (SOF, ¶ 11.) As a result, PGE incurred substantial damages. PGE will provide evidence of its damages at the trial of this matter. (*Id*.) In response to the withdrawal of the DEP Permit, PGE re-submitted an application to DEP for a permit to change the status of the Yanity Well to an injection well. That application is pending. (SOF, ¶ 12.)

On June 3, 2014, Grant Township adopted the Ordinance.  (SOF, ¶ 13.)  The Ordinance expressly prohibits within Grant Township any corporation from "engag[ing] in the depositing of waste from oil and gas extraction" and invalidates any "permit, license, privilege, charter, or other authority issued by any state or federal entity which would violate [this prohibition] or any rights secured by [the Ordinance], the Pennsylvania Constitution, the United States Constitution, or other laws."  (SOF, ¶ 14.)  The Ordinance defines "[c]orporation" as "any corporation, limited partnership, limited liability partnership, business trust, public benefit corporation, business entity, or limited liability company organized under the laws of any state of the United States or under the laws of any County."  (SOF, ¶ 15.)  PGE is a "corporation" as the term is defined in the Ordinance.  (SOF, ¶ 16.)

"Depositing of waste from oil and gas extraction," as defined by the Ordinance, includes, without limitation: "[T]he depositing, disposal, storage, beneficial use, treatment, recycling, injection or introduction of materials including, but not limited to, brine, "produced water," "fract [sic] water," tailings, flowback or any other waste or by-product of oil and gas extraction, by any means.  The phrase shall also include the issuance of, or application for, any permit that would purport to allow these activities."  (SOF, ¶ 17.)  The operation of oil and gas wells unavoidably requires engaging in the activity of "depositing of waste from oil and gas extraction" since any producing well will produce brine and other fluids, which must be disposed of by the operator.  (SOF, ¶ 18.)

The Ordinance further provides that corporations that violate or seek to violate the Ordinance "shall not be deemed to be 'persons,' nor possess any other legal rights, privileges, powers, or protections which would interfere with the rights or prohibitions enumerated by this Ordinance. (SOF, ¶ 19.)  'Rights, privileges, powers or protections' shall include the power to

assert state or federal preemptive laws in an attempt to overturn this Ordinance, and the power to assert that the people of the municipality lack the authority to adopt this Ordinance."  (*Id.*) Under the Ordinance, "[a]ny corporation or government that violates any provision of [the Ordinance] shall be guilty of an offense and, upon conviction thereof, shall be sentenced to pay the maximum fine allowable under State law for that violation."  (SOF, ¶ 20.)  In addition, the Ordinance asserts that "private corporations engaged in the depositing of waste from oil and gas extraction are wrongly recognized by the federal and state government as having more 'rights' than the people who live in our community, and thus, recognition of corporate 'rights' is a denial of the rights of the people of Grant Township."  (SOF, ¶ 21.)

As addressed below, PGE is entitled to summary judgment on its constitutional claims and as to Grant Township's counterclaim. PGE is entitled to compensatory and consequential damages for its constitutional claims under Section 1983, as well as attorneys' fees pursuant to Section 1988.  PGE suggests that upon entry of summary judgment in favor of PGE, the only remaining issue for trial will be the amount of damages to be awarded to PGE.[1]  A petition for fees and costs will be filed after the trial is concluded.

## III.  <u>ARGUMENT</u>

### A.  **Legal Standard.**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will only be denied when there is a genuine dispute of material fact, i.e., if

---

[1] Grant Township seems to believe that because it has altered its form of government to a Home Rule Charter community, liability to PGE and damages incurred by PGE before that change should be eliminated. Grant Township's form of government does not impact the fact that Grant Township violated the U.S Constitution and caused significant harm to PGE as a result of the enactment of the Ordinance. This case should proceed to trial to determine the damages for that misconduct.

the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*McWreath v. Range Resources – Appalachia, LLC*, 81 F.Supp. 3d 448, 458 (W.D. Pa. 2015)

(citing *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005)).

> **B.** **There Are No Material Issues of Fact in Dispute, and PGE Is Entitled to Judgment as a Matter of Law on Its Constitutional Claims.**

Judgment as a matter of law on PGE's constitutional claims is appropriate in the instant case. Grant Township concedes it adopted the Ordinance, and it does not dispute the plain text of the Ordinance. In its Answer, Grant Township consistently responds that "the text of the Ordinance is self-evident, and constitutes the best evidence of the content of the law." (Docket No. 10, at ¶¶ 8-17.) Moreover, the parties are in agreement and have been in agreement for quite some time that there is no genuine dispute of material fact. Most recently, on November 29, 2015, Grant Township filed a Response in Opposition to PGE's Motion for Entry of Case Management Order, wherein Grant Township again conceded "that all remaining claims are appropriate for resolution through dispositive motions." (Docket No. 148, ¶ 10.) As such, there are no questions of material fact for the jury to resolve with respect to liability.

