UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA GENERAL ENERGY
COMPANY, L.L.C.

Plaintiff,

vs.

GRANT TOWNSHIP,

Defendant.

Case No.  1:14-cv-209

Magistrate Judge Susan Paradise Baxter

**PLAINTIFF- INTERVENOR**
**PENNSYLVANIA INDEPENDENT OIL & GAS ASSOCIATION'S**
**BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDFMENT**
**AND**
**REQUEST FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff-Intervenor Pennsylvania Independent Oil & Gas Association (PIOGA), by its undersigned counsel, files this Brief in Opposition to Defendant Grant Township's Motion for Summary Judgment on its Counterclaim [ECF Nos. 157 and 158] and in support of summary judgment on Counts I (Supremacy Clause Violation) and VII (Unauthorized by and Contrary to the Pennsylvania Constitution) of PIOGA's Intervenor Complaint. ECF No. 177.

I.      INTRODUCTION

The position of Defendant Grant Township is that the each individual person residing in the Township has an inherent, fundamental and inalienable right of local self-government – secured by federal and state law – that they may exercise collectively (by majority rule) to create local laws, such as the Township's Community Bill of Rights Ordinance, that are superior to federal and state law in order to recognize the sovereignty of the people residing in the Township.  ECF No. 10 (Counterclaim), ¶s 3-5, 23, 26, 27, 30, 31; ECF No. 157 (Motion for

Summary Judgment), ¶s 16-18, 24, 25.  This position is couched in terms of Article I, Section 2 of the Pennsylvania Constitution:

> All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper.

It is apparent that the "government" in this constitutional text refers to the "state" government, as distinguished from "local" government, and that the fundamental right claimed by the Township is more precisely described as a right to self-government at the state level.  Nonetheless, in this brief, for the sake of argument, PIOGA will refer to the right claimed by the Township as it does – a right to *local* self-government.  As a federal court in New Mexico observed in concluding that the same type of local law as presented in this matter violates the Supremacy Clause of the United States Constitution, chaos would result from the unfettered right to superior local self-government claimed by the Township:

> The consequences of such an outcome could be devastating to the Union as the Nation has known it since the Civil War. Some counties could prohibit speech on certain viewpoints. Others could deny basic rights to members of certain racial ethnicities. Still others could prohibit religious practices; others could require participation in religious services. The Constitution would be applied in a cookie-cutter fashion across the United States with such inconsistency from place-to-place that it would cease to be a Constitution of the United States at all.

*SWEPI, LP, v. Mora County, New Mexico et al.*, 81 F.Supp.3d 1075, 1169 (D.N.M. 2015).  "If a county could declare under what conditions federal law preempted its laws, federal law would not be preemptive at all."  *Id*., at 1169-70.  The same result would occur in Pennsylvania if local governments could declare what state laws applied with the boundaries of the local government unit.

The Township's position is associated with the theory of pure democracy[1] and seems intuitively wrong under our republican form of government.[2]  As explained herein, it is also wrong as a matter of existing United States and Pennsylvania constitutional text, as the result of the people's (i) delegations of power to the state and federal governments and (ii) imposition of limitations on their right to local self-government.

The Township seeks summary judgment on its Counterclaim – "a declaration that the Ordinance is a constitutional and valid assertion of the right of the people of Grant Township to local, community self-government" [ECF No. 10, p. 29] – and on all unresolved claims, because the requested declaration is the fundamental basis of the Township's position.[3]  The Township asserts that the relief requested by Plaintiff Pennsylvania General Energy Company, L.L.C. (PGE) (and, by implication, PIOGA) cannot be granted by this court without violating the people's fundamental right to superior local self-government.  ECF No. 157, ¶ 15.

On the contrary, the fundamental declaratory relief requested by the Township cannot be granted by this – or any – court because that relief requires a political and legislative resolution, not a judicial one.  In other words, while there is no dispute that all power of governing derives

---

[1] "That form of government in which the sovereign power resides in and is exercised by the whole body of free citizens; as distinguished from a monarchy, aristocracy, or oligarchy.  According to the theory of pure democracy, **every citizen should participate directly in the business of governing**, and the legislative assembly should comprise the whole people. . . . ."  The Law Dictionary (Black's online), http://thelawdictionary.org/democracy/ (emphasis added).

[2] Contrary to popular belief, our form of government is a republic, not a democracy.  Article IV, Section 4 of the United States Constitution declares: "The United States shall guarantee to every State in this Union a Republican Form of Government, . . . ."  The word "democracy" does not appear in the Declaration of Independence or the United States Constitution , or in the Pennsylvania Constitution.  "What is Republic – A commonwealth; a form of government which derives all its powers directly or indirectly from the general body of citizens, . . . ."  The Law Dictionary (Black's online), http://thelawdictionary.org/republic/. As John Marshall wrote in his book, *The Life of George Washington*, Vol. II, p. 447:  "[B]etween a balanced republic and a democracy, the difference is like that between order and chaos."

[3] ECF No. 158 (Twp Brief), Section III.

3

from the people,[4] under neither the United States Constitution nor the Pennsylvania Constitution do the people have a right to *local* self-government that is superior to the basic, organic or fundamental law stated in these same constitutions.

As stated in the Ordinance itself [ECF No. 1-1, §8],[5] amendment of the Pennsylvania Constitution and the United States Constitution is necessary to create the right to superior local self-government claimed in the Ordinance.  As the text of neither constitution can lawfully be amended either through enactment of a local ordinance or through litigation, this Court is powerless to grant the fundamental declaratory relief requested by the Township to create the claimed right to local self-government that is superior to federal and state law.  As shown below, while a court may *interpret* constitutional provisions, *amending* or *rewriting* the text of a constitutional provision is beyond its power, and is reserved to the people as provided in the respective constitutions.  Changing the text of a constitution requires strict adherence to the constitutional provisions the people have adopted as the means to do so.

## II.    RELEVANT BACKGROUND

On October 14, 2015, this Court granted PIOGA's motion to intervene [ECF Nos. 115, 116] but did not file PIOGA's proposed Intervenor Complaint [ECF No. 16-1].  Instead, the Court provided PIOGA the opportunity to amend its Intervenor Complaint "in conjunction with the rulings made today."  ECF No. 115, at p. 5; ECF No. 116.  PIOGA's amendments to its complaint were rejected by this Court and PIOGA's Intervenor Complaint [ECF No. 16-1] was filed at ECF No. 177.  ECF No. 173.  Count VII (Unauthorized by and Contrary to the

---

[4] Pa. Const. art. I, § 2.

