UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C., | ) ) ) | Civ. No.: 1:14-cv-209 |
| | | Magistrate Judge |
| Plaintiff, | ) ) | Susan Paradise Baxter |
| PENNSYLVANIA INDEPENDENT OIL AND GAS ASSOCIATION, | ) ) ) | |
| | ) | **GRANT TOWNSHIP'S** |
| Plaintiff-Intervenor, | ) ) | **OPPOSITION TO PGE'S MOTION FOR SUMMARY** |
| v. | ) ) ) | **JUDGMENT, AND IN SUPPORT OF GRANT TOWNSHIP'S CROSS-MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| GRANT TOWNSHIP, | ) ) | |
| | ) | *Electronically Filed* |
| Defendant. | ) | |
| _____ | ) | |

**GRANT TOWNSHIP'S OPPOSITION TO PENNSYLVANIA GENERAL ENERGY COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF <u>GRANT TOWNSHIP'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Grant Township, by and through its undersigned counsel, submits this *Opposition to Plaintiff Pennsylvania General Energy Company, L.L.C.'s ("PGE's") Motion for Summary Judgment*, which opposition also serves as Grant Township's support for it *Cross-Motion for Summary Judgment*.

PGE's motion for summary judgment must be denied because: (1) its facial constitutional claims (Counts I-VI of its *Amended Complaint*) are moot, thereby depriving this Court of jurisdiction over those claims; and (2) even if this Court were to find that PGE survives Grant Township's mootness challenge, Grant Township cannot be liable to PGE because PGE has failed to establish that Grant Township violated PGE's constitutional rights.

It is undisputed that the Court has declared key provisions of the challenged Ordinance invalid, and that Grant Township thereafter repealed the Ordinance. Because there is no longer a case or controversy entitling PGE to declaratory relief, PGE's *Motion for Summary Judgment* is premised on the idea that it suffered some type of damages because Grant Township violated its constitutional rights. Yet, PGE has not, and cannot, show that Grant Township is liable to it for the alleged constitutional violations, much less that it has a viable damages claim. PGE has not shown that the Ordinance was ever applied to it, or that there is a direct causal link between any harm allegedly suffered by PGE and Grant Township's conduct. Absent such a showing, the Court cannot, as a matter of law, find Grant Township liable.

The Court should reject PGE's attempt to avoid the damages inquiry by seeking summary judgment as to liability only. The Court cannot resolve Grant Township's alleged liability for constitutional violations without resolving the threshold issue of whether PGE's constitutional claims, which are otherwise moot, are saved by a viable claim for damages. Put another way, because the only controversy that could possibly remain with regard to PGE's constitutional allegations is whether it is entitled to damages, the Court cannot decide liability without consideration of damages.

In the process of unsuccessfully attempting to recast its constitutional claims as as-applied challenges, PGE asks the Court to do something that it already said it would not do. In its

*October 14, 2015 Memorandum Opinion*, the Court made clear that it would not rely on constitutional grounds to invalidate the Ordinance when it had already invalidated the challenged provisions of the Ordinance on state law grounds. PGE blatantly ignores this clear holding in asking the Court, for instance, for "a declaration that the Ordinance is unconstitutional under the First Amendment." *See* PGE's *Brief in Support of Summary Judgment* at p. 14 [ECF Doc. 155 at p. 14].

PGE's request is outside of the boundaries established by Article III of the Constitution. There is no longer any case or controversy upon which the Court could grant declaratory relief. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). PGE has not, and cannot, show that the Ordinance was applied to it in violation of its constitutional rights, or that there is a direct causal link between the Ordinance and any harm allegedly suffered by the company.

PGE's *Motion for Summary Judgment* should be denied. The Court should instead grant summary judgment in favor of Grant Township and dismiss Counts I-VI of PGE's *Amended Complaint.*

**STANDARD OF REVIEW**

Summary judgment is warranted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A party moving for summary judgment bears the burden of proving no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). To that end, the movant must inform the district court of the basis for its argument by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Where the movant is the defendant or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case." *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1582 (3d Cir.1992). The movant need only point to the lack of evidence supporting the non-movant's claim. *Id.*

The deciding court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006). A factual dispute is "genuine" only if it turns on "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. That is, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment. *Boyle v. County of Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson,* 477 U.S. at 248).

"[T]he plain language of Rule 56[ ] mandates the entry of summary judgment. . .against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *United States v. One Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber, Serial No. LW001804,* No. CIV.A. 15-2202, 2015 WL 4461603, at *3 (E.D. Pa. July 22, 2015) (citing *Celotex,* 477 U.S. at 322).

## BACKGROUND

**A.     The Community Bill of Rights Ordinance.**

Pennsylvania General Energy Company, LLC (hereinafter "PGE") operates natural gas wells within the Grant Township, including a deep gas well on property known as the Yanity

Farm (hereinafter "Yanity Well"). The company is currently seeking to convert that existing deep gas well to an injection well – thus enabling it to inject waste fluids, toxic chemicals, radioactive materials, and brine produced by fracking and other oil and gas extraction activities. *See* PGE's *Concise Statement of Facts* at ¶¶ 1, 2 (hereinafter "*PGE SOF*") [ECF Doc. 156 at ¶¶ 1, 2].

On June 3, 2014, the people of Grant Township, through their municipal elected officials, adopted a Community Bill of Rights Ordinance (hereinafter "Ordinance") [ECF Doc. 1-1]. That Ordinance established a local bill of rights and then prohibited certain activities – like the depositing of oil and gas waste materials into the Township – that would violate those rights. The local bill of rights recognized the rights of residents to clean air, clean water, and a sustainable energy future. *See* Ordinance at § 2 (codifying the "right to clean air, water, and soil;" the "right to scenic preservation;" and the "right to a sustainable energy future") [ECF Doc. 1-1 at § 2].

The Ordinance also recognized that the people of the Township have a federal, state, and locally-secured constitutional right to govern their own community. That right – the right of local, community self-government - includes the right to change their municipal system of governance if it has been rendered incapable of either protecting their civil and political rights, or of recognizing the authority of a community majority to make governing decisions for the locality. *See* Ordinance at § 2(a) (recognizing and securing the "right to local self-government") [ECF Doc. 1-1 at § 2(a)].