> **C.** **The Ordinance Violates the Supremacy Clause of the U.S. Constitution.**

Count I of the Amended Complaint alleges that the Ordinance violates the Supremacy Clause of the United States Constitution. (Docket No. 5, at ¶¶ 31-36.) The Supremacy Clause provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land. . . ." U.S. Const. Art. VI, Cl. 2. It has long been established that corporations are considered "persons" under the United States Constitution for purposes of, among other things, freedom of speech and equal protection of the laws under the First and Fourteenth Amendments. *See, e.g., Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 687 (1978) ("[B]y 1871, it was well understood that

corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis."); *Safeguard Mutual Ins. Co. v. Miller*, 472 F.2d 732, 733 (3d Cir. 1973) (Corporations "are deemed to be persons within the meaning of the equal protection and due process clauses of the Fourteenth Amendment, and persons, as well, whose rights are protected by 42 U.S.C. § 1983."); *Schultz v. Hughesville Borough*, 2011 WL 3273076, *6 (M.D.Pa. 2011) ("For purposes of § 1983, a corporation is a person who may bring suit for deprivation of rights secured under the Constitution.").

The Ordinance defines a "corporation" as "any . . . limited liability company organized under the laws of any state of the United States or under the laws of any County."  (SOF, ¶ 14.) The Ordinance further provides that corporations that violate or seek to violate the Ordinance "shall not be deemed to be 'persons,' nor possess any other legal rights, privileges, powers, or protections which would interfere with the rights or prohibitions enumerated by this ordinance. 'Rights, privileges, powers, or protections' shall include the power to assert state or federal preemptive laws in an attempt to overturn this Ordinance."  (SOF, ¶ 18.)

As a corporation, PGE is considered a "person" under the United States Constitution and is, therefore, endowed with the constitutional rights provided to all persons in the First and Fourteenth Amendments and the Supremacy Clause.  On its face, the Ordinance was designed to and does strip PGE of its status as a "person," thereby divesting PGE of all of its constitutionally protected rights.

The instant case is analogous to another case out of the Western District of Pennsylvania styled as *Penn Ridge Coal, LLC, et al. v. Blaine Twp.*, Civil Action No. 2:08-cv-01452-DWA (W.D.Pa. Sep. 16, 2009).  In *Penn Ridge*, Blaine Township adopted an ordinance known as the "Corporate Rights Ordinance," which, among other things, declared that "[c]orporations shall not

be considered to be 'persons' protected by the Constitution of the United States or the Constitution of the Commonwealth of Pennsylvania within the Second Class Township of Blaine, Washington County, Pennsylvania." *Id.* at p. 4.  The plaintiffs filed a complaint against Blaine Township asserting 15 causes of action against the Township with respect to several problematic ordinances that it had adopted, including the Corporate Rights Ordinance.  *Id.* at p. 9.  The plaintiffs subsequently filed a Motion for Judgment on the Pleadings arguing, among other things, that the Corporate Rights Ordinance was unconstitutional as violative of the Supremacy Clause.  *Id.*

In ruling on the Motion for Judgment on the Pleadings, the Court in *Penn Ridge* held that "the Corporate Rights Ordinance is directly at odds with Supreme Court precedent clearly establishing that corporations are 'persons' with the right to assert various constitutional claims." *Id.* at p. 10.  "Under the Supremacy Clause of the United States Constitution, Article 6, Clause 2, the Constitution 'shall be the supreme Law of the Land.'"  *Id.*  The Court further noted that "[i]t is the role of the federal judiciary to interpret the Constitution and the legislatures may not annul the judgments of those courts and destroy the rights acquired under those judgments."  *Id.*  The Court held that Blaine Township "[did] not have the legal authority to annul constitutional rights conferred upon corporations by the United States Supreme Court" and, therefore, "the Corporate Rights Ordinance [was] invalid and unenforceable under the Supremacy Clause of the United States Constitution."  *Id.* at p. 11.