[5] Section 8 - State and Federal Constitutional Changes
    Through the adoption of this Ordinance, the people of Grant Township call for amendment of the Pennsylvania Constitution and the federal Constitution to recognize a right to local self-government free from governmental preemption and or nullification by corporate "rights."

Pennsylvania Constitution) of PIOGA's Intervenor Complaint includes this assertion: "Article 1, Sections 2 and 25 of the Pennsylvania Constitution do not, individually or together, establish a right of local self-government or mean that local government is superior to Pennsylvania State government." ECF No. 177, ¶ 53.

On October 14, 2015, this Court entered a Memorandum Opinion and an Order denying the Township's request for judgment on the pleadings on its Counterclaim. ECF Nos. 113, 114. This Court found that the Township's reliance on "lengthy examination of historical documents" and "historical events leading up to the American Revolution" provided "no precedential statute or constitutional provision authorizing its action" and held "[w]ithout a legal basis for its actions, as opposed to historical documents and events, this Court cannot provide the relief Grant Township seeks." ECF No. 113, pp. 7, 9.). This Court recently denied the Township's motion for reconsideration of this ruling. ECF No. 172, p. 6 ("None of Defendant's cited sources provides definitive authority for Defendant's claimed right so as to provide the legal basis for the granting of a motion for judgment on the pleadings.").

The Township's motion for summary judgment on its Counterclaim relies upon the same "historical documents and events" – including Article 1, Sections 2 and 25 of the Pennsylvania Constitution – this Court has already determined to be inadequate as a matter of law to establish the federally and state protected constitutional right to local self-government claimed in the Ordinance. *Compare* ECF No. 10, ¶s 25-27 *with* ECF No. 157, ¶s 17-19. The only additional authorities provided in the motion are the Fifth and Fourteenth amendments to the United States Constitution. ECF No. 157, ¶s 18, 19.

PGE's Brief in Opposition to the Township's motion explains why the claim of the Township to a federally protected constitutional right to superior local self-government claimed

5

in the Ordinance fails.  PIOGA's focus in this brief is on the lack of legal basis for any argument that it is lawful to change or rewrite federal and Pennsylvania constitutional text through enactment of the Ordinance or through litigation defending its enactment.  In short, the Township continues to waste valuable judicial (and other) resources in seeking a judicial resolution of a political and legislative matter – amending "the Pennsylvania Constitution and the federal Constitution to create a right to local self-government" that is superior to state and federal law.

PIOGA respectfully requests that this Court put an end to this unnecessary litigation by ruling conclusively and unequivocally that the Township's actions to create a right of local self-government superior to federal and state law has no basis in law, including the text of the United States and Pennsylvania constitutions.  The Township has not been able to point to one court decision from any state or federal court that validates its right to superior local self-government legal theory despite the proliferation of local ordinances and home rule charters based on that theory.

## III.   SUMMARY OF ARGUMENT

The Township's motion has provided this Court with no "legal basis for its actions" – because none exists – and therefore no basis for granting summary judgment in its favor.  The Township's addition of the Fifth and Fourteenth amendments to the United States Constitution to its list of "historical documents and events" it claims "secures" a federally protected constitutional right to local self-government superior to federal and state law does not support this Court's changing its prior conclusions on the Township's Counterclaim.  ECF Nos. 113, 172.  As application of the Fifth and Fourteenth amendments requires the existence of a fundamental right, these two amendments cannot create or be the source of the superior local self-government right claimed by the Township on behalf of its residents, collectively.  The

Township's new circular rationale provides no reason for this Court to change its prior conclusions that the Township has provided neither a legal basis for its actions nor definitive authority for its claimed right to superior local self-government.  ECF No. 113, p. 9; ECF No. 172, p. 6.

**The Township's position has a fatal flaw – it ignores the clear and unambiguous delegation by the people of limitations on their right to local self-government to the United States and Pennsylvania governments through the respective constitutions.**  The Township has not, and cannot, point to constitutional text that:

> ●secures or recognizes a right to local self-government superior to federal and state law;
>
> ●permits or authorizes the people to exercise or create a right to local self-government superior to federal and state law; or
>
> ●permits or authorizes the amendment of the United States and Pennsylvania constitutions to create a right to local self-government superior to federal and state law through enactment of a local law (such as the Township's Ordinance and Home Rule Charter) or through litigation in defense of such a local law.

This Court has no power to grant the fundamental declaratory relief requested by the Township's Counterclaim because this Court has no power to amend or rewrite the text of United States and Pennsylvania constitutions to create the essentially unfettered right of superior local self-government claimed in the Ordinance – a right this Court has twice concluded doesn't exist.  ECF No. 113, p. 9; ECF No. 172, p. 6.  Accordingly, for the reasons set forth herein, PIOGA respectfully requests that this Court deny the Township's motion for summary judgment on its Counterclaim and, in accordance with the Court's discretion as well as Fed. R. Civ. P. 56(f)(1), grant partial summary judgment for PIOGA on Counts I (Supremacy Clause Violation) and VII (Unauthorized by and Contrary to the Pennsylvania Constitution) of its Intervenor Complaint.

## IV.    ARGUMENT

### A.    Legal Standards.

PIOGA agrees with and hereby adopts by reference the legal standard for disposition of a motion for summary judgment set forth in PGE's Brief in Opposition (Section II.A.).  PIOGA also agrees with the Township and PGE that this matter is appropriate for resolution through summary judgment because there are no genuine issues of material fact.  ECF No. 154 (PGE Motion), ¶ 9; ECF No. 157 (Twp Motion), ¶ 13.  This brief explains why PIOGA is entitled to judgment as a matter of law on Counts I and VII of its Intervenor Complaint.

This Court has discretion to grant summary judgment for a nonmovant *sua sponte* when, as here, there are no material facts in dispute and the Court believes that the nonmovant is entitled to judgment as a matter of law.  *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 104 (6th Cir. 1995).  A district court may also, pursuant to Fed. R. Civ. P. 56(f)(1), enter summary judgment for a nonmovant after "giving notice and a reasonable time to respond." A party moving for summary judgment "is considered to have sufficient notice of the imminence of summary judgment in some form.  *Markva v. Haveman*, 168 F.Supp.2d 695, 706-07 (E.D.Mich. 2001) (citing Wright, Miller & Kane, *Federal Practice & Procedure* § 2720, at 346 (1998)).

This consideration is particularly appropriate here.  This is the second time PIOGA has requested partial summary judgment on its United States and Pennsylvania constitutional claims pursuant to Fed. R. Civ. P. 56(f)(1).  The first was in its response [ECF No. 146, ¶s 18-24] to the Township's motion to dismiss [ECF No. 142] PIOGA's Intervenor Complaint filed at ECF No.