To protect the rights secured by the Ordinance's Community Bill of Rights, the Ordinance prohibited within Grant Township any corporation from "engag[ing] in the depositing of waste from oil and gas extraction" and invalidated any "permit, license, privilege, charter, or other authority issued by any state or federal entity which would violate [this prohibition] or any

5

rights secured by [the Ordinance], the Pennsylvania Constitution, the United States Constitution, or other laws." *See Am. Complaint*, ¶ 8; Ex. 1, §§ 3(a) and 3(b) [ECF Doc. 1-1 at §§ 3(a) and 3(b)].

The Ordinance further provided that corporations that violate or seek to violate the Ordinance "shall not be deemed to be 'persons,' nor possess any other legal rights, privileges, powers, or protections which would interfere with the rights or prohibitions enumerated by this Ordinance. 'Rights, privileges, powers or protections' shall include the power to assert state or federal preemptive laws in an attempt to overturn this Ordinance, and the power to assert that the people of the municipality lack the authority to adopt this Ordinance." *See Am. Complaint*, ¶ 12; Ex. 1, § 5(a) [ECF Doc. 1-1 at § 5(a)].

The Ordinance's specific prohibitions pertained to corporations because it is corporations, and not individuals, who have applied for, or hold, underground injection well permits in the state of Pennsylvania. As evident from the *EPA's Underground Injection Well Control Program Overview*, only business entities have applied for permits to operate Class-IID injection wells in Pennsylvania. *See* Grant Township's *Statement of Facts in Opposition to PGE's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgment* (hereinafter "*Grant Township SOF in Opposition*") at ¶ 3 (citing *EPA's Underground Injection Control Program Overview, Solid Waste Advisory Committee Meeting, June 5, 2014*, at p. 11).

## B.      PGE's Amended Complaint.

PGE filed its *Amended Complaint* on August 14, 2014. As is clear from PGE's allegations, the purpose of this lawsuit is to determine the validity of the Ordinance, not to seek

damages. Indeed, PGE did not hold the required state permit until October 22, 2014 – two months *after* filing its *Amended Complaint*. Thus, PGE's current effort to recover damages from Grant is nothing more than a belated effort to invent another way to punish the people of Grant Township for advocating for their own rights.

**C.      The Court's October 14, 2015 Memorandum Opinion and Order.**

On October 14, 2015, the Court found Sections 3(a) and (b), Sections 4(b) and (c), and Sections 5(a) and (b) of the Community Bill of Rights Ordinance invalid under state statutory law, and thereby enjoined Grant Township from enforcing those sections of the Ordinance.

In reaching its conclusion, the Court relied on Pennsylvania's Second Class Township Code and Pennsylvania's Limited Liability Company Law, while also finding that the Ordinance was exclusionary under state land use law. *See October 14, 2015 Opinion and Order* at pp.12-13 [ECF Doc. 113 at pp. 12-13].

Because the Court granted PGE's request for injunctive relief based on its statutory claims, the Court did not reach the constitutional claims – Counts I, II, and III - raised by PGE's *Motion for Judgment on the Pleadings. See October 14, 2015 Opinion and Order* at p. 11 ("this Court will conduct all the statutory analyses before proceeding, if necessary, to any constitutional analysis.") [ECF Doc. 113 at p. 11]. The Court applied the long-established doctrine of avoiding resolution of claims on constitutional grounds whenever possible. *See Spector Motor Service v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality. . .unless such adjudication is unavoidable.").

**D.  Grant Township never enforced the Ordinance against PGE.**

PGE does not provide any facts to show that the Ordinance was ever applied to the company, or enforced against the company. This is because it was not. At no time, including prior to October 14, 2015, did the Grant Township Board of Supervisors take any action to enforce the Ordinance against PGE or against any other business entity. *Grant Township SOF in Opposition* at ¶¶ 1, 2. It is undisputed that the Grant Township Board of Supervisors never filed an enforcement action against PGE, or against any other business entity, to enforce the Ordinance. *Id*.

As testified to by Supervisor Jon Perry, the Chairman of the Grant Township Board of Supervisors, the need never arose for Grant Township to enforce the Ordinance against PGE because the Township was aware that PGE was lacking the required permit from the Department of Environmental Protection, or the company had not satisfied requirements imposed by the Environmental Protection Agency permit, and therefore, that PGE could not conduct activities in violation of the Ordinance. *Grant Township SOF in Opposition* at ¶¶ 1, 2; *Affidavit of Jon Perry* at ¶ 8). PGE also has not presented evidence of anyone else attempting to enforce the Ordinance against it.

In the absence of enforcement of the Ordinance, PGE is not entitled to a finding of liability against Grant Township on any of its claims.

**E.  The Ordinance never prevented PGE from using the Yanity Well as an injection well.**

PGE held both of the required federal and state permits only for a brief time – from October 22, 2014 until March 12, 2015. On March 12, 2015, the Pennsylvania Department of Environmental Protection ("DEP") revoked PGE's permit. *PGE SOF* at ¶¶ 10, 11. PGE's new

application to DEP for a permit to change the status of the Yanity Well to an injection well is still pending. *PGE SOF* at ¶ 12.

Even during the time that PGE held both the required federal and state permits, PGE did not stand ready to engage in the injection or depositing of waste in violation of the Ordinance. PGE's EPA permit required, among other things, that PGE satisfy certain conditions prior to operating the injection well. *Grant Township's SOF in Opposition* at ¶¶ 4, 5. Satisfactory performance of the mechanical integrity test is one of the conditions required by PGE's EPA permit. *Grant Township's SOF in Opposition* at ¶ 6; 40 CFR § 146.8.

PGE never satisfied the mechanical integrity test during the time it held both the required federal and state permits. *Grant Township's SOF in Opposition* at ¶ 7. This means that PGE could not have operated the Yanity Well as an injection well during the time the Ordinance was in effect, without violating state or federal law. Put another way, the direct cause of PGE's inability to operate the Yanity Well as an injection well from October 2014 to March 2015 was not the Ordinance, but rather its failure to have satisfied the conditions of its EPA permit.