Likewise, in a recent decision out of the United States District Court, District of New Mexico, the Court held that multiple provisions of a township ordinance seeking to ban all oil and gas development and extraction by corporations violated the Supremacy Clause.  *SWEPI, LP v. Mora Cty.*, 81 F. Supp. 3d 1075, 1168-72 (D.N.M. 2015).  As one example, the Court found

that "[t]he Ordinance, in contradiction to the Constitution and Supreme Court precedent, states that corporations that violate, or that seek to violate, the Ordinance have no First or Fifth Amendment rights.  Mora County lacks the authority to nullify constitutional rights."  *Id.* at 1168.  Accordingly, the Court held that this provision of the ordinance violated the Supremacy Clause and was therefore invalid.  *Id.* at 1169.

The same result should be reached in the instant case.  The Ordinance violates the Supremacy Clause of the United States Constitution, as consistently interpreted by the United States Supreme Court and other federal courts. Because the Ordinance divests PGE and other similarly situated corporations of their fundamental rights as "persons" under the law, PGE is entitled to judgment as a matter of law and a declaration that the Ordinance is unconstitutional under the Supremacy Clause.

### D.   The Ordinance Violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

Count II of the Amended Complaint alleges that the Ordinance violates the Equal Protection Clause of the United States Constitution. (Docket No. 5, at ¶¶ 37-46.) The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. 14, § 1.  "The essence of the Equal Protection Clause is that, absent a rational basis for doing otherwise, the state must treat similarly situated persons alike." *Marchese v. Umstead*, 110 F.Supp.2d 361, 370 (E.D.Pa. 2000).  It is well-established that corporations are considered "persons" for purposes of Constitutional rights, such as the right to equal protection of the laws, and they should be treated the same as similarly situated natural persons.  *See Monell*, 436 U.S. at 687 ("[B]y 1871, it was well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory

analysis."); *Miller*, 472 F.2d at 733 (Corporations "are deemed to be persons within the meaning of the equal protection and due process clauses of the Fourteenth Amendment, and persons, as well, whose rights are protected by 42 U.S.C. § 1983.").

Moreover, the Supreme Court has held that arbitrary disparate treatment between corporations and individuals bears no rational relationship to a legitimate governmental purpose. *See, e.g., Frost v. Corp. Com. of Oklahoma*, 278 U.S. 515, 522 (1929).  In *Frost*, the Supreme Court held that "[t]he purpose of the clause in respect of equal protection of the laws is to rest the rights of all persons upon the same rule under similar circumstances."  *Id.* (citation omitted). The challenged provision in *Frost* favored corporations over individuals.  However, the Supreme Court found that the arbitrary classification is violative of Equal Protection whether individuals are favored over corporations or vice versa.  In this regard, the Supreme Court held:

> A classification which is bad because it arbitrarily favors the individual as against the corporation certainly cannot be good when it favors the corporation as against the individual. In either case, the classification, in order to be valid, must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. That is to say, *mere* difference is not enough: the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.'

*Id.* at 522-23 (citations omitted).

The Ordinance, without any rational basis, treats corporations and governments seeking to deposit, inject or store materials, including waste from oil and gas extractions or "fract [sic] water," within Grant Township differently than similarly situated natural persons.  In this regard, the Ordinance only applies to corporations and government entities seeking to deposit, dispose of

or store fluids produced from or utilized in oil and gas drilling activities.  The Ordinance does not apply to natural persons who engage in the very same activity.[2]

Grant Township claims that it is concerned about contamination of water and adverse health effects of depositing of waste from oil and gas extraction, yet it is not disputed that federal and state agencies regulate oil and gas activities.  Corporations, such as PGE, must comply with all federal and state requirements in order to operate injection wells.  Under the Ordinance, an individual landowner could apply for the requisite federal and state permits and seek to deposit oil and gas materials into a UIC well.  However, neither the text of the Ordinance nor Grant Township explains why the fear of water contamination and adverse health effects is allayed if an individual is involved.  Logically, a company that is engaged in the business of oil and gas development would have more knowledge and experience to safely deposit materials and waste into a well than an individual engaging in the same activity.  There is no rational basis for the disparate treatment here.  Rather, Grant Township has simply targeted corporations in order to keep those organizations from operating UIC wells within the township.