121.[6]  PIOGA has consistently asserted throughout this proceeding that the Pennsylvania

Constitution does not authorize the fundamental right to local self-government claimed in the

Ordinance and in the subsequently adopted Home Rule Charter.  This is also the second time

PIOGA has asserted that enactment of the Ordinance is not an authorized manner of creating the

right to local self-government the Township claims.  ECF No. 136, Section II, which is hereby

incorporated by reference.

In the context of notice of a court's converting a motion to dismiss into a motion for

summary judgment per Fed. R. Civ. P. 12(d),[7] notice is required when a party is likely to be

surprised by the conversion.  *Shelby County Health Care Corp. v. S. Council of Indus. Workers*,

203 F.3d 926, 931 (6th Cir. 2000) (quotations and citation omitted).  In view of the multiple

notices of PIOGA's Pennsylvania Constitution claims and requests for summary judgment

thereon, the Township cannot credibly claim surprise on this point.  *See Hayes v. Equitable*

*Energy Res. Co.*, 266 F.3d 560, 571-72 (6th Cir. 2001) ("[G]iven the frequent references by both

sides to summary judgment, as well as the consistent attachment by both sides of exhibits and

affidavits to their filings, [ ] Plaintiffs were not surprised by an award of summary judgment in

this case.").  To the extent notice is required by Fed. R. Civ. P. 56(f)(1), this Court's granting the

Township the right to reply to this brief and the multiple prior notices of PIOGA's assertions

should constitute the required notice.  *Lomree, Inc. v. Pan Gas Storage, LLC*, No. 10-14425, slip

---

[6] As stated above, the Court struck this complaint and directed the filing of PIOGA's proposed
Intervenor Complaint [ECF No. 16-1].  ECF No. 173.  PIOGA's Pennsylvania Constitution
claims were parsed as Counts I-III in the stricken complaint, with Count I including assertions
now set forth in PIOGA's filed Intervenor Complaint, including the following assertion:  "Article
1, Sections 2 and 25 of the Pennsylvania Constitution do not, individually or together, establish a
right of local self-government or mean that local government is superior to Pennsylvania State
government."  ECF No. 121, ¶ 35.  PIOGA's federal constitutional claims were Counts IV –IX.
ECF No. 121, ¶s 50-72.

[7] As stated above, PIOGA's first request for summary judgment was made in this context.  ECF
No. 146.

op. at 6, Part D., n. 14 (E.D.Mich. Aug. 10, 2011), *reversed on other grounds*, No. 11-2132 (6th Cir. Sept. 7, 2012).

While this Court refrained from ruling on the constitutional issues on the motions for judgment on the pleadings,[8] the remaining issues addressed in the motions for summary judgment turn on the existence of the people of Grant Township's constitutional right to local self-government that is superior to federal and state law. Accordingly, a decision on this fundamental constitutional issue is both unavoidable[9] and absolutely necessary.[10]

> **B.     The Text of the United States and Pennsylvania Constitutions Does Not Allow for a Right to Local Self-Government that is Superior to Federal and State Law.**

As stated above, PGE's brief in opposition to the Township's motion explains why the authority relied upon by the Township does not establish the existence of a federally protected constitutional right to local self-government superior to federal and state law. PIOGA agrees with PGE's arguments and hereby adopts and incorporates them by reference (PGE Brief in Opposition, Sections I, II.B.). PIOGA offers additional argument on this and the related state constitutional points.

---

[8] The Court decided the motions on state law grounds, but has not yet decided PIOGA's motion for correction [ECF No. 134] of the Court's October 14, 2015 opinion and order [ECF Nos. 113, 114] concerning the continued validity and enforceability of Section 3302 of Pennsylvania Act 13 of 2012, 58 Pa. C.S. § 3302. PIOGA is not requesting summary judgment on its Section 3302 count (Count X).

[9] *Spector Motor Service v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.").

[10] *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (constitutional questions should not be decided unless "absolutely necessary to a decision of the case").

The people adopted the Supremacy Clause of the United States Constitution, which states:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be **the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2 (emphasis added).  This plain and simple text means that the people have decided that federal law trumps, or preempts, contrary state and local law.  *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1011 (10th Cir. 2008).

Section 3(b) of the Township's Ordinance states:

> **No permit, license, privilege, charter, or other authority issued by any** state or **federal entity which would violate** the prohibitions of this Ordinance or **any rights secured by this Ordinance**, the Pennsylvania Constitution, the United States Constitution, or other laws, **shall be deemed valid within Grant Township**.

ECF No. 1-1 at §3(b) (emphasis added).  As explained in the argument section below, the people's delegation of power to the federal government through the plain and simple text of the Supremacy Clause cannot be interpreted by any court – including the United States Supreme Court – to allow for a right to local self-government that is superior to federal law.  Nor can any court – including the United States Supreme Court – amend or rewrite the text of the Supremacy Clause to allow for a right to local self-government that is superior to federal law.  That requires strict adherence to the provisions the people have adopted in the United States Constitution as the means to amend it (explained below).  Those provisions do not include amendment through the enactment of local laws and litigation.

In adopting the Pennsylvania Constitution, the people in Article IX imposed limitations on their right to local self-government:

> § 1. Local government. **The General Assembly shall provide by general law for local government within the Commonwealth**. Such general law shall be uniform as to all classes of local government regarding procedural matters.[11]
>
> § 2. Home rule. Municipalities shall have the right and power to frame and adopt home rule charters. Adoption, amendment or repeal of a home rule charter shall be by referendum. The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors. If the General Assembly does not so provide, a home rule charter or a procedure for framing and presenting a home rule charter may be presented to the electors by initiative or by the governing body of the municipality. **A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.**

Pa. Const. art. I, §§ 1, 2 (emphasis added).  This Court has determined that the certain provisions of the Township's Ordinance violate one of the general laws – the Second Class Township Code – the General Assembly enacted pursuant to the power delegated by the people in Article IX, Section 1.  ECF No. 113, at pp. 13-14, 17, 19-22 (re Ordinance § 4, "there is no authority for Grant Township to create a cause of action for its residents to enforce an ordinance written on their behalf").  In its numerous filings in this matter, the Township has not pointed to any definitive authority, including constitutional text, for the people of the Township to create local laws superior to state law.

---

[11] Related to this provision is Article III, Section 20 (Classification of municipalities):  "The Legislature shall have power to classify counties, cities, boroughs, school districts, and townships according to population, and all laws passed relating to each class, and all laws passed relating to, and regulating procedure and proceedings in court with reference to, any class, shall be deemed general legislation within the meaning of this Constitution."  Pa. Const. art. III, § 20.