PGE could have performed the mechanical integrity test at any time it was ready to do so. PGE, however, did not seek EPA's approval of its performance of the mechanical integrity test (a pre-condition of its federal permit) until after DEP had revoked its permit and the Court had invalidated key provisions of the Ordinance. *Grant Township SOF in Opposition* at ¶¶ 7-8, 14.

The type of mechanical integrity test that PGE performed is called a pressure test. *Grant Township SOF in Opposition* at ¶ 9. Performance of the pressure test does not require the depositing or injection of waste in violation of the Ordinance.[1] *Grant Township SOF in*

---

[1] Indeed, PGE performed the pressure test during the time that it did not have the Pennsylvania Department of Environmental Protection (DEP) permit required to operate the Yanity Well as an injection well. *Grant Township SOF in Opposition* at ¶ 15. If performance of the pressure test

*Opposition* at ¶ 10. As PGE's vice president Lisa McManus acknowledged, by March, 2015, the company had been monitoring pressure between the layers of the well casing -- despite the Ordinance -- and had found "very little, if any, pressure." *Grant Township SOF in Opposition* at ¶ 11. As further acknowledged by McManus, PGE knew that "being able to begin injection hinges on EPA's witnessing the test and ensuring the mechanical integrity of the well", but that the "EPA had not yet witnessed the pressure test." *Grant Township SOF in Opposition* at ¶ 12.

There is no evidence before the Court to explain why PGE did not obtain EPA approval of the mechanical integrity test until sometime after October 2015. According to PGE, it waited until after the Court invalidated provisions of the Ordinance, even though at that time it did not have, and still does not have, a valid DEP permit. *Grant Township SOF in Opposition* at ¶ 14. It is also quite possible that PGE would not have been able to pass the test until just a few months ago.

Whatever explanation PGE may proffer, it is immaterial. PGE cannot offer any explanation that would change the undisputed facts that: (1) at no time while the Ordinance was in effect did PGE have the ability under state and federal law to operate the Yanity Well as an injection well; and (2) the Ordinance did not prevent PGE from obtaining EPA approval at an earlier date, in particular, prior to DEP's revocation of its state permit.

---

required the depositing or injection of fracking waste into the well, then PGE would have knowingly and intentionally violated Pennsylvania state law and DEP regulations by performing it. *Grant Township SOF in Opposition* at ¶ 16.

Thus, it is factually impossible for PGE to claim that it suffered any harm as a result of the Ordinance prior to March 12, 2015. PGE has not presented any facts that would refute this conclusion.

**F.      Grant Township has repealed the Ordinance and adopted a Home Rule Charter.**

On November 3, 2015, the residents of Grant Township adopted a Home Rule Charter. *See Grant Township Home Rule Charter* [ECF Doc. No. 142-1]. Adoption of the Charter means that Grant Township is no longer a Second Class Township, and is no longer regulated by Pennsylvania's Second Class Township Code. The Home Rule Charter repealed the challenged Ordinance, and certain sections of the Ordinance have become part of that Charter.

## ARGUMENT

**I.      Because PGE's constitutional claims are facial challenges unsupported by damages, they are moot, and this Court lacks jurisdiction to entertain them.**

PGE's constitutional claims are facial constitutional challenges, brought pursuant to 42 U.S.C. §1983, for which the remedy available was declaratory and injunctive relief, not damages. Because the Court has already afforded PGE the very declaratory and injunctive relief PGE seeks in its motion for summary judgment as to liability, its constitutional claims are moot. PGE did not bring its constitutional claims as "as-applied" challenges for which damages may be awarded. Nor does PGE provide any facts in support of its *Motion for Summary Judgment* to show how the Ordinance was ever applied to it. As explained further below, PGE has not stated, and cannot state, a viable damages claim based on Grant Township's alleged constitutional

violations. With damages unavailable as a matter of law, PGE's constitutional claims do not present a live case or controversy and its constitutional claims are moot.[2]

The issue of mootness goes to whether the court has jurisdiction to hear the case. The court may consider it *sua sponte* or a party may raise it at any time. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) ("This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate."); *Access Ins. Co. v. Carpio*, 861 F. Supp. 2d 539, 543, n. 5 (E.D. Pa. 2012) ("a court may *sua sponte* dismiss a case on grounds of mootness or ripeness"); *Cottrell v. Good Wheels*, No. CIV.08-1738RBK/KMW, 2009 WL 3208299, at *3 (D.N.J. Sept. 28, 2009) ("Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint or portions of a complaint may be dismissed for lack of subject matter jurisdiction . . . A motion to dismiss for lack of subject matter jurisdiction may be brought at any time").[3]

Because of the mootness issue, judgment in PGE's favor as to liability, without PGE having made a showing of damages, would be improper. This is because in order to save its claims from mootness, PGE must show a viable claim for damages. As the court articulated in *Daskalea v. Washington Humane Soc'y*, 710 F. Supp. 2d 32, 42 (D.D.C. 2010), where "Plaintiffs have not asserted a viable claim for monetary damages in connection with their facial challenge. . . their facial challenge . . . is not saved from mootness."

---

[2] At the very least, there is an issue of fact as to whether PGE may recover damages against Grant Township based on its alleged constitutional violations. Because PGE has not presented any facts, much less undisputed ones, that would show it is entitled to damages, while Grant Township has submitted facts showing that PGE is *not* entitled to damages, summary judgment in PGE's favor is precluded as a matter of law.

[3] Grant Township respectfully suggests that the Court misunderstood the nature of its *Motion to Dismiss* [ECF Doc. 159], in striking it as untimely. Grant Township submits that it could have cited Fed. R. Civ. P. 12(b)(1) to better assist the Court in recognizing the nature of the motion as one pertaining to subject matter jurisdiction, which may be brought at any time. Grant Township fully briefed the issue of mootness in that motion and cited case precedent directly on point.

PGE has failed to identify any material facts that would show it is entitled to damages. PGE's *Concise Statement of Facts* does not identify a single fact that would support the proposition that the Ordinance was applied to it, precisely because it was not. It is undisputed that the Ordinance has not been enforced against PGE. *Grant Township's SOF in Opposition* at ¶¶ 1, 2.