Accordingly, the Ordinance violates the Equal Protection Clause of the United States Constitution by treating corporations differently than similarly situated natural persons.  As such,

---

[2] An Equal Protection violation was also alleged in the *Mora County* case, but the District of New Mexico found a rational basis for the disparate treatment of corporations.  *Mora County*, 81 F. Supp. 3d at 1180. However, the Equal Protection analysis in that case is distinguishable.  The ordinance in *Mora County* was an outright ban on ***all*** oil and gas extraction and development activities.  *Id.* at 1093.  The defendant argued that the distinction between corporations and individuals was not arbitrary because only corporations have the resources to engage in fracking activities.  *Id.* at 1175.  Therefore, the court determined "[i]t is rational that, if corporations and not individuals engage in fracking, Mora County would ban corporations but not individuals from engaging in hydrocarbon exploration and extraction." *Id.* at 1176.  In contrast, Grant Township only seeks to ban depositing of waste from oil and gas extraction. While Grant Township contends that it is concerned about water contamination, it lacks a rational basis for only banning corporations from injection activities.  Grant Township cannot arbitrarily decide to ban only certain lawful activities by corporations and expect to pass muster under the Equal Protection Clause of the Fourteenth Amendment.

PGE is entitled to judgment as a matter of law and a declaration that the Ordinance is unconstitutional under the Fourteenth Amendment.

> **E.      The Ordinance Violates the Petition Clause of the First Amendment of the U.S. Constitution.**

Count III of the Amended Complaint alleges that the Ordinance violates the First Amendment of the United States Constitution. (Docket No. 5, at ¶¶ 47-51.) The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances."   U.S. Cons. Amend. 1.   "The First Amendment's petition clause protects a citizen's right of access to governmental mechanisms for the redress of grievances, including the right of access to the courts for that purpose."   *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 535, n.31 (3d Cir. 1996) (finding that an oral-release-agreement between the plaintiffs and a municipality would implicate important individual interests or rights because although the plaintiffs' Section 1983 claims were claims for money damages, underlying their claims was their "interest in redressing a possible violation of their constitutional rights").   "The [Supreme Court] has recognized that First Amendment protection extends to corporations." *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 342 (2010) (collecting cases).

"[T]he rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights."   *United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).   "The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints" and the Supreme Court has therefore "repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or

even because the laws do in fact provide a helpful means of dealing with such an evil." *Id. See also*, *Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 160 (1939) ("Although a municipality may enact regulations in the interest of the public safety, health, welfare or convenience, these may not abridge the individual liberties secured by the Constitution to those who wish to speak, write, print or circulate information or opinion.").

In the *Mora County* case, the District of New Mexico held that an ordinance seeking to ban all oil and gas extraction and development activities violated a corporation's First Amendment rights. *Mora County*, 81 F. Supp. 3d at 1187-88. One section of the ordinance stated that corporations that violate or seek to violate the prohibitions in the ordinance have no rights under the First Amendment of the U.S. Constitution. *Id.* at 1187. The court noted that "First Amendment protection extends to corporations." *Id.* at 1188. The court found that the plaintiff was "seeking to violate the ordinance" by exercising its First Amendment rights by filing a suit to overturn the ordinance. *Id.* The court held: "According to Section 5.5, because of [the plaintiff's] exercise of its First Amendment rights, it no longer has First Amendment rights. Such a law is illogical and cannot stand. Section 5.5 is overly broad in its restriction of First Amendment rights, and, as such, must be invalidated." *Id.*

The same result should be reached in the instant case. The Ordinance was designed to and does divest corporations, such as PGE, of their constitutional right to petition the government for redress of grievances in that it strips corporations of: (1) their status as "persons" under the law; (2) their right to assert state or federal preemptive laws in an attempt to overturn the Ordinance; and (3) their power to assert that Grant Township lacks the authority to adopt the Ordinance. (SOF, ¶ 19.) As such, the Ordinance is aimed at suppressing PGE's fundamental right to lodge a complaint, or seek the assistance of the Court, for the redress of its grievances

related to the Ordinance.  Under the above-cited law, regardless of any secondary motive or goal of Grant Township in adopting the Ordinance, the Ordinance must not abridge the liberties secured by the First Amendment to the Constitution.  As written, the Ordinance violates the Petition Clause, and PGE is entitled to judgment as a matter of law and a declaration that the Ordinance is unconstitutional under the First Amendment.