The fundamental declaratory relief requested by the Township's motion for summary judgment raises different issues under the Pennsylvania Constitution than under the general laws:

> Does the text of Article IX, Section 1 provide the people of the Township with the right or power to provide for local government by adopting a local law creating local government rights or powers superior to state law?

The plain and simple constitutional text says "no," as the people have already delegated their power over local self-government to the General Assembly, along with many other limitations imposed elsewhere in the constitution (some of which are addressed below).

> Does a court have the power to interpret, amend or rewrite the text of Article IX, Section 1 to provide the people of the Township with the right or power to provide for local government by adopting a local law creating local government rights or powers superior to state law?

As with the plain and simple text of the Supremacy Clause, a court cannot interpret the plain and simple text of Article IX, Section 1 to provide the people within a local government unit an unfettered right over local government because the people have already delegated their power over local government to the General Assembly, fettered with whatever limitations the General Assembly lawfully imposes under this delegation as well as with other limitations elsewhere in the Pennsylvania Constitution.  Nor can a court amend or rewrite the text of Article IX, Section 1 to provide such an unfettered right to people within a local government unit to enact a local law superior to state law, including the Pennsylvania Constitution.  That requires strict adherence to the provisions the people have adopted in the Pennsylvania Constitution as the means to amend it (explained below).  Those provisions do not include amendment through the enactment of local laws and litigation.

The fatal flaw in the Township's position is shown by the many other limitations on the people's right to local self-government imposed by the people in plain and simple text elsewhere

in the Pennsylvania Constitution.  The following is by no means an exhaustive list, but further demonstrates the lack of legal basis for the Township's position.

●**Pa. Const. art. III (Legislation)**
**§ 32.  Certain local and special laws.**

The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:

1.  Regulating the affairs of counties, cities, townships, wards, boroughs or school districts:

2.  Vacating roads, town plats, streets or alleys:

3.  Locating or changing county seats, erecting new counties or changing county lines:

4.  Erecting new townships or boroughs, changing township lines, borough limits or school districts:

5.  Remitting fines, penalties and forfeitures, or refunding moneys legally paid into the treasury:

6.  Exempting property from taxation:

7.  Regulating labor, trade, mining or manufacturing:

8.  Creating corporations, or amending, renewing or extending the charters thereof:

Nor shall the General Assembly indirectly enact any special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed.

The plain and simple text of this provision recognizes the people's right to local self-government by prohibiting the General Assembly's enactment of local or special laws, but also limits the people's right to local self-government by authorizing the General Assembly to pass general laws concerning the enumerated matters that affect the people locally.

●**Pa. Const. art. V (The Judiciary)**
**§ 1.  Unified judicial system.**

The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

**§ 5.  Courts of common pleas.**

There shall be one court of common pleas for each judicial district (a) having such divisions and consisting of such number of judges as shall be provided by law, one of whom shall be the president judge; . . . .

**§ 6.  Community courts; Philadelphia Municipal Court and Traffic Court.**

(a)  In any judicial district a majority of the electors voting thereon may approve the establishment or discontinuance of a community court. Where a community court is approved, one community court shall be established; its divisions, number of judges and jurisdiction shall be as provided by law.

(b)  The question whether a community court shall be established or discontinued in any judicial district shall be placed upon the ballot in a primary election by petition which shall be in the form prescribed by the officer of the Commonwealth who under law shall have supervision over elections. The petition shall be filed with that officer and shall be signed by a number of electors equal to 5% of the total votes cast for all candidates for the office occupied by a single official for which the highest number of votes was cast in that judicial district at the last preceding general or municipal election. The manner of signing such petitions, the time of circulating them, the affidavits of the persons circulating them and all other details not contained herein shall be governed by the general laws relating to elections. The question shall not be placed upon the ballot in a judicial district more than once in any five-year period.

**§ 7.  Justices of the peace; magisterial districts.**

(a)  In any judicial district, other than the City of Philadelphia, where a community court has not been established or where one has been discontinued there shall be one justice of the peace in each magisterial district. The jurisdiction of the justice of the peace shall be as provided by law.

**§ 13.  Election of justices, judges and justices of the peace; vacancies.**

(a)  Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

**§ 15.  Tenure of justices, judges and justices of the peace.**

(a)  The regular term of office of justices and judges shall be ten years and the regular term of office for judges of the municipal court and traffic court in the City of Philadelphia and of justices of the peace shall be six years. The tenure of any justice or judge shall not be affected by changes in judicial districts or by reduction in the number of judges.

**§ 16.  Compensation and retirement of justices, judges and justices of the peace.**

. . .

(b)  Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years. . . . .

The Township's claimed people's "right of local, community self-government includes the right to **a system of government** legally capable of protecting the civil and political rights of the people within the locality, and a system of government which recognizes the political sovereignty of the people who reside within the locality."  ECF No. 157, ¶ 24 (emphasis added).

If the people of Grant Township, collectively, determined that any one or more of the foregoing constitutional provisions failed to meet the system of government standards stated above [*see* ECF No. 157, ¶ 26], could they lawfully enact a local law: (i) creating a different local court than enumerated in § 1 above?; (ii) establishing more than one court of common pleas in a single judicial district (§ 5 above)?; (iii) creating a community court, when § 6 above requires the question to be determined by ballot?; (iv) establishing more than one justice of the peace in a single magisterial district (§ 7 above)?; (v) requiring the election of local judges or justices of the peace at other than the municipal election specified in § 13 above?; (vi) establishing the regular terms of office of local judges to be more or less than ten years and of justices of the peace to be more or less than six years justices (§ 15 above)?; or (vii) requiring local judges and justices of the peace to retire other than "on the last day of the calendar year in which they attain the age of 70 years"?

The answer is "of course not" because doing so is neither authorized nor permitted by the plain and simple text of these constitutional provisions by which the people imposed these limitations on their right to local self-government over these matters.  Changing any of these delegations of limitations on the people's right to local self-government requires a constitutional amendment.  This Court may take judicial notice that an amendment to Section 16(b) above to raise the mandatory retirement age of Pennsylvania justices, judges and justices of the peace from 70 to 75 years is on the ballot in the upcoming Pennsylvania election on April 26, 2016.[12] The only change to the constitutional text is the change of "70" to "75", so this amendment, if

---

[12] Regular Session 2013-2014, House Bill 79, http://www.legis.state.pa.us/cfdocs/billInfo/billInfo.cfm?sYear=2013&sInd=0&body=H&type=B&bn=79; Regular Session 2015-2016, House Bill 90, http://www.legis.state.pa.us/cfdocs/billInfo/billInfo.cfm?sYear=2015&sInd=0&body=h&type=b&bn=90; https://ballotpedia.org/Pennsylvania_Judicial_Retirement_Age_Amendment_(April_2016).

adopted by the people, will not empower people acting collectively through their local governments to establish a different retirement age for local judges or justices of the peace.