Perhaps recognizing this fatal flaw, PGE recites the text of the Ordinance and suggests that its mere existence entitles it to a finding of liability against Grant Township, and to damages for violation of its constitutional rights. *See PGE's Motion to Strike and Response in Opposition to Grant's Motion to Dismiss* at p. 14 (declaring that PGE's injuries were caused by the "self-effectuating" operation of the Ordinance) [ECF Doc. 162 at p. 14].

Yet, *as a matter of law*, and as conceded by PGE, it cannot establish a claim based solely on the existence of the Ordinance. [4] In *CMR D.N. Corp. v. City of Philadelphia,* 703 F.3d 612, 628 (3d Cir. 2013), the Third Circuit considered a strikingly similar scenario. In that case, the plaintiff challenged a zoning law as unconstitutional, although the zoning law had not been applied to it. The Court found that the plaintiff did not have a claim where "[t]he only arguable harm that [plaintiff] ha[d] been subjected to [was] the mere existence of a law that it allege[d] [was] unconstitutional." *CMR D.N. Corp.,* 703 F.3d at 628 ("The only arguable harm that Waterfront has been subjected to is the mere existence of a law that it alleges is unconstitutional. We find no authority, and Waterfront has provided none, for the proposition that a plaintiff is entitled to nominal damages simply based on the existence of a zoning law that has never been

---

[4] In its *Opposition to Grant Township's Motion to Dismiss*, PGE represented that it intends to seek damages only from January, 2015 – March, 2015, thereby conceding that the mere enactment of the Ordinance (enacted June 4, 2014) did not cause PGE any compensable harm.

13

applied to it. That a legislature may enact a zoning law that if applied to someone would violate

due process does not entitle any individual who finds it offensive, including those never

subjected to the ordinance, to nominal damages"); *Chapin Furniture Outlet Inc. v. Town of

Chapin*, 252 F. App'x 566, 571 (4th Cir. 2007) ("Chapin's assertion of a nominal damages claim

alone is insufficient to preserve a live controversy. . . as the Ordinance was never enforced

against it and it has not suffered any constitutional deprivation.").[5] The Court should reach the

same conclusion in this case.

  Put another way, without - at the very least - evidence that the Ordinance has been

applied to injure the company in violation of its constitutional rights, PGE cannot obtain

summary judgment in its favor on its constitutional claims. *See Marion v. City of*

*Philadelphia/Water Dep't*, 161 F. Supp. 2d 381, 386-87 (E.D. Pa. 2001) ("The Court notes that

plaintiff of course bears the burden of establishing the essential elements of a § 1983 claim,

namely (1) that one or more defendants performed acts which operated to deprive plaintiff of one

or more of her federal constitutional rights by discriminating against her; (2) under the color of

the authority of the Commonwealth of Pennsylvania; and (3) that those acts were the proximate

cause of damages she suffered."); *Austin v. Nelson*, No. CIV. A. 95-718, 1995 WL 380008, at *2

---

[5] In its *Sur-Reply to Grant Township's Reply to Response to Motion for Entry of Case Management Order* at ¶ 3 [ECF Doc. 169 at ¶ 3], PGE, recognizing its inability to put forth any evidence of a viable damages claim, argued that nominal damages are available absent proof of actual injury. PGE's argument directly contradicts Third Circuit precedent as articulated in *CMR D.N. Corp. v. City of Philadelphia,* 703 F.3d 612 (3d Cir. 2013). PGE (recognizing that it had failed to do so) further argued that it did not need to allege nominal damages in its complaint. Comically, PGE supports this proposition with citation to a *pro se* prisoner case, *Allah v. Al-Hafeez*, 226 F.3d 247 (3d Cir. 2000), in which the court applied the *pro se* liberal construction principle in order to construe the prisoner's complaint as requesting nominal damages. *Id*. at 251 ("Construing his *pro se* complaint liberally, we interpret Allah's complaint to request nominal damages."). Such liberal construction principles do not apply in this case as counsel for PGE would surely consider itself better versed in the law than a *pro se* prisoner.

(E.D. Pa. June 26, 1995) ("As Plaintiff asserts damage to reputation as his claim, Plaintiff fails to allege a valid cause of action under § 1983."); *see also* Federal Land Use Law & Litigation §11:13 (2015 ed.) ("The six major elements of a § 1983 claim for damages are: "(1) standing to sue; (2) deprivation of a federal or constitutional right; (3) deprivation that occurs under color of state law; (4) injury in fact caused by the deprivation; (5) defendant does not have immunity from suit; [and that] (6) damages incurred are more than nominal.").

*DA Mortgage Inc. v. City of Miami*, 486 F.3d 1254, 1260 (11th Cir. 2007) is representative of how courts review cases in which a party challenges the constitutionality of an ordinance and presents a fact pattern substantially similar to this case. In *DA Mortgage Inc.*, the plaintiff, a nightclub owner, challenged the constitutionality of a noise ordinance. While the case was on appeal, the City resolved the ordinance's constitutional infirmity. *Id*. at 1259. In considering whether the plaintiff's claim was moot, the court noted that the City never actually applied the code section at issue to plaintiff and that plaintiff appeared to have based its claim for damages on the threat that the City might prosecute it for violations of the noise ordinance. *Id*. at 1260. The court correctly noted that "facial challenges regarding prospective harm cannot give rise to the remedy of damages" and that plaintiff's constitutional claim was thus not saved from mootness. *Id*.[6] The same reasoning applies, and the same result follows, in this case.

---

[6] PGE's *Sur-Reply to Grant Township's Reply to Response to Motion for Entry of Case Management Order* at ¶ 3 [ECF Doc. 169 at ¶ 3], again foreshadows its possible reply to Grant Township's argument. PGE submits that it need not demonstrate injury as an element of its Section 1983 claim in order to withstand summary judgment. *Id*. In support of this assertion, PGE cites *Johnson v. Wild Acres Lakes Prop. & Homeowners Ass'n*, No. 3:07-CV-1384, 2009 WL 2426057, at *1 (M.D. Pa. Aug. 6, 2009) and *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995) - both of which are cases involving allegations of excessive force. Whether a plaintiff may withstand a motion against him for summary judgment on an excessive force-based Section 1983 claim without any showing of actual damages has no bearing on the issue before the Court in this case. The law is clear that given the nature of PGE's claims in this case – constitutional challenges to an ordinance - (1) it must have a viable damages claim to survive

PGE's lack of evidence entitles Grant Township to summary judgment in its favor on Counts I-VI of the Amended Complaint. *See United States v. One Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber, Serial No. LW001804*, No. CIV.A. 15-2202, 2015 WL 4461603, at *3 (E.D. Pa. July 22, 2015) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 ("[T]he plain language of Rule 56[ ] mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial")).