**F.      The Ordinance Violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.**

Counts IV and V of the Amended Complaint allege that the Ordinance violates the Substantive and Procedural Due Process protections of the United States Constitution. (Docket No. 5, at ¶¶ 52-62.) The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Cons. Amend. 14 § 1.  "Thus, those to whom the Amendment applies have a right to be free from bodily restraint but also the right . . . to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of [their] own consciences, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."  *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997) (citing *Bd. of Regents v. Roth,* 48 U.S. 564, 572 (1972)).  "While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component."  *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992) ("it is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure").

i.   <u>The Ordinance Violates PGE's Substantive Due Process Rights.</u>

"[T]he fabric of substantive due process, as woven by our courts, encompasses at least two very different threads." *Nicholas*, 227 F.3d at 139.  The "first thread" applies when the plaintiff is challenging a legislative act, such as a statutory enactment or an ordinance.  *Id.* "Typically, a legislative act will withstand substantive due process challenge if the government 'identifies a legitimate state interest that the legislature could rationally conclude was served by the statute,' although legislative acts that burden certain 'fundamental' rights may be subject to stricter scrutiny."  *Id.* (citing *Alexander*, 114 F.3d at 1403 ("Where fundamental rights or interests are involved, a state regulation limiting these fundamental rights can be justified only by a compelling state interest and legislative enactments ***must be narrowly drawn to express only the legitimate state interests at stake***.") (emphasis added).  Therefore, the doctrine of Substantive Due Process under the Fourteenth Amendment prohibits, among other things, the government from abrogating a person's constitutional rights.

In the instant case, by adopting the Ordinance, Grant Township intended to deny corporations, such as PGE, of their long-standing constitutional rights, including their rights under the First and Fourteenth Amendments, the Supremacy Clause and the Contract Clause of the United States Constitution.  The Ordinance, on its face, denies corporations equal protection under the law by making it unlawful only for corporations and governments to engage in the depositing of waste from oil and gas extraction. The Ordinance, on its face, denies corporations their property rights by invalidating lawfully issued permits, which in turn impairs a corporation's leasehold interests with landowners. The Ordinance, on its face, mandates that any corporation that violates any provision of the Ordinance "shall be guilty of an offense" and "shall be sentenced to pay the maximum fine allowable," which denies corporations due process of law.

(SOF, ¶ 20.)  The Ordinance, on its face, strips corporations of their status as "persons" and all fundamental rights guaranteed to corporations under the United States Constitution.

The purpose of the Ordinance is clear: to deprive corporations of their fundamental rights and to prevent them from engaging in lawful injection activities.   Indeed, the Ordinance expresses this purpose: "Whereas, *private corporations* engaged in the depositing of waste from oil and gas extraction *are wrongly recognized by the federal and state governments as having more 'rights' than the people who live in our community*, and thus, recognition of corporate 'rights' is a denial of the rights of the people of Grant Township."   (SOF, ¶ 21 (emphasis added).)

Because the Ordinance impairs PGE's fundamental constitutional rights, the applicable standard of review is strict scrutiny.  The Ordinance cannot withstand such an analysis.  While the Ordinance references environmental and health concerns, the Ordinance is not narrowly tailored to serve this interest because it imposes an outright ban on the depositing of oil and gas wastes.  In other circumstances where the outright ban on an activity impeded the constitutional right to free speech, this Court has held that the ordinance was not narrowly tailored.  For example, in *Ramsey v. City of Pittsburgh*, 764 F. Supp. 2d 728, 731 (W.D. Pa. 2011), this Court addressed the constitutionality of a city ordinance that banned hand billing.  "A statute is narrowly tailored to serve a substantial government interest so long as . . . the regulation promotes a substantial government interest *that would be achieved less effectively absent the regulation*."  *Id.* at 734 (emphasis added).  The city's proposed government interest was the prevention of litter.  However, "the City already has an ordinance that proscribes littering, therefore the City should be able to effectively control its littering problem without broad restrictions on hand billing."  *Id.*  Therefore, the Court held that the City failed "to demonstrate

that its restriction on constitutionally-protected speech either serves a substantial government interest or is narrowly tailored to advance that interest." *Id.*

In the instant case, the Ordinance goes well beyond what is necessary to serve the interest in health, safety and welfare of Grant Township's residents and the environment.  Grant Township could have drafted a narrow ordinance that addressed where underground injection activities could take place without including any of the other suspect prohibitions.  Instead, Grant Township adopted an ordinance that broadly defines "depositing of waste from oil and gas extraction," which encompasses much more than injection activities, and it includes provisions that trample on corporations' fundamental right to petition the government for redress of its grievances. Such an ordinance is not "narrowly tailored."