●**Pa. Const. art. VII (Elections)**
**§ 1.  Qualifications of electors.**

Every citizen 21 [18][13] years of age, possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.

1.  He or she shall have been a citizen of the United States at least one month.

2.  He or she shall have resided in the State 90 days immediately preceding the election.

3.  He or she shall have resided in the election district where he or she shall offer to vote at least 60 days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within 60 days preceding the election.

**§ 3.  Municipal election day; offices to be filled on election days.**

All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require. All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough, and township officers, for regular terms of service, shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the General Assembly may by law fix a different day, two-thirds of all the members of each House consenting thereto: Provided, That such elections shall be held in an odd-numbered year: . . . .

**§ 6.  Election and registration laws.**

All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State, except that laws regulating and requiring the registration of electors may be enacted to apply to cities only, provided that such laws be uniform for cities of the same class, and except further, that the General Assembly shall by general law, permit the use of voting machines, or other mechanical devices for registering or recording and computing the vote, at all elections or primaries, in any county, city, borough, incorporated town or township of the Commonwealth, at the option of the electors of such county, city, borough, incorporated town or township, without being obliged to require the use of such voting machines or mechanical devices in any other county, city, borough, incorporated town or township, under such regulations with reference thereto as the General Assembly may from time to time prescribe. . . . .

---

[13] .  This age was changed from 21 to 18 years of age by Amendment XXVI to the Constitution of the United States and Section 701 of the Act of June 3, 1937 (P.L.1333, No.320), known as the Pennsylvania Election Code.

**§ 14.  Absentee voting.**

(a)  The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the municipality of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee, may vote, and for the return and canvass of their votes in the election district in which they respectively reside.

(b)  For purposes of this section, "municipality" means a city, borough, incorporated town, township or any similar general purpose unit of government which may be created by the General Assembly.

If the people of Grant Township, collectively, determined that any one or more of the foregoing constitutional provisions failed to meet the system of government standards of their claimed right to local self-government,[14] could they lawfully enact a local law: (i) changing the age to vote within the Township or requiring qualifications to vote within the Township[15] different than specified in § 1 above?: (ii)  requiring the election of local judges and county, city, ward, borough and township officers on other than the municipal election day specified in § 3 above?; (iii) regulating the holding of elections by the citizens (§ 6 above)?: or (iv) establishing a manner, time and place for absentee voting by electors or establishing circumstances permitting absentee voting different from that specified in § 14 above?

Again, the answer is "of course not" because doing so is neither authorized nor permitted by the plain and simple text of these constitutional provisions by which the people imposed these

---

[14] *See* ECF No. 157, ¶ 26.  The standards are "a system of government legally capable of protecting the civil and political rights of the people within the locality, and a system of government which recognizes the political sovereignty of the people who reside within the locality."  ECF No. 157, ¶ 24.

[15] Indeed, in *Page v. Allen*, 8 P. F. Smith [Pa.] 338 (Pa. 1868), the Pennsylvania Supreme Court held unconstitutional the provision an act of the General Assembly requiring proof of a residence to qualify as an elector longer than the period of ten days then specified in the Pennsylvania Constitution.  The Township's position is the people of the Township, acting collectively through their local officials, have the right to make such a change, even though the people, acting collectively through their representatives in the General Assembly, do not have this right.

limitations on their right to local self-government over these matters.   However, the people diminished the limitations they imposed in Article VII, Section 6 above on their right to local self-government with respect to the use of voting machines or other mechanical voting devices by directing the General Assembly to permit their use in only certain counties, cities, boroughs, incorporated towns and townships at the option of the electors of such counties, cities, boroughs, incorporated towns and townships, instead of requiring the use uniformly in all counties, cities, boroughs, incorporated towns and townships throughout the State.

The people imposed limitations on their right to local self-government in the Local Government article of the Pennsylvania Constitution in addition to those quoted and addressed above.

●**Pa. Const. art. IX (Local Government)**
**§ 3.  Optional plans.**
    Municipalities shall have the right and power to adopt optional forms of government as provided by law.  The General Assembly shall provide optional forms of government for all municipalities. An optional form of government shall be presented to the electors by initiative, by the governing body of the municipality, or by the General Assembly. Adoption or repeal of an optional form of government shall be by referendum.

**§ 8.  Consolidation, merger or boundary change.**
    Uniform Legislation.--The General Assembly shall, within two years following the adoption of this article, enact uniform legislation establishing the procedure for consolidation, merger or change of the boundaries of municipalities.
    Initiative.-- The electors of any municipality shall have the right, by initiative and referendum, to consolidate, merge and change boundaries by a majority vote of those voting thereon in each municipality, without the approval of any governing body.
    . . . .

**§ 10.  Local government debt.**
    Subject only to the restrictions imposed by this section, the General Assembly shall prescribe the debt limits of all units of local government including municipalities and school districts. . . .

If the people of Grant Township, collectively, determined that any one or more of the foregoing constitutional provisions failed to meet the system of government standards of their claimed right to local self-government,[16] could they lawfully enact a local law: (i) allowing an optional form of government to be presented to the electors of the Township by initiative more frequently than once in five years (§ 3 above)[17]?; or (ii) prescribing the debt limits of the Township?

---

[16] *See* footnote 14 above.

[17] Article IX, Section 14 defines "initiative" as:

   [T]he filing with the applicable election officials at least 90 days prior to the next primary or general election of a petition containing a proposal for referendum signed by electors comprising 5% of the number of electors voting for the office of Governor in the last

Again, the answer is "of course not" because doing so is neither authorized nor permitted by the plain and simple text of these constitutional provisions by which the people imposed these limitations on their right to local self-government over these matters.  However, the people diminished the limitation they imposed in Section 8 above on their right to consolidate, merge and change municipality boundaries by empowering the electors of any municipality to do so by initiative and referendum, without the approval of any governing body or the enactment of uniform legislation by the General Assembly.