## II.      PGE has not established the direct causal link required for municipal liability.

PGE has not established the direct causal link between its alleged injury and the Ordinance as is required for municipal liability. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), the Supreme Court established that, in order for a municipal defendant to be liable under § 1983, a plaintiff must (1) identify the policy in question, (2) attribute the policy to the municipality itself, and (3) show a causal link between the execution of the policy and the injury suffered. *Serena H. v. Kovarie*, 209 F. Supp. 2d 453, 456 (E.D. Pa. 2002) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984)). "The Supreme Court has clarified the third prong of this standard, holding that there must be a 'direct causal link between the municipal action and the deprivation of federal rights.'" *Id*. (quoting *Brown*, 520 U.S. at 404).

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the

---

mootness, and; (2) nominal damages are not available for mere enactment of an ordinance. By its nature, an excessive force claim requires the plaintiff to allege, and prove, that excessive force was applied to him. In contrast, PGE seeks summary judgment in its favor without alleging, or proving, that the Ordinance was applied to it.

municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (In order to establish a claim for municipal liability pursuant to § 1983, a plaintiff must allege and prove that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.")).

Here, as set forth above, there is no direct causal link between the Ordinance and the alleged violation of PGE's constitutional rights and its supposed damages. The Ordinance was never enforced against PGE. *Grant Township's SOF in Opposition* at ¶¶ 1-2. It was PGE's lack of a state permit and failure to satisfy the conditions of its EPA permit – not the Ordinance - that prevented PGE from using the Yanity Well to deposit fracking waste. *Grant Township's SOF in Opposition* at ¶¶ 7, 13-14.

In its *Opposition to Grant Township's Motion to Dismiss*, PGE claims that it is entitled to damages for Grant Township's alleged constitutional violations based on the idea that it could have been injecting fracking waste into the Yanity Well, from January, 2015 – March, 2015. [ECF Doc. 162 at 13] ("PGE's actual disposal costs were about $340,000 higher from January, 2015 through March 12, 2015"). Yet, the undisputed facts show that PGE could not have done so without violating its EPA permit because by March 2015 it had still not satisfied the mechanical integrity test. *Grant Township's SOF in Opposition* at ¶¶ 4-12.

PGE cannot claim that the Ordinance prevented it from performing the mechanical integrity test at an early date. PGE suggests this argument in its *Sur-Reply to Grant Township's Motion for a Case Management Order* [ECF Doc. 169]. PGE asserts that it was *only* able to

satisfy the mechanical integrity test after the Court ruled the Ordinance's ban on the injection of fracking waste invalid. *Id*. at p. 4. PGE makes this statement in an effort to argue that the Ordinance - and not the pre-operating conditions imposed by the EPA permit - prevented it from injecting fracking waste.

PGE's assertion is flawed in a number of respects. First, there are no facts before the Court that would support this assertion. PGE, for instance, does not present any testimony stating that it could not have performed the pressure test without depositing or injecting fracking waste in violation of the Ordinance. And, in fact, such testimony would be false. As confirmed by James Bennett, of EPA's Groundwater and Enforcement Branch, pressure tests do not require the injection of fracking waste. *Grant Township's SOF in Opposition* at ¶¶ 10, 13. Second, PGE's assertion is contradicted by an admission by PGE's own Vice-President that PGE was performing pressure tests, on its own, *before* March 2015. *Grant Township's SOF in Opposition* at ¶¶ 11-12.

Because PGE was not ready to operate the Yanity Well as an injection well at any time the Ordinance was in force, it is factually impossible for PGE to claim that there is a direct causal link between the Ordinance and its alleged injury of not being able to operate the Yanity Well as an injection well.

PGE has failed to put forth evidence of the direct causal link between the Ordinance and its alleged injury as is required to establish Grant Township's liability. The undisputed facts show that it cannot do so. As such, the Court should enter judgment in Grant Township's favor, finding that PGE has not established Grant Township's liability.

III.   **PGE is not otherwise entitled to summary judgment on any of its constitutional claims.**

Grant Township addresses PGE's specific arguments from the company's *Motion for Summary Judgment*, in turn, to further demonstrate why Grant Township is not liable to PGE for the alleged violations of the company's constitutional rights.

A. **Grant Township is not liable to PGE under the Supremacy Clause (Count I).**

PGE contends that the Ordinance violates the Supremacy Clause. The Supremacy Clause provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land. . . ." U.S. Const. Art. VI, Cl. 2. I. PGE contends that the Ordinance violates the Supremacy Clause by providing that corporations that violate or seek to violate the Ordinance "shall not be deemed to be 'persons,' nor possess any other legal rights, privileges, powers, or protections which would interfere with the rights or prohibitions enumerated by this ordinance, including the power to assert state or federal preemptive laws in an attempt to overturn this Ordinance." In particular, PGE complains: "*On its face*, the Ordinance was designed to and does strip PGE of its status as a "person," thereby divesting PGE of all of its constitutionally protected rights." *See PGE's Brief in Support of Summary Judgment* at p. 7 (emphasis added) [ECF Doc. 155 at 7].

PGE's Supremacy Clause claim fails for a number of reasons. First, as PGE essentially acknowledges, its Supremacy Clause claim is a facial challenge. PGE fails to identify any facts that would show that the provisions of the Ordinance allegedly in violation of the Supremacy Clause were applied to it, or that it in any way suffered harm as a result of those provisions. This Court has already found the provisions allegedly in violation of the Supremacy Clause to be

invalid on state law grounds, and the Ordinance has been repealed. PGE cannot invoke the Supremacy Clause to revive those provisions to gin up a §1983 cause of action.