In addition, similar to the *Ramsey* case, injection activities are already heavily regulated by federal and state laws, which provide for the optimal development and management of oil and natural gas while protecting the health, safety, and welfare of Pennsylvanians and the environment.  As such, safety and health interests are already effectively addressed by the regulatory agencies without the need for the broad restrictions contained in the Ordinance.  Moreover, it is clear from the face of the Ordinance and the admissions of Grant Township that the Ordinance was ***not*** adopted to serve this interest.  Rather, it was adopted to block corporate rights and lawful activities by attempting to change the current form of government. Grant Township has conceded that the claims and arguments it has raised to defend the Ordinance are contrary to existing law. (SOF, ¶ 22 (a-e).) In addition, Grant Township's counsel has admitted on numerous occasions that claims like the ones raised by Grant Township are against existing precedent and that Grant Township and its counsel are essentially seeking to alter our country's structure of government, either peacefully or through open civil disobedience. (SOF, ¶ 23 (a-e).)

In sum, because the motivation for the Ordinance is to block corporate rights and to impede federal constitutional precedent, the Ordinance cannot withstand strict scrutiny, as it is not narrowly tailored to serve an important governmental interest.

Alternatively, the Ordinance cannot even pass muster under the lesser rational basis standard.  In *Cty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006), the plaintiff filed an action against the township alleging, among other things, a facial challenge to a zoning ordinance.  The Third Circuit applied the rational basis test to the substantive due process challenge because the plaintiff did not allege that the ordinance impaired a fundamental right. *Id.*  Applying the rational basis test, the Third Circuit reversed the District Court's dismissal of the claim finding irrationality and arbitrariness in the adoption of the ordinance.  *Id.* at 170.  The plaintiff charged the defendant with "attempting to impede [the plaintiff's] sand and gravel extraction operations on one tract, and their attempts to expand to another tract."  *Id.*  "On the heels of this alleged animus, the Township enacted the Ordinance, which rezoned appellants' land from Industrial to either Rural Residential or Open Space."  *Id.*  The Third Circuit found there was nothing that "would indicate any possible motivation for the enactment of the Ordinance other than a desire to prevent appellants from continuing to operate and expand their extraction business.  Such animus is not a legitimate reason for enacting a zoning ordinance, and is unrelated to land use planning."  *Id.* (citations omitted).

Based on the text of the Ordinance and statements from counsel for Grant Township, the primary motivation and purpose for the Ordinance is to burden corporate fundamental rights and prevent lawful injection activities.  This is not a legitimate reason for adopting the Ordinance. Accordingly, the Ordinance violates PGE's substantive due process rights.

ii.     <u>The Ordinance Violates PGE's Procedural Due Process Rights.</u>

The Ordinance provides for no process or procedure that could be utilized by PGE to challenge the provisions of the Ordinance and is written to render invalid any federal or state permit that authorizes injection activities.   The Ordinance, therefore, deprives PGE of its property interests related to its UIC permit.   Moreover, the Ordinance bans "depositing of waste from oil and gas extraction," which is defined very broadly and in a way that impedes PGE's operations at its currently operating traditional wells.   As such, the Ordinance deprives PGE of its property interests in its leases with landowners in Grant Township.   The Third Circuit and District Courts within the Third Circuit have held that permits and other permission for intended uses of land implicate a property interest.   *See, e.g., Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165 (3d Cir. 1997) ("all cases involving zoning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiffs implicate the kind of property interest protected by substantive due process"); *MFS, Inc. v. DiLazaro,* 771 F. Supp. 2d 382, 435 (E.D.Pa. 2011) ("in cases involving governmental permission for some intended use of land such as permits, those matters implicate a fundamental property interest in the ownership of land.").   Moreover, counsel for Grant Township does not dispute that corporations have property interests in their government-issued permits:

> "Corporations are persons under the law," [Tom Linzey] said. "If you tell them they can't use the permit, then you're depriving the corporation of their property, because corporations are persons under the law. They have the same protections we do."

(SOF, ¶ 23 (b).)

Because the Ordinance seeks to prohibit corporations, such as PGE, from petitioning the government for redress of grievances, the Ordinance provides no process or procedure of which

PGE can avail itself to address the deprivation of its legal property rights and interests caused by the Ordinance.  Therefore, the Ordinance deprives PGE of its procedural due process rights under the Fourteenth Amendment of the Constitution.

      **G.**     **The Ordinance Violates the Contract Clause of the U.S. Constitution.**

      Count VI of the Amended Complaint alleges that the Ordinance violates the Contract Clause of the United States Constitution. (Docket No. 5, at ¶¶ 63-67.) The U.S. Constitution provides that "no state shall enter into any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  "In order to prove a violation of this constitutional provision, a plaintiff must demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship.'"  *Transport Workers Union, Local 290 by & Through Fabio v. SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998) (citations omitted).   "Thus, Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial."  *Id.* "If it is determined that a substantial impairment of a contractual relationship has occurred, the court must further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose."  *Id.*  (citations admitted).   "The purpose of the Contract Clause is to protect the legitimate expectations that arise from such contractual relationships from unreasonable legislative interference.  Thus, [courts] must determine whether there has been a substantial impairment of a contractual relationship by inquiring whether legitimate expectations of the plaintiffs have been substantially thwarted."  *Id.* at 622.