More to the point of this matter, with respect to Article IX, Section 2 (Home rule) quoted above, if the people of Grant Township, collectively, determined that being prohibited from exercising any power or performing any function denied by the Pennsylvania Constitution or the General Assembly failed to meet the system of government standards[18] of their claimed right to local self-government, could they lawfully enact a local law freeing them from these prohibitions?  *That is basically the question presented by this matter* because, as shown above, in the Pennsylvania Constitution the people have imposed limitations on their right to local self-government whether that government is a second class township (under which the Ordinance was enacted) or a home rule community whose charter is based upon the same essentially unfettered right of superior local self-government claimed in the Ordinance.

As shown above, the answer to the home rule question is again "of course not" because doing so is neither authorized nor permitted by the plain and simple text of Article IX, Section 2

---

gubernatorial general election in each municipality or area affected. The applicable election official shall place the proposal on the ballot in a manner fairly representing the content of the petition for decision by referendum at said election. **Initiative on a similar question shall not be submitted more often than once in five years.** No enabling law shall be required for initiative.  PA. CONST. art. IX, § 14 (emphasis added).

[18] *See* footnote 14 above.

by which the people imposed these prohibitions on their right to local self-government even when adopting a home rule charter.

As explained in the following argument section, a court cannot amend, rewrite or "interpret away" the plain and simple text of any of the foregoing limitations on the right to local self-government the people adopted in the Pennsylvania Constitution.  Accordingly, this Court lacks the power to grant the fundamental declaratory relief requested by the Township in its Counterclaim, including in particular in this context "a declaration, as provided by Section 5(b) of the Ordinance, that: All laws adopted by the legislature of the State of Pennsylvania, and rules adopted by any State agency, shall be the law of Grant Township only to the extent that they do not violate the rights or prohibitions of the Ordinance."  ECF No. 10, p. 30.[19]

**C.    The Amendments to the U.S. and Pennsylvania Constitutions Necessary to Create the Right to Superior Local Self-Government Claimed in the Ordinance Cannot Be Effected Through Enactment of the Ordinance or Through Litigation Defending Its Enactment.**

In addition to "historical documents and events" the Township relies upon Article I, Section 2 of the Pennsylvania Constitution to support the right of the people of Grant Township, acting collectively, to enact a local law superior to state and federal law:

> All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper.

In a 2008 decision involving an Attorney General challenge to a CEDLF-drafted local ordinance banning the spreading of sewage sludge on farmland, the Pennsylvania Commonwealth Court rejected the position that the "power of local self-government is exempt from, and hence superior

---

[19] As the people have imposed limitations on the power of home rule communities by the plain and simple text of Article IX, Section 2, the answers to the questions in the text above with respect to Article IX, Section 2 are the same.

to, the general government of the state." *Commonwealth v. East Brunswick Township*, 956 A.2d

1100, 1106-08 (Pa.Cmwlth. 2008) [20].. The court noted that:

> Section 2 [of Article I] guarantees citizens the right to amend the Pennsylvania
> Constitution. . . . Article 1, Section 2 is silent on how **local** government is
> changed. Accordingly, it does not authorize citizens to amend their form of **local**
> government without following the statutory procedures therefor.

*Id.*, at 1108 (emphasis added). By referring only to the use of statutory procedures for the people

to change their local system of government, the court acknowledged that the Pennsylvania

Constitution does not allow for a right to superior *local* self-government. The court did not

address how this constitutional text authorizes the people to change the Pennsylvania

Constitution to change their local government.

The Township's argument is that the people of the Township have the inherent right,

claimed to be acknowledged in the constitutional text above, to enact a local law creating a new

system of government unfettered by limitations the people have adopted in the state and federal

constitutions, if the people determine that any such limitation fails to meet their system of

government standards.[21] The meaning of this constitutional text had been addressed late in the

19th century when the Pennsylvania Supreme Court was required to address Article 1, Section 2.

*Wells v. Bain*, 1873 Pa. LEXIS 162, 75 Pa. 39 (Pa. 1873). The Court's decision: has been the

law in Pennsylvania ever since; recognized – indeed, is founded upon – the necessity of the

consent of the people to be governed; and must be set forth at length because of its pertinence:

> The words "in such manner as they may think proper,' in the declaration of
> rights, embrace but three known recognised modes by which the whole people,
> the state, can give their consent to an alteration of an existing lawful frame of
> government, viz.:

---

[20] The Township's attorney in this matter, Mr. Linzey of the Community Environmental Legal
Defense Fund (CELDF), participated in this case on behalf of East Brunswick Township.

[21] *See* footnote 14 above.

The mode provided in the existing constitution.

A law, as the instrumental process of raising the body for revision and conveying to it the powers of the people.

A revolution.

**The first two are peaceful means through which the consent of the people to alteration is obtained, and by which the existing government consents to be displaced without revolution. The government gives its consent, either by pursuing the mode provided in the constitution, or by passing a law to call a convention. If consent be not so given by the existing government the remedy of the people is in the third mode--revolution.**

When a law becomes the instrumental process of amendment, it is not because the legislature possesses any inherent power to change the existing constitution through a convention, **but because it is the only means through which an authorized consent of the whole people, the entire state, can be lawfully obtained in a state of peace**. Irregular action, whereby a certain number of the people assume to act for the whole, is evidently revolutionary. **The people, that entire body called the state**, can be bound as a whole **only by an act of authority proceeding from themselves**. In a state of peaceful government they have conferred this authority upon a part to speak for the whole only at an election authorized by law. It is only when an election is authorized by law, the electors, who represent the state or whole people, are bound to attend, and if they do not, can be bound by the expression of the will of those who do attend. The electors who can pronounce the voice of the people are those alone who possess the qualifications sanctioned by the people in order to represent them, otherwise they speak for themselves only, and do not represent the people.

The people, having reserved the right to alter or abolish their form of government, **have, in the same declaration of their rights, reserved the means of procuring a law as the instrumental process of so doing**.

**"The twentieth section is as follows**:-- " The citizens have a right, in a peaceable manner, to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance."

. . .

**. . . The process was an application or petition to the legislature to call a convention, the passage of a law to gather the sense of the people on the question whether a convention should be called; an election authorized by this law to take the sense of the whole people on this question, and, finally, the passage of a law to call the convention and define its powers and duties**. A law is the only form in which the legislature, the body invested with the powers of government, can act, and thereby its own consent be given and revolution

avoided. **The people having adopted a proceeding by law as the means of executing their will, having acted under it and chosen their delegates by virtue of its authority, submitted themselves to it, as their own selected and approved means of carrying out peacefully their purpose of amendment.** The law, being thus the instrument of their own choice to express their will, necessarily became the channel of their authority. Having furnished no other means of arriving at their will, it is the only channel through which it has been conveyed. The law, therefore, being the instrument of delegation, this warrant to the delegates from the people becomes the only chart of their powers. **The will of the people has been expressed in no other form, and the powers of the delegates, therefore, come in no other wise.**

*Wells v. Bain*, 1873 Pa. LEXIS at **19-**23.[22]   In this case the people chose the second manner stated above of changing the Constitution, and the general question in this matter was the "power of the convention to pass the ordinance setting aside the election laws governing the city of Philadelphia and substituting provisions of its own." *Id.*, 1873 Pa. LEXIS at **42-**43.