Second, Third Circuit precedent recognizing a private cause of action under the Supremacy Clause is narrow, and its validity was recently called into question. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 317 (3d Cir. 2013) ("We note at the outset that it is questionable whether Plaintiffs can sustain a cause of action under the Supremacy Clause at all."). The Third Circuit has held that the Supremacy Clause may create "an independent right of action where a party alleges preemption of state law by federal law." *Lewis v. Alexander*, 685 F.3d 325, 345-46 (3d Cir. 2012). Where a law is preempted, the remedy is declaratory and injunctive relief. *See e.g., Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n. 14, (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."). There is no private right of action for damages under the Supremacy Clause. As PGE's claim for declaratory and injunctive relief is now moot, even if PGE had a meritorious Supremacy Clause claim, which it does not, it cannot prevail. The Court should enter judgment in Grant Township's favor on PGE's Supremacy Clause claim.

**B. Grant Township is not liable to PGE for violating the company's Equal Protection "rights" (Count II).**

PGE argues that the Ordinance violated its rights under the Equal Protection clause of the Fourteenth Amendment of the United States Constitution. "[I]n an equal protection challenge the question is whether 'the Township has irrationally distinguished between similarly situated

classes.'" *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 171 (3d Cir. 2006) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 689 (3d Cir.1980)). The court thus must begin by examining whether PGE is similarly situated to others who may be permitted to inject fracking waste in Grant Township. *See Congregation Kol Ami v. Abington Twp*., 309 F.3d 120, 137 (3d Cir. 2002) ("first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone"). Next, if "the entities are similarly situated" then Grant Township "must justify its different treatment of the two," by demonstrating that the ordinance is rationally related to a legitimate government purpose. *Cty. Concrete Corp.*, 442 F.3d at 171 (citation omitted).

PGE's equal protection argument relates to the Ordinance's provision that banned corporations and governments, but not individuals, from depositing, injecting or storing materials, including waste from oil and gas extractions or fracking, within Grant Township. PGE contends that Grant Township did not have a rational basis to make this distinction. *See PGE's Brief in Support of Summary Judgment* at pp.10-11 [ECF Doc. 155 at pp. 10-11].

PGE fails to satisfy either prong of the two-part equal protection analysis. First, PGE, a company in the oil and gas business, is not similarly situated to an individual person. Perhaps recognizing the absurdity of this suggestion, PGE glosses over this first prong of the analysis. PGE's equal protection claim fails on this ground alone.

Second, even if PGE was similarly situated to an individual, Grant Township rationally concluded that it was a near-certainty that only corporations and governmental entities would potentially engage in the depositing of fracking waste. As evident from the *EPA's Underground Injection Well Control Program Overview*, only companies and corporations – and no

individuals - have ever applied for permits to operate Class-IID injection wells in Pennsylvania. *Grant Township's SOF in Opposition* at ¶ 3. Indeed, it is hard to fathom an instance where an individual, without being shielded from liability by the corporate form, would ever engage in such dangerous activity.

Grant Township had a legitimate reason to pass the Ordinance, and in particular, Section 5(a) of the Ordinance, which banned corporations and government entities from depositing fracking waste within the Township. As articulated in the preamble, the Ordinance was passed to protect the community's and the environment's health and safety. The people of Grant Township identified the corporate depositing of fracking waste as a serious threat to their community, including their water supplies.[7] As highlighted by recent events in Flint, Michigan, communities

---

[7] Through the Ordinance, the people of Grant identified a multitude of reasons for their adoption of the Ordinance. The preamble reads that "this community finds that the depositing of waste from oil and gas extraction is economically and environmentally unsustainable, in that it damages property values and the natural environment, and places the health of residents at risk." Ordinance at ¶ 1 [ECF Doc. 1-1 at ¶ 1]. In addition, the Bill of Rights within the Ordinance contained a variety of rights that the people of Grant felt were threatened by the depositing of oil and gas waste. The Ordinance thus found that the activity threatened their "right to clean air, water, and soil" and that the depositing of waste posed "potential risks to clean air, water, and soil within the Township;" that the activity threatened their "rural quality of life," that the activity threatened the ability of ecosystems within the Township to "exist, flourish, and naturally evolve," and that the activity threatened residents' rights to a sustainable energy future "free from activities related to fossil fuel extraction and production." Ordinance at ¶¶ 2(a-e) [ECF Doc. 1-1 at ¶¶ 2(a-e)]. It is undisputed that some percentage of injection wells leak, and that "scientists and federal regulators acknowledge that they do not know how many of the sites are leaking." *See, e.g.,* http://www.scientificamerican.com/article/are-fracking-wastewater-wells-poisoning-ground-beneath-our-feeth/ (accessed February 28, 2016). In a *Supplement to its Motion for Reconsideration of this Court's October 14, 2015 Opinion and Order*, Grant identified further concerns with the proposed injection well, including the fact that a sample analysis of waste destined for the well revealed radioactive materials, toluene, hydrazine, and other toxic, carcinogenic, and harmful constituents. *Motion for Reconsideration* at ¶¶12-13 [ECF Doc. 150 at ¶¶12-13].

have legitimate reasons to be concerned about corporate activities causing environmental contamination and public health hazards, coupled with inadequate federal and state oversight.[8]

PGE also fails to distinguish the *Mora County* case. In that case, the District of New Mexico considered an equal protection challenge to a similar ordinance – banning oil and gas extraction and development activities within the County - and found a rational basis for the disparate treatment of corporations. *SWEPI, LP v. Mora County*, 81 F. Supp. 3d 1075, 1080 (D.N.M. 2015). Just as the court found in *Mora County*, this Court should find: "[i]t is rational that, if corporations and not individuals engage in fracking, [Grant Township] would ban corporations but not individuals from engaging in hydrocarbon exploration and extraction." *Id*. at 1176.

Finally, PGE again seeks a declaration that this already-invalidated provision of the repealed Ordinance violates its equal protection "rights" as a company, but does not provide any facts that would show that it suffered any damages as a result of the alleged violation of the Equal Protection Clause.

Accordingly, the Court should enter judgment in Grant Township's favor on PGE's Equal Protection claim.

### C. Grant Township is not liable to PGE for violating the company's First Amendment "rights" (Count III).

PGE argues that Section 5(a) of the Ordinance violated PGE's First Amendment rights, and was aimed at suppressing PGE's "right to make a complaint to, or seek the assistance of, the government for the redress of grievances related to the Community Bill of Rights Ordinance."