      In the instant case, the Ordinance contains an outright ban on "depositing of waste from oil and gas extraction."   The "depositing of waste" is defined very broadly to include the

following: "the depositing, disposal, storage, beneficial use, treatment, recycling, injection, or introduction of materials, including, but not limited to, brine, "produced water," "fract [sic] water," tailings, flowback or any other waste or by-product of oil and gas extraction, by any means." (Am. Complaint, at Ex. 1, § 1(a).) Moreover, the phrase also includes "the issuance of, or application for, any permit that would purport to allow these activities." (*Id.*) Because of the outright ban and the broad manner in which "depositing of waste from oil and gas extraction" is defined, the Ordinance substantially impairs PGE's leases with the owners of subsurface estates within Grant Township.

In this regard, oil and gas leases provide for the exploration and extraction of oil and natural gas materials, which involves drilling and injecting fluid into the ground at high pressure in order to fracture shale rocks to release natural gas. The Ordinance, as written, prohibits the depositing of water, the disposal of waste, and storage activities relating to oil and gas extraction. If PGE is not permitted to engage in depositing, injection, and storage activities within Grant Township, it will be unable to realize the benefits of the contracts it has with landowners at great cost to PGE. At the time that PGE entered into leases with landowners in Grant Township, oil and gas extraction activities were lawful. Prior to the adoption of the Ordinance, injection well activities were also lawful. Based on the laws in place at the time of contracting, the legitimate expectation was that PGE would be able to conduct its lawful oil and gas extraction activities. Because oil and gas exploration and development, although regulated by federal and state agencies, is legally permissible, the Ordinance substantially impairs the legitimate expectations of PGE under its leases. Moreover, as discussed above, because the Ordinance does not rationally support a legitimate state interest, the impairment of PGE's contracts is not reasonable

and appropriate.   Accordingly, the Ordinance violates the Contract Clause of the United States

Constitution.

### H.      Grant Township's Counterclaim Fails to Meet the Essential Elements of a Claim under 42 U.S.C. § 1983.

Grant Township alleges a Counterclaim, in which it seeks relief pursuant to 42 U.S.C.

Sections 1983 and 1988. (Docket No. 10, at ¶¶ 34-63.) To prevail on a Section 1983 claim, a

plaintiff must establish the deprivation of a constitutional right and that the alleged deprivation

was committed by a person acting under color of state law. *Angelico v. Lehigh Valley Hosp.,

Inc.*, 184 F.3d 268, 277 (3d Cir. 1999).  If a plaintiff sues private individuals under Section 1983,

he must point to some action that is "fairly attributable" to the state.  *Id.* (citing *Lugar v.

Edmondson Oil Co.*, 457 U.S. 922, 930 (1982)).   "A person may be found to be a state actor

when (1) he is a state official; (2) 'he has acted together with or has obtained significant aid from

state officials,' or (3) his conduct is, by its nature, chargeable to the state." *Id.* (citing *Lugar*, 457

U.S. at 937).  Importantly, "'without a limit such as this, private parties could face constitutional

litigation whenever they seek to rely on some state rule governing their interactions with the

community surrounding them.'"  *Id.*

The Supreme Court has "consistently held that "the mere fact that a business is subject to

state regulation does not by itself convert its action into that of the State for purposes of the

Fourteenth Amendment." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citations

omitted).  Thus, a private entity is not a state actor "unless 'there is a sufficiently close nexus

between the State and the challenged action of the regulated entity…Whether such a 'close

nexus' exists…depends on whether the State 'has exercised coercive power or has provided such

significant encouragement, either overt or covert, that the choice must in law be deemed to be

that of the State.'"   *Id.* (citations omitted.)   Accordingly, "the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct.'"   *Id.* at 50 (citations omitted).