The law passed "to call the convention and define its powers and duties" was the Act of April 11th 1872.  The convention then passed an ordinance to establish a commission to direct the election in the city of Philadelphia to address the amendments to the constitution, to register the voters and furnish the voter lists, to appoint the officers to conduct the election, and "further . . . to regulate the qualifications of the officers thus appointed to hold the election and to control the general returns of the election." *Id.*, 1873 Pa. LEXIS at **36-**37.  The Court held that the ordinance "is flatly opposed to the Act of 1872, and is therefore illegal and void." *Id.*, 1873 Pa. LEXIS at **41.  The ordinance was illegal and void because it because it contravened the "distinct language" in the Act of 1872 directing that the election in Philadelphia "should be conducted by known officers legally elected, and should be governed by a known system of

---

[22] The text of the "twentieth section" of the Declaration of Rights of the Pennsylvania Constitution quoted by the Court remains unchanged in Section 20 of the current Declaration of Rights.  The mode provided in the existing Pennsylvania Constitution, in addition to Section 20, is Article XI, Section 1.  The mode provided in the United States Constitution is Article V.  None of these include a local government simply enacting a local law or adopting a home rule charter.

[general election laws] laws with which the people are familiar, and thereby that they should both know and respect the authority under which the election should be held." *Id.*, 1873 Pa. LEXIS at **40.

Accordingly, this decision (along with the *East Brunswick Township* decision) stands for the proposition that Article I, Section 2 of the Pennsylvania Constitution acknowledges the people's right to self-government at the *state*, not local, level:

> When a law becomes the instrumental process of amendment, it is not because the legislature possesses any inherent power to change the existing constitution through a convention, but because it is the only means through which an **authorized consent of the whole people, the entire state**, can be lawfully obtained in a state of peace. Irregular action, whereby a certain number of the people assume to act for the whole, is evidently revolutionary. **The people, that entire body called the state**, can be bound as a whole **only by an act of authority proceeding from** *themselves*.

*Id.*, 1873 Pa. LEXIS at **20 (emphasis added; italics in original);   *East Brunswick Township*, 956 A.2d at 1108.

The *Wells* decision also stands for the propositions that (i) the text of the law expressing the will of the people must be followed and (ii) any process outside what the people have chosen in accordance with the constitution is revolutionary – and unlawful:

> **The terms of delegation**, which the people themselves declare, when acting under and by virtue of the law which they have called to their aid, as the instrumental process of conferring their authorities and reaching their purpose of amendment, **become of necessity the terms of their own will**. **All outside of this channel is revolutionary**, for it has neither the consent of the government nor of the people who have called the government to their aid and acted through it.

*Wells v. Bain*, 1873 Pa. LEXIS at **26 (emphasis added).[23]

---

[23] The following cases confirm the unremarkable proposition that text of the constitution must also be followed.  *Kremer v. Grant*, 606 A.2d 433, 438 (Pa. 1992) (emphasis added):  "To withhold strict compliance with the three months' limitation and substitute a different method of advertisement which substantially accomplishes the desired result **would be to rewrite the constitutional provision**. It has in clear, specific language determined what must be done to change or amend the fundamental law. **Nothing short of a literal compliance with this mandate will suffice**.;  *Bergdoll v. Kane*, 731 A.2d 1261, 1264 (Pa. 1999) (emphasis added):

This last point is particularly appropriate because the Township's attorneys in this matter

(CELDF) have described their efforts across the United States and as revolutionary.

> The Community Environmental Legal Defense Fund was invited to participate in those efforts based on our ongoing legislative work on corporate "rights."  For nearly a decade, we have taken the lead, assisting several dozen municipal governments and communities – in Pennsylvania, Maine, Maryland, New Hampshire, New York, and Virginia – to adopt first-in-the-nation local laws which refuse to recognize the legal privileges erroneously bestowed by the courts as "corporate rights."   The first such ordinances were adopted into law by two municipalities in Clarion County, Pennsylvania, in 2002 – making those communities the first in the country to elevate the rights of people above the claimed "rights" of corporations.

> Municipalities are now coalescing at the grassroots level to begin to envision what state and federal constitutional changes are necessary to liberate them from corporate powers that currently prevent them from creating sustainability within their own communities.

> . . .

> As with the movements that went before us, **we must become revolutionaries, not reformers**.

*Statement on Efforts to Amend the U.S. Constitution following Citizens United*, Jan 1, 2012 by CELDF,  http://celdf.org/2012/01/statement-on-efforts-to-amend-the-u-s-constitution-following-citizens-united/ (emphasis in original).

The fatal flaw in the Township's position, as stated above, was also stated by our

Supreme Court in the *Wells* decision:

> In considering this question of delegated power **some are apt to forget that the people are already under a constitution and an existing frame of government instituted by themselves,** which stand as barriers to the exercise of the original powers of the people, unless in an authorized form. They glide insensibly into the **domain of abstract rights**, and clothe mere agents with primordial power. **But delegated authority is derived, and those who claim it must show whence and how they derived it**.

---

"**We have no right to disregard or (unintentionally) erode or distort** any provision of the Constitution, especially where, as here, its **plain and simple language make its meaning unmistakably clear**; indeed, because of the times in which we live we have a higher duty than ever before to zealously protect and safeguard the Constitution." (quoting *Commonwealth v. Russo*, 131 A.2d 83, 88 (1957).

*Wells v. Bain*, 1873 Pa. LEXIS at **34.  As this court has already twice held, the Township has not shown whence and how the Township has derived its claimed right to superior local self-government.  ECF No. 113, p. 9; ECF No. 172, p. 6.

As the quoted portions of CELDF's statement above show, CELDF – the Township's counsel – knows that state and federal constitutional changes are necessary to effect the declaratory relief the Township is requesting from this Court.  This confirms PIOGA's position that this matter requires a political and legislative resolution, not a judicial one.