---

[8] PGE audaciously describes its injection activities as "lawful" when it still has not obtained the required DEP permit, and Grant Township's new Home Rule Charter prevents such activities.

*See PGE's Brief in Support of Summary Judgment* at pp.13-14 [ECF Doc. 155 at pp. 13-14].

Here, PGE seeks declaratory relief regarding an invalidated provision of a now-repealed

Ordinance. PGE concludes: "*As written*, the Ordinance violates the Petition Clause, and PGE is

entitled to judgment as a matter of law and a declaration that the Ordinance is unconstitutional

under the First Amendment." *Id.* at p. 14 (*emphasis added*) [ECF Doc. 155 at p. 14].

PGE again cites the *Mora County* case for its proposition of liability. The *Mora County*

court's holding as to application of the First Amendment, however, has no bearing on the issue

of Grant Township's liability that is currently before the Court.[9] The court's ruling in *Mora*

*County* was in the declaratory judgment context. The ordinance had not yet been invalidated or

repealed and the plaintiff was not required to show that the Ordinance had been applied to it in

order to obtain declaratory relief.

PGE does not provide any facts showing how the Ordinance was applied to it in violation

of its First Amendment rights. Nor can it. PGE asserts that the ordinance is "aimed at

suppressing PGE's fundamental rights to lodge a complaint or seek the assistance of the court."

*See* PGE's *Brief in Support of Summary Judgment* at p. 13 [ECF Doc. 155 at p. 13]. Yet, the

Ordinance did not prevent PGE from using this Court to nullify parts of the Ordinance, or from

aggressively litigating this case.

Accordingly, the Court should enter judgment in Grant Township's favor on PGE's First

Amendment claim.

---

[9] Grant Township disagrees with the *Mora County* court's ruling, but need not make those
arguments to defeat PGE's summary judgment motion.

**D.  Grant Township is not liable to PGE for violating the company's Substantive Due Process "rights" (Count IV).**

Count IV contends that the Ordinance violated the Substantive Due Process Clause. The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONS. AMEND. 14 § 1. "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." *Cty. Concrete Corp.*, 442 F.3d at 165 (citation omitted).  A successful facial substantive due process challenge to the Ordinance must "allege facts that would support a finding of arbitrary or irrational legislative action by the Township." *Id*. at 169 (citation omitted). Because PGE seeks relief in the summary judgment context, to support a substantive due process challenge it must point to undisputed facts showing that Grant Township acted *arbitrarily and irrationally* in enacting the Ordinance.

PGE has not made the required showing to establish Grant Township's liability for a substantive due process violation. First, PGE does not point to any undisputed facts showing that Grant Township acted arbitrarily and irrationally in enacting the Ordinance. To the contrary, as explained in III(B) above, Grant Township had several legitimate reasons to pass the Ordinance. Far from arbitrary, protection of people's water supplies, health, natural environment, home, and community against known dangers of fracking-related activities is both necessary and prudent.

Second, PGE must show that Grant Township's allegedly arbitrary act deprived it of a protected property interest. PGE has not made this required showing because it does not have a protected property interest in using the Yanity Well to inject fracking waste, and it has not provided any facts showing that the Ordinance was applied to it.

As briefed by Grant Township throughout this case, even during the brief period of time that it held both state and federal permits, such permits did not give PGE a protected property interest. The EPA permit expressly states that it does not confer a property interest. *Grant Township's SOF in Opposition* at ¶ 4 (citing PGE's *EPA Permit* at 2 (establishing that the issuance of the EPA Permit "does not convey property rights or mineral rights of any sort or any other exclusive privilege; nor does it authorize any injury to persons or property, any invasion of other private rights, or any infringement of State or local law or regulations.")). Indeed, after only approximately five months, *DEP revoked PGE's state permit*. *PGE's SOF* at ¶ 11. Tellingly, PGE has not sued DEP for allegedly violating its substantive due process rights. Instead, PGE has focused its litigation efforts on bankrupting Grant Township and punishing the people of Grant Township for asserting their constitutional right to clean air, clean water, and a safe environment.

Finally, even if PGE had a protected property interest, PGE does not provide any facts showing that the Ordinance was applied to it to deprive it of that interest. Rather, PGE vaguely argues that "by adopting the Ordinance," Grant Township "intended to deny corporations, such as PGE, of their long-standing constitutional rights . . ." PGE's *Brief in Support of Summary Judgment* at p. 16 [ECF Doc. 155 at 16]. Such language typifies a facial constitutional challenge. PGE then summarizes a series of facial challenges, all beginning with "[t]he Ordinance, *on its face . . .* " *Id*. (emphasis added). As set forth above, and as fully briefed in Grant Township's *Motion to Dismiss* and *Reply* [ECF Docs. 152, 153, 170], the mere adoption of the Ordinance

cannot subject Grant Township to liability for damages. Even if it could, as explained in defeating PGE's equal protection claim, the Ordinance satisfied rational basis review.[10]

Accordingly, the Court should enter judgment in Grant Township's favor on PGE's Substantive Due Process claim.

### E. Grant Township is not liable to PGE for violating the company's Procedural Due Process "rights" (Count V).

PGE argues that the Ordinance violated its procedural due process rights. "[P]rocedural due process is implicated only where someone has claimed that there has been a taking or deprivation of a legally protected liberty or property interest." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). Procedural due process inquiries proceed in two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *United States v. One Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber, Serial No. LW001804*, No. CIV.A. 15-2202, 2015 WL 4461603, at *23 (E.D. Pa. July 22, 2015) (quoting *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (internal citations omitted)).

PGE claims the Ordinance interfered with its protected property interest in its EPA Underground Injection Well Control Permit. *See* PGE's *Brief in Support of Summary Judgment* at p. 19 [ECF Doc. 155 at p. 19]. As discussed in Part III(C), however, PGE does not have a protected property interest in its EPA permit. Even if the EPA permit could convey a protected

---

[10] PGE incorrectly asserts that strict scrutiny applies. Yet, PGE does not identify any right at stake, much less a fundamental one.

property interest, that interest had not vested during the time the Ordinance was in effect. As of March 2015, PGE had not performed the mechanical integrity test required by the permit. It is undisputed that PGE had no right to operate the injection well under the permit until it performed that test and satisfied the other pre-operational conditions of the permit. *See Grant Township's SOF in Opposition* at ¶¶ 4, 6, 12.