In the instant case, Grant Township filed a Counterclaim against PGE under Section 1983 alleging that PGE seeks to "violate the people of Grant Township's right of local, community self-government" by filing the instant action against Grant Township to challenge the Ordinance. (*See* Docket No. 10, p. 24.)   Grant Township argues that PGE is acting "under color of state law" because it is invoking state law and "governmentally-bestowed corporate 'rights'" to nullify the Ordinance.   (*Id.*, at p. 26.)   Contrary to Grant Township's allegations, PGE is not a state actor. PGE is a private entity which filed a private, civil lawsuit.   PGE is not acting in conjunction with the State or at the State's direction.   The mere fact that PGE is subject to state regulation and is invoking state laws to file a private lawsuit does not transform PGE into a state actor for purposes of Section 1983.   In fact, the Supreme Court has expressly held that purely private conduct is excluded from the reach of Section 1983.

Moreover, Grant Township fails to allege the deprivation of a constitutional or statutory right.   This Court correctly determined in its October 14, 2015 Memorandum Opinion that Grant Township's arguments in support of its Counterclaim failed because Grant Township cited no legal precedent that could support its interpretation of the constitutional provisions that allegedly support its claim of a right to local, community self-government.   (Docket No. 119, p.4.)

## I.      Damages and Attorneys' Fees under Section 1983.

Since PGE is entitled to summary judgment on its constitutional claims, as well as Grant Township's Counterclaim, the only issue remaining for trial should be PGE's damages. Damages are available under Section 1983 for actions found to have violated constitutional rights and to have caused compensable injury.   *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir.

2000) (citing *Wood v. Strickland*, 420 U.S. 308, 319 (1975)).  "[C]ompensatory damages for claims brought under § 1983 for violations of constitutional rights 'may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation…,personal humiliation, and mental anguish and suffering.'"  *Id.* (citations omitted).  Accordingly, if this Court grants summary judgment in favor of PGE, the trial in March 2016 will be limited to the issue of damages, requiring minimal testimony and evidence from PGE to establish PGE's actual damages as a result of the unconstitutional Ordinance.[3]

Pursuant to Section 1988, in any action to enforce a provision of Section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988.  PGE's request for attorneys' fees and costs will be made after a trial on damages by way of a fee petition filed with the Court.

---

[3] On December 28, 2015, Grant Township filed a Motion to Dismiss in which in contends that PGE's constitutional claims fail to state a claim for damages and that PGE is not entitled to monetary damages.  (Docket No. 153.)  Grant Township's Motion is misguided, improperly applies the law to the facts of this case and should be denied, which arguments will be addressed more fully in a response in opposition to be filed by PGE.  As PGE will demonstrate, and as Grant Township acknowledges, compensatory damages are available where the plaintiff can show actual injury, rather than some future, speculative harm. *See* Docket No. 153, at p. 13; *see also, Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000); *Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260-61 (3d Cir. 2007) (allowing claims for compensatory damages and attorneys' fees based on a facial challenge to an ordinance). PGE has sustained actual injury. The Ordinance, among other things, stripped PGE of its constitutional rights.  From October 22, 2014 through March 12, 2015, PGE had all necessary permits to utilize the Yanity Well as an injection well and would have used the well for injection purposes but for the Ordinance. (SOF, ¶ 18.)  PGE also incurred substantial damage as a result. (*Id.*) As a direct result of the Ordinance, as was initially disclosed in PGE's Rule 26(a) Initial Disclosures and as will be established at trial, PGE suffered actual injury in the amount of approximately $190,000 per month.  These damages can and will be proven during the upcoming March trial.  Because PGE has sustained actual injury as a result of Grant Township's adoption of the unconstitutional Ordinance, compensatory damages are an available and appropriate remedy for PGE's constitutional claims.

IV.     **CONCLUSION**

For the foregoing reasons, PGE is entitled to summary judgment on its constitutional claims, an order declaring the challenged provisions of the Ordinance are unconstitutional and unenforceable and a trial to determine the amount of PGE's damages.   Accordingly, PGE requests that the Court enter judgment as a matter of law in its favor and against Grant Township on Counts I through VI of the Amended Complaint and its favor and against Grant Township on Grant Township's Counterclaim.

Respectfully submitted,

Dated: January 6, 2016                    By:  /s/ James V. Corbelli

Kevin J. Garber, Esquire
Pa. I.D. #51189
James V. Corbelli, Esquire
Pa. I.D. #56671
Alana E. Fortna, Esquire
Pa. I.D. #309691

Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 6th Floor
Pittsburgh, PA  15222
412-394-5400

*Counsel for Plaintiff, Pennsylvania General Energy Company, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed a true and correct copy of the foregoing **Brief in Support of Motion for Summary Judgment** this 6th day of January, 2016, using the Court's CM/ECF system, which will automatically serve a copy upon all counsel of record.


By: */s/ James V. Corbelli*