One additional case deserves mention in the context of this argument.  In *Citizens Committee to Recall Rizzo v. Board of Elections*, 367 A.2d 232 (Pa. 1976), a case cited by the Township, the Citizens Committee started a petition to recall the current mayor, Frank Rizzo. Under the Philadelphia Home Rule Charter, 25% of the registered voters were needed to force a yes or no referendum.  On appeal to the Supreme Court the recall process was declared unconstitutional.  Of particular interest in this case is the concurring opinion of Justice Nix, who states:

> There are those in the dissent who have implied that the insistence upon compliance with the clear meaning of the Constitution would thwart progress and pervert **the will of the people in the municipality instantly involved**. I remind them that the Constitution embodies the wishes and aspirations of All of the people of this Commonwealth and they alone must be and should be the final arbiters as to the validity of any proposed change in the terms of that document. **No segment of the population, no branch of government is entitled to assume this authority.** The framers of the Charter, as illustrious as they might have been, and the people of Philadelphia, in adopting those provisions, were nevertheless circumscribed by the power they received from the legislature. Thus, this is not a question of the right of the people of Philadelphia nor the eminence of the framers of the Home Rule Charter, but the authority of the legislature to confer upon a municipality a right to act in this manner. The ultimate source of power which determines the legitimacy of the legislative delegation is the people of the Commonwealth and their views have been expressed through their Constitution. **The perimeters provided by the Constitution may not be exceeded without an affirmative expression from all of the citizens of this Commonwealth.** As I have stated, it is my view that the people have expressed through their

Constitution an intent to set forth carefully defined methods by which elected officials may be removed during their term of office. I cannot agree with the dissenters who would ignore these provisions, **nor can I accept the view of Mr. Chief Justice Jones, who would attempt to modify these procedures. If, in fact, the people of Pennsylvania are convinced that recall is a desirable governmental device, they alone must make that decision through their established procedures for amending the Constitution**.

367 A.2d at 254 (Nix, J., concurring) (emphasis added).

### 1. The Inherent Rights Theory Does Not Support a Judicial Resolution of This Matter.

Recently the Pennsylvania Supreme Court addressed the "inherent rights" theory in the context of the 1968 constitutional amendment that completely rewrote Article V (judiciary), effectively replacing Article V of the Constitution of 1874. *Driscoll v. Corbett*, 69 A.3d 197 (Pa. 2013). The amendment, for the first time, required justices, judges and justices of the peace to "be retired upon attaining the age of seventy years." Several judges alleged this amendment requirement violated "inherent rights" acknowledged in Article I, Section 1 of the Pennsylvania Declaration of Rights.[24] The Supreme Court acknowledged that the "Petitioners advanced a colorable argument – that the prospect of constitutional amendments in derogation of truly core, indefeasible rights is highly problematic" but concluded that the "ability to continue in public service as a commissioned judge beyond seventy years of age . . . [was not] within the scope of the inherent rights of mankind." *Id.*, at 209, 214-15.

However, the Court acknowledged that "one such natural right of the people is the right to alter their government as they see fit, as reflected in Section 2 of the Pennsylvania Declaration of Rights." *Id.*, at 512-13. The Court stated that "[a] conundrum arises if the people see fit to

---

[24] "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1.

alter their government in a manner that undermines one of the other rights guaranteed under the Declaration."  The Court did not resolve this conundrum, finding it "more theoretical than practical since state constitutions cannot eliminate rights otherwise available to citizens under *the United States Constitution*," *Id.*, at 209 (footnote and citation omitted, emphasis in original) and because the right asserted was not an inherent right of mankind.

The Township does not present a colorable argument that a comparable conundrum is presented by this matter because (i) as explained in PGE's Brief in Opposition and in Section IV.B. above, there is no right to local self-government under the United States Constitution and (ii) as stated in the Introduction above, the inherent rights constitutional text relied upon by the Township recognizes the people's right to self-government – not the people's right to *local* self-government.  In other words, as asserted throughout this brief, the people in a local government unit cannot assert an inherent right to local self-government by enacting a local law proclaiming superiority to state and federal law.  Of course this issue was not involved in *Driscoll*, but the Court in *Driscoll* seems to have foreshadowed it by stating:

> [T]o the extent that there is a confluence between the rights of mankind under the Pennsylvania Constitution and rights accorded under the federal Constitution, such rights must be vindicated over and against inconsistent majoritarian acts **at the state level**.

*Id.* (emphasis added).  Also as stated above, the result of such an unfettered right to local self-government would be chaos throughout the Commonwealth of Pennsylvania.

The Supreme Court's decision in *Driscoll* also supports PIOGA's position that this matter requires a political and legislative resolution, not a judicial one.  The Court noted that:

> [I]n view of the people's indefeasible right to alter their government as they think proper through amending its basic charter, . . . [and] certain societal circumstances may have changed since 1968 when the challenged provision was added to the Constitution . . . **the proper approach of conforming the Constitution more closely with Petitioners' vision of how experiential changes should be taken**

**into account is to pursue further amendment to the Pennsylvania Constitution.**"[25]

*Id.*, at 215.  Likewise, the proper approach for the people of Grant Township to establish a local government that conforms to their system of government vision is to pursue further amendment to the Pennsylvania Constitution.  Enacting a local law and trying to establish their system of local government vision through litigation defending that local law is not a lawful manner of doing so.

## V.    CONCLUSION

For the foregoing reasons, PIOGA respectfully requests that this Honorable Court deny Grant Township's Motion for Summary Judgment.

As PIOGA has established herein that it is entitled to judgment as a matter of law – the text of the United States and Pennsylvania constitutions – PIOGA respectfully requests that this Honorable Court grant partial summary judgment for PIOGA on Counts I and VII of PIOGA's Intervenor Complaint and rule specifically that the Township's enactment of the Ordinance and its defense in this matter have no basis in law, including the text of the United States and Pennsylvania constitutions.

Respectfully submitted,

Dated: February 29, 2016                    By:  */s/ Kevin J. Moody, Esquire*
                                                  PA Atty I.D. # 34367
                                                  General Counsel
                                                  Pennsylvania Independent Oil & Gas Assoc.
                                                  212 Locust Street, Suite 300
                                                  Harrisburg, PA  17101-1510
                                                  717-234-8525

.

---

[25] As noted above, an amendment to raise the mandatory retirement age of justices, judges and justices of the peace is on the ballot in the upcoming April 26, 2016 election in Pennsylvania. *See* footnote 12 and accompanying text.

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed a true and correct copy of the foregoing Brief in Opposition to Grant Township's Motion for Summary Judgment and Request for Partial Summary Judgment this 29th day of February, 2016, using the Court's CM/ECF system, which will automatically serve a copy upon all counsel of record.


By: *   /s/ Kevin J. Moody*