PGE also claims that the Ordinance violated the company's due process rights because it "s[ought] to prohibit corporations, such as PGE, from petitioning the government for redress of grievances" and "provide[d] no process or procedure of which PGE c[ould] avail itself to address the deprivation of its legal property rights and interests caused by the Ordinance." *See* PGE's *Brief in Support of Summary Judgment* at pp. 19-20 [ECF Doc. 155 at pp. 19-20]. PGE's procedural due process claim in this regard fails for the same reason that its First Amendment challenge fails.

First, PGE does not state any facts to show how the Ordinance was applied to it to prevent it from "petitioning the government for redress from grievance." Second, PGE has been vigorously litigating this case in federal court - the process by which it has chosen to seek redress for its alleged deprivation of a property right. So, PGE has not been deprived of a process to challenge the Ordinance, nor suffered any damages for lack of due process.

Accordingly, the Court should enter judgment in Grant Township's favor on PGE's Procedural Due Process claim.

**F. Grant Township is not liable to PGE for violating the company's Contract Clause "rights" (Count VI).**

PGE argues that Section 3(a) of the Ordinance - that banned PGE from engaging in the injection and storage of oil and gas materials within Grant Township - violated the Contracts

Clause. The U.S. Constitution provides that "no state shall enter into any . . . Law impairing the Obligation of Contracts." U.S. CONST. ART. I, § 10. "Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." *Transport Workers Union, Local 290 by & Through Fabio v. SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998).

PGE's theory is that because it was not permitted to engage in injection and storage activities it was unable to realize the benefits of the contracts (*i.e.*, leases) it has with the owners of the subsurface estates. PGE argues that "[b]ecause of the outright ban and the broad manner in which 'depositing of waste from oil and gas extraction' is defined, the Ordinance substantially impairs PGE's leases with the owners of subsurface estates within Grant Township." PGE's *Brief in Support of Summary Judgment* at p. 21 [ECF Doc. 155 at p. 21].

PGE follows this unsubstantiated conclusion with a long paragraph of unsubstantiated facts. *Id*. PGE, for instance, states "oil and gas leases provide for the exploration and extraction of oil and natural gas materials, which involves drilling and injecting fluid into the ground at high pressure in order to fracture shale rocks to release natural gas." *Id*. PGE does not cite any evidence in support of this assertion. PGE cannot rely on unsupported factual statements on a motion for summary judgment.

Many other key facts are missing to support a claim that the Ordinance violated PGE's rights as secured by the Contracts Clause. PGE does not provide any evidence that the Ordinance actually interfered with any of its contracts, or that it has actually suffered any damages as a result. There is no evidence, for instance, that it was unable to fulfill its contract obligations or realize the benefits of its leases. For that matter, PGE does not attach a single lease to its motion.

29

In sum, PGE has not presented any evidence that the Ordinance substantially interfered with its contractual relationships. Just as this Court, in its October, 2015 ruling, said it would not do the lawyers' footwork of linking up legal arguments with the claims to which they might pertain, the Court, here, should not, and cannot, fill in the gaping blanks left by PGE's effort to achieve summary judgment through supposition unsupported by factual documentation.

Accordingly, the Court should enter judgment in Grant Township's favor on PGE's Contracts Clause claim.

## IV.    PGE's attempt to bifurcate liability and damages is improper.

PGE did not separately move to bifurcate these proceedings, but rather, filed a motion for summary judgment as to liability only, seeking declaratory relief on moot constitutional claims, hoping that it could convince the Court to rule in its favor without putting forth any facts to show how the Ordinance had actually been applied to it. PGE would then hope to argue to the jury that liability had already been established and that the jury need only decide the issue of damages.

That is not how bifurcation works. For the Court to find Grant Township potentially liable *for dama*ges, PGE must show that the Ordinance was applied to it. PGE's facial constitutional challenges, by their nature, do not require such a showing because they challenge only general application of the Ordinance. Yet, PGE seeks a judgment as to liability on its now-moot facial challenges with the intent to improperly leverage that finding to recover damages.

PGE's proposed bifurcation is not only improper, but it would severely prejudice Grant Township by "stacking the cards against it" and giving the jury the incorrect impression that PGE had already made the required showing that the Ordinance had been applied to it. Simply put, despite PGE's attempt to confuse the Court, it cannot find Grant Township liable and

30

"declare" a violation of any of PGE's alleged constitutional rights without the required showing that the Ordinance was applied to the company. *See CMR D.N. Corp.*, 703 F.3d at 628 ("We find no authority, . . .for the proposition that a plaintiff is entitled to nominal damages simply based on the existence of a zoning law that has never been applied to it. That a legislature may enact a zoning law that if applied to someone would violate due process does not entitle any individual who finds it offensive, including those never subjected to the ordinance, to nominal damages").

## V.      The Court should grant summary judgment in Grant Township's favor on its Counterclaim.

Grant Township has separately moved for summary judgment on its counterclaim.  Grant Township asserts that it is entitled to summary judgment on its counterclaim for the reasons set forth therein.

PGE's overreaching, and factually and legally unsupported motion, only further illustrates the need for corporate constitutional "rights" to be subordinated to the people's right of local community, self-government, when that right of self-government is exercised to expand people's civil and environmental rights. Unchecked corporate power leads to the very situation presented by this case: a small town threatened with bankruptcy, and a population unprotected from very real and palpable harms caused by toxic waste.

## CONCLUSION

Grant Township respectfully requests that the Court:

(1) Deny PGE's *Motion for Summary Judgment*; and

(2) Grant Grant Township's *Cross-Motion for Summary Judgment*, dismissing Counts I-VI of PGE's *Amended Complaint*.

Respectfully submitted ***February 29, 2016***.


*For Defendant Grant Township:*

**/s/ Thomas Alan Linzey**
Thomas Alan Linzey, Esq.
Community Environmental Legal Defense Fund
P.O. Box 360
Mercersburg, Pennsylvania 17236
(717) 498-0054 (v)
(717) 977-6823 (c)
tal@pa.net