## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA GENERAL ENERGY )
COMPANY, LLC, )
    **Plaintiff** )
    )     **C.A.No. 14-209ERIE**
vs. )
    )
**GRANT TOWNSHIP,** )     **Magistrate Judge Baxter**
    **Defendant.** )

## MEMORANDUM OPINION

### On Motions for Summary Judgment

Magistrate Judge Susan Paradise Baxter

    PGE and Grant Township have filed motions for summary judgment, which breakdown as follows: Plaintiff PGE seeks summary judgment on its own six remaining claims, as well as the counterclaim brought by Defendant Grant Township. For its part, Grant Township seeks summary judgment on its counterclaim. ECF No. 154; ECF No. 157.

### I.    Relevant Procedural History

    Plaintiff Pennsylvania General Energy Company, LLC, ("PGE") filed this action challenging the constitutionality, validity and enforceability of an ordinance adopted by Grant Township that established a self-styled Community Bill of Rights Ordinance. Plaintiff seeks relief against Defendant Grant Township on the grounds that the Ordinance purports to strip Plaintiff of its constitutional rights. Plaintiff seeks to enforce its federal constitutional rights through 42 U.S.C. § 1983. Additionally, Plaintiff contends the Ordinance is in direct conflict with a number of Pennsylvania statutes and is therefore preempted. ECF No. 5.

1

Defendant raises a counterclaim pursuant to 42 U.S.C. § 1983 and § 1988 against PGE, claiming that by bringing this lawsuit challenging the Ordinance, PGE is violating the rights of the people of Grant Township to "local community self-government" as secured by the American Declaration of Independence, the Pennsylvania Constitution, the federal constitutional framework, and the Community Bill of Rights Ordinance itself. ECF No. 10.

Previously, PGE and Grant Township filed motions for judgment on the pleadings on some of their other claims. On October 14, 2015, this Court granted Plaintiff PGE's motion for judgment on the pleadings thereby invalidating six provisions of the challenged Ordinance.[1] ECF Nos. 113 - 114. Grant Township's motion was denied. Id. Two weeks later, on November 3, 2015, the people of Grant Township voted to repeal the Community Bill of Rights Ordinance and adopted a new Home Rule Charter. See ECF No. 180-2.

Next, PGE and Grant Township filed the instant motions for summary judgment. At issue in Plaintiff PGE's present motion are Plaintiff's remaining federal constitutional claims. Specifically, Plaintiff PGE claims the Community Bill of Rights Ordinance violates the Supremacy Clause, the Equal Protection Clause, the Petition Clause of the First Amendment, the Contract Clause, and both the substantive and procedural components of the Due Process Clause of the United States Constitution and seeks to enforce all of these federal constitutional rights

---

[1] This Court held that Sections 3(a) and (b), 4(b) and (c), and 5(a) and (b) of the Community Bill of Rights Ordinance were invalid as they were preempted by various state laws. Grant Township was enjoined from enforcing these sections of the ordinance. ECF No. 114. Specifically, this Court held that: §§ 3(a) and (b) were enacted without legal authority in violation of the Second Class Township Code and were exclusionary in violation of Pennsylvania law; §§ 4(b) and (c) were enacted without legislative authority in violation of the Second Class Township Code; § 5(a) was preempted by the Limited Liability Companies Law; and §§ 5(a) and (b) were preempted by the Second Class Township Code. Id.

through 42 U.S.C. § 1983. PGE also seeks summary judgment in its favor on Grant Township's counterclaim.

Grant Township filed a motion for summary judgment on its counterclaim that PGE violated its constitutional right to "local community self-government." Grant Township's motion for summary judgment seeks judgment on its counterclaim only. Grant Township has not moved for summary judgment on PGE's claims.

Grant Township's and PGE's motions for summary judgment are fully briefed and are ripe for disposition by this Court.[2]

## II.     Standard of Review on Motions for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330

---

[2] This Court previously permitted the Pennsylvania Independent Oil and Gas Association ("PIOGA") to intervene as a plaintiff in this action. PIOGA filed a motion to dismiss the Township's counterclaim [ECF No. 235], which remains pending and will be resolved by separate order. Additionally, PIOGA has filed a brief in opposition to Grant Township's motion for summary judgment on its counterclaim. ECF No. 182. Within that brief, PIOGA requests partial summary judgment. Because such a request within an opposition brief is not contemplated by or consistent with either the Local or Federal Rules of Civil Procedure, PIOGA's request for partial summary judgment is dismissed without prejudice. See also ECF No. 223, n.2. However, this Court has reviewed and considered the arguments made by PIOGA in opposition to Grant Township's motion for summary judgment.

3

(1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v.

Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-

movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P.

56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-

movant must present affirmative evidence - more than a scintilla but less than a preponderance -

which supports each element of his claim to defeat a properly presented motion for summary

judgment). The non-moving party must go beyond the pleadings and show specific facts by

affidavit or by information contained in the filed documents (i.e., depositions, answers to

interrogatories and admissions) to meet his burden of proving elements essential to his claim.

Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

In determining summary judgment, a court uses a burden-shifting scheme: When the

party moving for summary judgment would ultimately bear the burden of proof at trial, it must

come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial. In contrast, when the nonmoving party bears the burden of proving the

claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence

to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the

nonmoving party failed to make a showing sufficient to establish an element essential to that

party's case on which that party will bear the burden of proof at trial. See Celotex Corp., 477

U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be

denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H.

Kress & Co., 398 U.S. 144, 159-60 (1970).

4

In a procedural situation where a plaintiff (or counterclaimant) is moving for offensive summary judgment, the movant must produce evidence sufficient to establish each element of a claim:

> A summary judgment is neither a method of avoiding the necessity for proving one's case nor a clever procedural gambit whereby a claimant can shift to his adversary his burden of proof on one or more issues. To obtain a judgment in favor of a claimant pursuant to his complaint, counter-claim, or cross-claim, the moving party must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary in his pleadings, or by stipulation, or otherwise during the course of pretrial. A plaintiff seeking summary judgment who has failed to produce such evidence on one or more essential elements of his cause of action is no more 'entitled to a judgment' than is a plaintiff who has fully tried his case and who has neglected to offer evidence sufficient to support a finding on a material issue upon which he bears the burden of proof.

Duffy v. Anderson, 2011 WL 2148855, at *2 (D. Nev. June 1, 2011) quoting United States v. Dibble, 429 F.2d 598, 601 (9th Cir.1970) (citations omitted).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Undisputed Facts

Both PGE and Grant Township have provided scant material facts in support of their respective motions for summary judgment. The undisputed facts are as follows.

PGE is a private corporation in the business of exploration and development of oil and gas. ECF No. 156, ¶ 1; ECF No. 185, ¶ 16. PGE currently owns and operates natural gas wells in Grant Township, Pennsylvania. ECF No. 185, ¶ 1. PGE's exploration and development activities

5

include drilling and operating gas wells and managing brine and other produced fluids from operating wells. Id. at ¶ 2.

In 1997, PGE's predecessor in interest put into production a deep gas well in Grant Township on property known as the Yanity Farm. Id. at ¶ 3. PGE intends to use the Yanity Well to inject produced fluids from its other oil and gas operations. Id. at ¶ 8. Based on its intention to convert the use of the Yanity Well to an injection well for disposal of produced fluids generated at other PGE oil and gas wells, PGE proceeded to obtain regulatory approval for such use. Id. at ¶ 3.

On March 19, 2014, PGE received an initial permit from the United States Environmental Protection Agency to convert the Yanity Well into an injection well, and on September 11, 2014, the EPA issued a final permit in this regard. ECF No. 185, ¶¶ 5-6.

On June 3, 2014, Grant Township adopted the Community Bill of Rights Ordinance. Id. at ¶ 13. The Community Bill of Rights Ordinance expressly prohibits any corporation from "engag[ing] in the depositing of waste from oil and gas extraction" and invalidates any "permit, license, privilege, charter, or other authority issued by any state or federal entity which would violate [this prohibition] or any rights secured by [the Ordinance], the Pennsylvania Constitution, the United States Constitution, or other laws." Id. at ¶ 14.

## IV.    The Cross Motions for Summary judgment on Grant Township's Counterclaim

Before turning to PGE's argument in favor of summary judgment, the Court will first take up the Township's request for summary judgment on its counterclaim. Grant Township's counterclaim alleges that by challenging the Community Bill of Rights Ordinance through the instant action, PGE is violating the rights of the people of Grant Township to local community

6

self-government as secured by the American Declaration of Independence, the Pennsylvania Constitution, the federal constitutional framework, and the Community Bill of Rights Ordinance itself. ECF No. 10. Grant Township seeks to enforce this purported right to local community self-government through 42 U.S.C. § 1983.

Grant Township now moves for summary judgment on this counterclaim and requests that this Court: "dismiss PGE's action with prejudice, find Plaintiff is liable to Defendant under § 1983 and § 1988, with further proceedings to determine the extent of the Plaintiff's liability to the Defendant." ECF No. 157-1. Conversely, Plaintiff PGE seeks summary judgment in its own favor on the counterclaim, requesting that this Court dismiss the counterclaim. ECF No. 154-1. The summary judgment standard "does not change when … the parties have filed cross motions for summary judgment." Valley Nat'l Bank v. Ford Motor Co., 2017 WL 1084524, at *4 (D.N.J. Mar.22, 2017) quoting Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am., 559 F.Supp.2d 504, 509 (D.N.J. 2008). Cross motions for summary judgment "are not more than a claim by each side that it alone is entitled to summary judgment…" Id. quoting Transportes Ferreos de Venezuela II v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001).

A party may have a cause of action under § 1983 for certain violations of its constitutional rights. Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Id. In order to "seek relief under the United States Constitution, a plaintiff must utilize the vehicle of a claim under 42 U.S.C. § 1983 and may not assert claims for relief under the United States Constitution directly." Providence Pediatric Medical Daycare, Inc. v. Alaigh, 112

7

F.Supp.3d 234, 247 (D.N.J. 2015) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-07 (3d Cir. 1997). "By itself, § 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." Morse, 132 F.3d at 907. See also Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

At trial, it will be Grant Township's burden to prove both of the following elements of its § 1983 claim by a preponderance of the evidence:

1) That PGE acted under color of state law; and

2) While acting under color of state law, PGE deprived Grant Township of a federal or constitutional right.

Gomez v. Toledo, 446 U.S. 635, 640 (1980). See also Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013) citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law). In order to prevail on its motion for summary judgment on its counterclaim, Grant Township must satisfy both elements of the same test. Gomez, 446 U.S. at 640. [3]

Whether PGE acted as a state actor or under color of state law "is a threshold issue; there is no liability under § 1983 for those not acting under color of state law." Groman, 47 F.3d at 638, citing Versarge v. Township of Clinton, N.J., 984 F.2d 1359, 1363 (3d Cir. 1993).

Grant Township has produced no actual evidence to demonstrate that PGE is anything other than a private corporation. A private corporation is not a state actor. See Davis v. Noble, 2016 WL 4474004, at *4 (D.Del. 2016). Grant Township makes no real argument to the contrary, see Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374 (1995). Instead, despite the

---

[3] Grant Township's position that the right of local community self-government contains no requirement of state action (see ECF No. 159, ¶ 21) runs counter to all § 1983 jurisprudence.

evidence that shows that PGE is a private corporation, Grant Township argues that PGE has acted under color of state law. Generally, a private corporation does not act under color of state law and a legal claim against such a private actor under § 1983 fails. See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). See also Filarsky v. Delia, 566 U.S. 377, 383 (2012) citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

The color of state law analysis is anchored on a basic requirement, "that the defendant in a § 1983 action [here, PGE has] exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) quoting United States v. Classic, 313 U.S. 299, 326 (1941). This inquiry is fact-specific. Groman, 47 F.3d at 638.

A private action is not converted into one under color of state law simply by some tenuous connection to state action. Id. The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself. Id. The Supreme Court has instructed courts to inquire "whether the State provided a mantel of authority that enhanced the power of the harm-causing individual actor." NCAA v. Tarkanian, 488 U.S. 179, 192 (1988).

To support its argument that PGE is acting under color of state law, Grant Township theorizes:

> in the instant case, depriving Grant residents of their constitutional right of local community self-government requires many hands – the hands of the state in the legal creation of the Plaintiff company, the action of the state in its permit and regulatory capacity to enable PGE to construct and operate its proposed frack wastewater injection well, and the hands of state and federal government to bestow certain legal and constitutional powers and rights onto the Plaintiff. Indeed, the instant action really was filed at the end of a long chain of state and federal events without which the action would not have been possible. So, the instant action is merely one of enforcement – PGE's enforcement of pre-existing

9

> rights and protections that have been created and recognized by both state and
> federal authority.
>
> Thus, in addition to PGE being a creature of the state – a company whose form
> and very existence resulted from state action – the state has enabled and protected
> PGE to do what it seeks to do in the instant matter. That "overt" and "significant"
> state action thereby transforms what the law has generally treated as a "private"
> business entity into one almost completely dependent upon state power and
> authority to carry out projects harmful to the community in which it seeks to
> operate. For all intents and purposes, including for liability pursuant to § 1983,
> PGE therefore acts under the "color of state law" when it seeks to enforce its
> corporate constitutional "rights" against the people of Grant Township.

ECF No. 158, pages 23-24. The specific points of this argument require some precise extraction.

Distilled down, Grant Township argues that PGE is a state actor because: 1) the state created it

through its incorporation law; 2) the state granted permits to the company and regulates the

construction and operations of its proposed injection well; and 3) the state and federal

governments have given the corporation certain unnamed legal and constitutional rights. These

arguments are insufficient to deem PGE a state actor.

First, even if there was evidence that PGE was incorporated under Pennsylvania law,

such an incorporation does not transform PGE into a state actor. Doug Grant, Inc. v. Great Bay

Casino Corp., 232 F.3d 173, 189 (3d Cir. 2000) (mere fact of incorporation does not transform

the entity into a state actor). Second, it is well settled that a private corporation is not a state actor

simply because it is subject to state regulation. Blum v. Yaretsky, 457 U.S. 991, 1004, 1011

(1982) ("[The] mere fact that a business is subject to state regulation does not by itself convert its

action into that of the State"); Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974); Rendell-

Baker, 457 U.S. at 841 (finding that state regulation, no matter how extensive, does not make an

organization's actions state actions); Doug Grant, 232 F.3d at 173 (regulation and licensing of

casino activities did not transform casinos into state actors for purposes of § 1983); Bethel v.

Jendoco Constr. Corp., 570 F.2d 1168 (3d Cir. 1978) (the fact that construction companies were

10

protected and regulated as "legal entities" of the State was insufficient to bring the conduct of these companies within the purview of § 1983, even if these companies received a portion of their income from projects financed, in whole or in part, by state governmental agencies). See also White v. St. Joseph's Hosp., 369 Fed.Appx. 225, 226 (2d Cir. 2010) (licensing by the state alone does not render the licensee a state actor); Gipson v. Rosenberg, 797 F.2d 224, 225 (5th Cir. 1986), cert. denied, 481 U.S. 1007 (1987) (business does not become a state actor because it is granted a license by the state).

Third, Grant Township alleges that PGE is a state actor because both the federal and state governments have given certain unidentified legal and constitutional powers and rights to the corporation. The Township offers no specifics here, failing to explain which powers and rights it sees as establishing state action. The determination whether a private entity like PGE qualifies as a state actor "hinges on whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Glunk v. Noone, 186 F.Supp.3d 453, 460 (E.D. Pa. 2016) citing Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). Grant Township's nearly bald assertions that unspecified laws or enactments by the Commonwealth of Pennsylvania cannot establish this close nexus and, therefore, are insufficient to establish PGE as a state actor.

Thus, all of Grant Township's arguments in favor of state action are contrary to established law. See Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999), quoting Lugar, 457 U.S. at 937 (noting that "[w]ithout a limit such as this [the precedent on acting under color of state law], private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them."). Since the Township offers no other basis on which this Court could conclude that PGE

11

acted under color of state law, the Township's § 1983 claim for a violation of its "rights to local self-government" fails as a matter of law.[4]

Accordingly, Grant Township's motion for summary judgment will be denied and PGE's motion for summary judgment will be granted on this counterclaim. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. See Celotex Corp., 477 U.S. at 322–23.

## V.    PGE's Motion for Summary Judgment

The Court now takes up PGE's motion for summary judgment on all six of its federal constitutional claims and its request for a trial on damages.

### A. Comprehensive Arguments in opposition to PGE's motion for summary judgment

In opposition to PGE's motion for summary judgment, Grant Township advances two overarching arguments applicable to all of PGE's federal constitutional claims. First, Grant Township argues that because this Court has already invalidated certain provisions of the Community Bill of Rights Ordinance, no relief on PGE's federal constitutional claims can be ordered, rendering them moot. Second, Grant Township argues that PGE has failed to establish a direct causal connection, which is necessary for a successful claim of municipal liability.

---

[4] Because the Court concludes that PGE is not a state actor, there is no need to discuss whether the Township's purported constitutional right to local community self-government has been violated.

This Court will address these comprehensive arguments first, before turning to each of Plaintiff's individual constitutional claims.

*Mootness*

Grant Township's comprehensive mootness argument is twofold. First, the Township maintains that the only remedy available for PGE's constitutional claims is declaratory and injunctive relief and, because the Court already afforded PGE declaratory and injunctive relief on its state law claims, PGE's federal constitutional claims must be moot. Second, Grant Township argues that PGE's constitutional claims are moot because PGE has not stated a viable claim for damages.

Article III of the Constitution mandates that "federal courts enforce the case-or-controversy requirement through the several justiciability doctrines that cluster about Article III." Coastal Outdoor Advertising Group, LLC v. Township of Union, New Jersey, 676 F.Supp.2d 337, 344 (D.N.J. 2009) quoting Allen v. Wright, 468 U.S. 737, 750 (1984). These justiciability doctrines "include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." Id. quoting Toll Brothers, Inc. v. Township of Readington, 555 F.3d 131, 137 (3d Cir. 2009).

"Mootness 'ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit. … [A] court will not dismiss a case as moot, even if the nature of the injury changes during the lawsuit, if secondary or collateral injuries survive after resolution of the primary injury." Freedom from Religion Foundation, Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 476 (3d Cir. 2016) (internal citation omitted). "The central question in a mootness analysis is whether changes in circumstances that prevailed at the

13

beginning of the litigation have forestalled any occasion for meaningful relief." Delaware

Riverkeeper Network v. Secretary Pennsylvania Department of Environmental Protection, 833

F.3d 360, 374 (3d Cir. Aug.8, 2016) (internal citation omitted). "A case becomes moot only

when it is impossible for a court to grant any effectual relief whatsoever to the prevailing party."

Decker v. Northwest Environmental Defense Center, ___ U.S. ___, ___, 133 S.Ct. 1326 (2016)

quoting Knox v. Service Employees Int'l, 567 U.S. 298, ___, 132 S.Ct. 2277, 2287 (2012).

So then, as a practical matter, this Court must review the relief requested in PGE's

Amended Complaint to determine if any relief remains available to PGE. See CMR D.N. Corp.

v. City of Philadelphia, 703 F.3d 612, 623 (3d Cir. 2013). In its Amended Complaint, PGE seeks

the following relief on its constitutional claims:

> - A declaration that the Community Bill of Rights Ordinance is unconstitutional under the Supremacy Clause, the First and Fourteenth Amendments, and the Contract Clause of the United States Constitution;
>
> - A declaration that the Community Bill of Rights Ordinance violates PGE's substantive and procedural due process rights;
>
> - An injunction prohibiting Grant Township from enforcing the Community Bill of Rights Ordinance;
>
> - The award of compensatory and consequential damages pursuant to 42 U.S.C. § 1983, including its legal rights taken as a result of the Community Bill of Rights Ordinance.

ECF No. 5, pages 20-22.

In it Amended Complaint, PGE also seeks multiple types of additional relief on its state

law claims. By virtue of this Court's prior ruling invalidating six provisions of the Ordinance on

various state law grounds, PGE has already achieved **some** of the declaratory and injunctive

relief it sought in its Amended Complaint. However, PGE's remaining requests for relief

14

(including the nominal damages[5] available for the alleged infringement of constitutional rights, as well as any compensatory and consequential damages flowing therefrom[6]) remain viable on PGE's federal constitutional claims despite this Court's prior ruling. PGE may therefore pursue the remainder of the relief it seeks on its § 1983 claims. See Freedom from Religion, 832 F.3d at 476 (implying that a request for nominal damages alone suffices to create standing (and avoid mootness) to seek backward-looking relief); County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 168 (3d Cir. 2006) ("[T]he remedies for a successful substantive due process or equal protection claim as to the face of a zoning ordinance are the invalidation of the regulation and actual damages."); Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 535 (3d Cir. 1996) (In an as-applied challenge under the Petition Clause of the First Amendment, court held that "... § 1983 actions, when successful, do more than compensate injured plaintiffs: they serve the important public purpose of exposing and deterring official misconduct, and thereby protecting the rights of the public at large.").

Accordingly, PGE's remaining requests for relief are not automatically moot.[7]

---

[5] If a constitutional violation has not caused actual damages, nominal damages are the appropriate remedy. Memphis Comm. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986); Carey v. Piphus, 435 U.S. 247 (1978). See also Stein v. Bd. Of Ed., 792 F.2d 13 (2d Cir.), cert. denied, 479 U.S. 984 (1986). Moreover, "it is not necessary to allege nominal damages." Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000) quoting Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965). See also Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (actual damages are not an essential element of a § 1983 claim).

[6] See J&B Entertainment v. City of Jackson, Miss., 720 F.Supp.2d 757 (S.D. Miss. 2010) (for discussion of consequential damages).

[7] Moreover, the repeal of the Community Bill of Rights Ordinance does not automatically moot PGE's requests for monetary relief. CMR D.N. Corp. v. City of Philadelphia, 703 F.3d 612, 622 (3d Cir. 2013) ("Claims for damages are retrospective in nature – they compensate for past harm. By definition, then, such claims cannot be moot and a case is saved from mootness if a viable claim for damages exists."); Lighthouse Institute for Evangelism v. City of Long Branch, 510 F.3d 253 (3d Cir. 2007).

15

*Lack of Causal Connection*

Next, Grant Township argues that PGE has failed to establish evidence of a "direct causal link between the Ordinance and the alleged violation of PGE's constitutional rights and its supposed damages." ECF No. 186, ¶ 17.

Municipalities are subject to § 1983 liability only where the municipality itself causes a constitutional violation. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 691 (1978).[8] In addition to demonstrating evidence of an unlawful policy, "[a] plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) citing Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir.1984). The requisite causation is established where a plaintiff demonstrates a "plausible nexus" or "affirmative link" between the municipality's custom and the specific deprivation of constitutional rights at issue. Id. citing Estate of Bailey by Oare v. County of York, 768 F.2d 503, 507 (3d Cir. 1985). However, plaintiffs "need not demonstrate that their injuries were the *direct* result" of the ordinance to satisfy the causation requirement. Id. at 851 (emphasis in original). So long as the "causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury."

---

[8] A plaintiff seeking to advance a Monell claim must: "(1) identify a policy or custom that deprived him of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury." Blasi v. Borough of Pen Argyl, 2015 WL 4486717, at *5 (E.D. Pa. 2015) citing Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). It is clear that a municipality's legislative action constitutes government policy: "No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).

Id. at 851, citing Black v. Stephens, 662 F.2d 181, 190-91 (3d Cir. 1981). See also Watson v. Abington Tp., 478 F.3d 144, 157 (3d Cir. 2007).

In the Amended Complaint, PGE claims that as a direct and proximate cause of Grant Township's enactment of the Community Bill of Rights Ordinance, "PGE will be precluded from operating the Yanity Well for legally permissible storage and injection purposes, along with the seven (7) conventional hydrocarbon wells, and will have to shut in the wells and seek more costly alternatives for managing produced fluids. PGE has suffered and will continue to suffer injury and damages if the Community Bill of Rights Ordinance is deemed valid and enforceable." ECF No. 5, pages 6-7.

Grant Township argues:

> There is no causal link between the Ordinance and the alleged violation of PGE's constitutional rights and its supposed damages. The Ordinance was never enforced against PGE. It was PGE's lack of a state permit and failure to satisfy the conditions of its EPA permit – not the Ordinance – that prevented PGE from using the Yanity Well to deposit fracking waste. … PGE claims that it is entitled to damages for Grant Township's alleged constitutional violations based on the idea that it could have been injecting fracking waste into the Yanity Well from January, 2015 through March 2015. Yet, the undisputed facts show that PGE could not have done so without violating its EPA permit because by March 2015 it had still not satisfied the mechanical integrity test.

ECF No. 186, page 17.

In reply, Plaintiff states that it did not operate the injection well because it did not want to open itself to liability by violating the Community Bill of Rights Ordinance. In support of its position, PGE points to the affidavit of James E. Ashbaugh, P.E.,[9] the Vice President of Engineering for PGE, who testifies that:

---

[9] This Affidavit forms the basis of a motion to strike by Grant Township. ECF No. 193. Because the Ashbaugh Affidavit addresses the argument raised by Grant Township in its opposition brief, this Court finds Grant Township's motion to strike the affidavit unpersuasive. The motion to strike will be denied by separate Order.

¶ 3 Even when it possessed all necessary permits, PGE did not take action to operate the Yanity Well as an injection well because of the presence of Grant Township's Community Bill of Rights Ordinance. Until the Ordinance was successfully challenged, to operate the Yanity Well as an injection well would have resulted in a violation of the Ordinance. PGE did not intentionally violate or ignore the Ordinance. Instead, PGE filed this lawsuit to seek to have the Ordinance invalidated. Under the circumstances of the passage of the Ordinance, PGE believed that seeking court intervention to invalidate the Ordinance was the most appropriate, reasonable and responsible action, rather than to intentionally violate or ignore a government ordinance which had yet to be deemed invalid. PGE sought to have a prompt decision on its request to invalidate the Ordinance, filing two requests for injunctive relief, and has attempted to move this matter expeditiously so that PGE could minimize the harm and damage caused by the Ordinance. Unfortunately, Grant Township's Ordinance did cause PGE significant harm.

¶ 6 – PGE had its DEP and EPA permits from October 22, 2014 until March 12, 2015. Had the Ordinance not been in [sic] enacted, and based on my experience and the actual experience with the Yanity Well in January 2016, PGE would have been able to and would have performed the mechanical integrity test soon after October 22, 2014, would have obtained a prompt and positive result from that test, would have received prompt approval from EPA for that test and would have been in a position to begin to inject material into the Yanity Well by January 2015.

¶ 7 – It was the Ordinance and only the Ordinance that prevented PGE from injecting into the Yanity Well from January 2015 until March 12, 2015. Except for the Ordinance, the mechanical integrity test would have been performed and passed and PGE would have been using the Yanity Well for injection by January 2015. Because of the Ordinance, PGE suffered damage as a result of not being able to use the Yanity Well from January 2015 until March 12, 2015.

ECF No. 189-1.

Ashbaugh's affidavit unequivocally states that PGE did not operate its injection well on

the Yanity Farm because it did not want to intentionally run afoul of the Community Bill of

Rights Ordinance. PGE has, through this affidavit, brought sufficient evidence to show that the

Township's policy, as expressed in the Community Bill of Rights Ordinance, merits a finding of

municipal liability for a violation of constitutional rights. While Ashbaugh avers that PGE had

the necessary state permits to operate the Yanity Well, he conclusively states that the reason PGE

18

did not green-light the use of this well was because it did not want to violate the Community Bill of Rights Ordinance. Further, Ashbaugh testifies that PGE suffered injuries and damages from not being able to operate this well. This connection between the Township's policy and PGE's injuries is far from tenuous. A reasonable jury, based on these averments, could find in favor of PGE with respect to its claims asserted against the Township. For that reason, the Court rejects the Township's argument that in this regard.

## B. The Supremacy Clause Challenge

Plaintiff moves for summary judgment on its claim under the Supremacy Clause. Plaintiff claims that § 5(a) of the Community Bill of Rights Ordinance purports to divest corporations, such as PGE, of virtually all of its constitutional rights. Plaintiff alleges that the Community Bill of Rights Ordinance conflicts with the United States Constitution in that corporations are considered persons for purposes of the First Amendment and Fourteenth Amendments and the Contract Clause. ECF No. 5, ¶¶ 31-35. Plaintiff further alleges that the Community Bill of Rights Ordinance strips corporations of 1) their status as persons under the law; 2) their right to assert state or federal preemptive laws in an attempt to overturn the Community Bill of Rights Ordinance; and 3) their power to assert that Grant Township lacks the authority to adopt the Community Bill of Rights Ordinance. Id. at ¶ 32.

In Armstrong v. Exceptional Child Ctr., Inc., the Supreme Court held that "[T]he Supremacy Clause . . . does not create a cause of action," is not the "source of any federal rights," but instead "instructs courts what to do when state and federal law clash." ___ U.S. ___, ___, 135 S.Ct. 1378, 1383 (2015). The Armstrong Court further explained, "If the Supremacy Clause includes a private right of action, then the Constitution *requires* Congress to permit the

19

enforcement of its laws by private actors, significantly curtailing its ability to guide the implementation of federal law . . . a limitation unheard-of with regard to state legislatures." Id. at ___, 1384. Therefore, since Plaintiff is a private actor, Plaintiff cannot seek to enforce or otherwise bring a cause of action under the Supremacy Clause. See Davis v. Shah, 821 F.3d 231, 246 (2d Cir. 2016) (holding that Armstrong forecloses plaintiff's claim of a private right of action under the Supremacy Clause). See also Alliance v. Alt. Holistic Healing, LLC, 2016 WL 223815, at *2 (D. Colo. 2016) (agreeing that there is no private right of action under the Supremacy Clause and explaining that parties cannot use it as a basis for equitable relief); Tohono O'odham Nation v. Ducey, 130 F.Supp.3d 1301, 1315 (D.Ariz. 2015) (explaining that the Tohono O'odham Indian Nation cannot seek relief under the Supremacy Clause since no private cause of action exists); Mercer County Children's Medical Daycare, LLC v. O'Dowd, 2015 WL 5335590, at * 2 (D.N.J. 2015) ("The Supreme Court's analysis of the Supremacy Clause [in Armstrong] appears standalone, not tied to or in any way affected by its analysis of § 30(A).").

Accordingly, Plaintiff's motion for summary judgment will be denied and the Supremacy Clause claim will be dismissed.


### C. The Equal Protection Challenge

At Count II, PGE's Equal Protection claim under § 1983 is based on assertions that the Ordinance discriminates against corporations because it applies only to corporations and governments, and not to individuals. Plaintiff PGE also alleges that it has been singled out as a "class of one" for disparate treatment by Grant Township. ECF No. 5, at ¶ ¶ 37-46. Plaintiff's

20

brief in support of its motion for summary judgment focuses on the general part of this equal protection claim and not on the "class of one" allegation, so that assertion will not be analyzed.[10]

Grant Township argues that PGE's equal protection challenge fails for two reasons: 1) companies and individuals are not similarly situated, and 2) the Ordinance is rationally related to a legitimate government interest.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) citing Plyler v. Doe, 457 U.S. 202, 216 (1982).[11]

First, the court must examine whether corporations are similarly situated to individuals who are not affected by the Community Bill of Rights Ordinance's prohibitions. If corporations and individuals are "similarly situated," then Grant Township "must justify its different treatment of the two," by demonstrating that the Community Bill of Rights Ordinance is rationally related to a legitimate governmental purpose. County Concrete Corp v. Town of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006). Finally, PGE bears the burden "of negating all conceivable rational justifications for the allegedly discriminatory action or statute." RHJ Medical Center, Inc. v. City of Dubois, 2012 WL 12859837, at *19 (W.D. Pa. Aug.17, 2012) quoting New Direction Treatment Services v. City of Reading, 490 F.3d 293, 302 (3d Cir. 2007).

---

[10] This Court has previously cautioned the parties that it will not act as "an advocate" for either party. See ECF No. 113, page 10. It is not the Court's responsibility to create an argument on Plaintiff's behalf here.

[11] Safeguard Mut. Ins. Co. v. Miller, 472 F.2d 732, 733 (3d Cir. 1973) (corporations "are deemed to be persons within the meaning of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and persons, as well whose rights are protected by 42 U.S.C. § 1983.").

"Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in *all* relevant aspects.' " Castaneira v. Potteiger, 621 Fed. App'x 116, 121 (3d Cir. 2015) quoting Startzell v. City of Phila, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis in original). In the Third Circuit, "a plaintiff need not show that comparators are identical in all relevant aspects but rather that they share pertinent similarities." Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin, 85 F.Supp.3d 803, 810 (M.D.Pa. 2015), aff'd sub nom., 2016 WL 4136894 (3d Cir 2016) citing Borrell v. Bloomsburg Univ., 955 F.Supp.2d 390, 405 (M.D. Pa. 2013).

PGE maintains that individuals and corporations are similarly situated. This Court agrees As support for its argument, PGE points out that the federal regulations on "Underground Injection Control" wells apply equally to and do not discriminate based on corporate or individual status. The regulations apply to "persons" who are defined as "an individual, association, partnership, corporation, municipality, State, Federal or Tribal agency, or an agency or employee thereof." 40 C.F.R. § 144.3.

More generally, there is a large body of case law holding that corporations and individuals are similarly situated with respect to the protections afforded by the United States Constitution. See Monell v. Dep't of Social Services, 436 U.S. 658, 687 (1978) ("[B]y 1871, it was well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis."). See also Metro. Life Ins. Co. v. Ward, 470 U.S. 869, 881 n.9 (1985) ("It is well established that a corporation is a 'person' within the meanings of the Fourteenth Amendment."); Minneapolis & St. Louis Ry. Co. v. Beckwith, 129 U.S. 26, 28 (1889) (applying Due Process Clause of the Fourteenth Amendment) ("Corporations can invoke the benefits of provisions of the Constitution and laws which guaranty to persons the

enjoyment of property, or afford to them the means for its protection, or prohibit legislation affecting it.").

So then, since corporations and individuals are similarly situated here, Grant Township must show that the disparate treatment of individuals and corporations is rationally related to a legitimate governmental purpose. Land use ordinances will generally survive an equal protection challenge "if the law is 'reasonable, not arbitrary' and bears 'a rational relationship to a (permissible) state objective.' " Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 133 (3d Cir. 2002) quoting Village of Belle Terre v. Boraas, 416 U.S. 1, 8 (1974). However, land use regulations still must possess a legitimate interest in promoting public health, safety, morals, and general welfare in order to pass scrutiny. Id. citing Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926). This review is "highly deferential" and "very forgiving." Id. at 134-5. Moreover, a "federal court sitting in judgment of a local municipality's legislative actions owes the municipality a degree of deference in its determination of local needs and preferences." Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 469 (1981). There is a "strong presumption of validity" when examining an ordinance under rational basis review, and the onus is on the party challenging the validity of the legislative action to establish that the statute is unconstitutional. Mon Rail Terminal, Inc. v. Borough of Dunlevy, 2016 WL 7187841, at *7 (W.D.Pa. Dec.12, 2016) quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 314-15 (1993). "Local legislative actions enjoy a 'presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality.'" Deraffelle v. City of Williamsport, 2015 WL 5781409, at *15 (M.D. Pa. 2015) citing Hodel v. Indiana, 452 U.S. 314, 331-32 (1981).

As the basis for its disparate treatment of individuals and corporations, Grant Township advances three arguments to support its legitimate governmental purpose. First, only

23

corporations and companies have historically applied for EPA permits. As a corollary, the Township also claims that injection is a dangerous activity and no individual would ever undertake it. Third, Grant Township cites to the Ordinance itself as evidence of the Township's purpose.

Grant Township maintains that it "was a near-certainty that only corporations … would potentially engage in the depositing of fracking waste," pointing out that only companies and corporations have historically applied for EPA permits to operate injection wells in Pennsylvania. As evidence in support of this assertion, Grant Township points to a document entitled "EPA's Underground Injection Well Control Program Overview." ECF No. 186, page 21; ECF No. 185-1. In an affidavit by Grant Township's counsel, reference is made to the document as "EPA's Underground Injection Control Program Overview, Solid Waste Advisory Committee Meeting." ECF No. 185-1, page 8 ¶ 8. The discrepancy in the title of this document aside, the document appears to be a Power Point presentation by **Pennsylvania DEP's** Oil and Gas Management division that purports to provide an overview of the **U.S. E.P.A.'s** UIC program. Despite its citation by counsel, the document provides no clarity regarding corporate versus individual applications for permits in Pennsylvania. Such statistics could and should have been discovered and presented to the Court to support this contention on summary judgment. Unclear, or vague assumptions from a Power Point presentation do not qualify as evidence. This defense, therefore, fails for lack of evidentiary support.

Next, Grant Township states "it is hard to fathom an instance where an individual, without being shielded from liability by the corporate form, would ever engage in such a dangerous activity." ECF No. 186, page 22. Unlike its previous argument, Grant Township does not even attempt to provide support for this contention. The Township's uncorroborated

24

supposition requires no further legal analysis because "unsubstantiated arguments made in briefs are not considered evidence of asserted facts." Hill v. Samuels, 2016 WL 1126499, at \*2 (M.D. Pa. 2016) quoting Versage, 984 F.2d at 1370.

Lastly, Grant Township calls the Court's attention to the text of the Ordinance itself as evidence of its legitimate government purpose. ECF No. 186, pages 22-23 n.7. Grant Township claims that the people of the Township have identified a "multitude of reasons" for the adoption of the Community Bill of Rights Ordinance:

> - The Preamble reads that "this community finds that the depositing of waste from oil and gas extraction is economically and environmentally unsustainable, in that it damages property values and the natural environment, and places the health of residents at risk."
>
> - The Ordinance states that the depositing of oil and gas waste threatened the residents' rights to clean air, water, and soil, threatened residents' 'rural quality of life,' and threatened the ability of ecosystems within the Township to 'exist, flourish, and naturally evolve.'

See ECF No. 5-1.

While the goals of the Ordinance are legitimate, there is no evidence of a rational relationship between the disparate treatment of corporations and the stated goals of the Ordinance. If these goals can only be achieved through the elimination of fracking, it makes no constitutional sense to allow the same activity by individuals.

Accordingly, the motion for summary judgment will be granted on this claim.

## D. The Petition Clause Challenge

At Count III, Plaintiff alleges that the Ordinance suppressed PGE's right to make a complaint to, or seek the assistance of, the government for the redress of grievances in violation of PGE's First Amendment right to do so. ECF No. 5, ¶¶ 48-51. This claim specifically

challenges § 5(a) and § 7 of the Community Bill of Rights Ordinance.[12] The Community Bill of

Rights Ordinance's § 5(a) provides: that corporations that violate or seek to violate the

Community Bill of Rights Ordinance "shall not be deemed to be 'persons,' nor possess any other

legal rights, privileges, powers, or protections which would interfere with the rights or

prohibitions enumerated by this Ordinance. 'Rights, privileges, powers, or protections, shall

include the power to assert state or federal preemptive laws in an attempt to overturn this

Ordinance, and the power to assert that the people of the municipality lack the authority to adopt

this Ordinance." ECF No. 5-1. Meanwhile, § 7 provides that "use of the courts … in attempts to

overturn the provisions of the Ordinance shall require community meetings focused on changes

to local governance that would secure the right of the people to local self-government." Id.

In its motion for summary judgment, PGE argues:

> The Ordinance was designed to and does divest corporations, such as PGE, of
> their constitutional right to petition the government for redress of grievances in
> that it strips corporations of: (1) their status as 'persons' under the law; (2) their
> right to assert state or federal preemptive laws in an attempt to overturn the
> Ordinance; and (3) their power to assert that Grant Township lacks the authority
> to adopt the Ordinance. (SOF ¶ 19). As such, the Ordinance is aimed at
> suppressing PGE's fundamental right to lodge a complaint, or seek the assistance
> of the Court, for the redress of its grievances related to the Ordinance.

ECF No. 155, pages 13-14.

In opposition, Grant Township states that "the Ordinance did not prevent PGE from using

this Court to nullify parts of the Ordinance, or from aggressively litigating this case" as

evidenced by PGE's initiation and prosecution of the instant action. ECF No. 186, page 24.

Grant Township's argument misses the mark. While the Ordinance did not actually prevent PGE

---

[12] This Court has previously held that § 5(a) of the Community Bill of Rights Ordinance is
preempted by the Limited Liability Companies Law and the Second Class Township Code. ECF
No. 113.

from filing the instant action, the Ordinance attempted to do so. It is that attempt that runs afoul of the Constitution.

The First Amendment protects "the right of the people ... to petition the Government for a redress of grievances." Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 382 (2011). The threshold question in a right-to-petition case ... is ... whether the plaintiff's conduct deserves constitutional protection." EJS Properties, LLC v. City of Toledo, 698 F.3d 845, 863 (6th Cir. 2012) quoting Holzemer v. City of Memphis, 621 F.3d 512, 520 (6th Cir. 2010). The petition clause protects a citizen's right of access to governmental mechanisms for the redress of grievances, including the right of access to the courts for that purpose. See Bieregu v. Reno, 59 F.3d 1445, 1453 (3d Cir. 1995); Citizens United v. Federal Election Comm'n, 558 U.S. 310, 342 (2010) ("... First Amendment protection extends to corporations.").

By limiting access to courts only through approved "community meetings," the Community Bill of Rights Ordinance shuts the courthouse door to litigants, which it cannot constitutionally do. Therefore, as a matter of law, § § 5(a) and 7 of the Community Bill of Rights Ordinance violate the Petition Clause of the First Amendment. Summary judgment will be granted in favor of PGE.

## E. The Substantive Due Process Challenge

The Due Process Clause of the Fourteenth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. 14 § 1. Although the face of the provision speaks only to the adequacy of procedures, the Supreme Court has held that the Due Process Clause contains a substantive, as well as a

27

procedural, component. <u>Nicholas v. Pennsylvania State University</u>, 227 F.3d 133, 138-39 (3d Cir. 2000) <u>citing</u> <u>Planned Parenthood of S.E. Pennsylvania v. Casey</u>, 505 U.S. 833, 846-47 (1992).

Substantive due process review is no straightforward matter. As the Third Circuit explained in <u>Nicholas</u>, substantive due process "is an area of law 'famous for controversy, and not known for its simplicity.'" <u>Id</u>. at 139, <u>quoting</u> <u>DeBlasio v. Zoning Bd. Of Adjustment</u>, 53 F.3d 592, 598 (3d Cir. 1995). Although courts have attempted to define a "test," a bright line review has not been possible because of the very different nature of the underlying facts and rights involved in each case. "Each new claim to [substantive due process] protection must be considered against a background of constitutional purposes, as they have been rationally perceived and historically developed." <u>Id</u>. at 140, <u>quoting</u> <u>Regents of Univ. of Michigan v. Ewing</u>, 474 U.S. 214, 229 *1985) (Powell, J., concurring).

The <u>Nicholas</u> Court identified two separate threads woven into the "fabric of substantive due process" and then attempted to "untwist this tangled skein." <u>Id</u>. at 139. The first thread of substantive due process arises when a plaintiff challenges the validity of a legislative act, while the second thread arises out of non-legislative action. <u>Id</u>. The legislative/non-legislative "distinction is significant because it determines the appropriate standard of review for substantive due process challenges." <u>RHJ Medical Center, Inc. v. City of DuBois</u>, 754 F.Supp.2d 723, 767 (W.D. Pa. 2010). Each separate thread requires a separate analysis, although many courts and parties conflate the two and their corresponding levels of review. Careful attention must be paid.

Here, the challenged Ordinance is a legislative act. <u>Id</u>. <u>See also</u> <u>County Concrete Corp.</u>, 442 F.3d at 169. So then, the Ordinance is properly analyzed under the first thread of substantive

due process. In this first thread, a plaintiff does not need to establish a "protected property interest to which the Fourteenth Amendment's due process protection applies' as this standard only applies in a 'non-legislative substantive due process claim.' " RHJ Medical Center, 754 F.Supp.2d at 768-69, citing Nicholas, 227 F.3d at 139–40 and County Concrete Corp, 442 F.3d at 169. ("For Plaintiff's facial substantive due process challenge to the Ordinance to be successful, [it] must 'allege facts that would support a finding of arbitrary or irrational legislative action …'").

PGE suggests that a strict scrutiny test is appropriate by reason of the fundamental interests affected by the Ordinance; however, the Third Circuit has reserved a stricter review for non-legislative, or executive, action and the "shocks the conscience" review for as-applied legislation, not facial attacks. County Concrete Corp., 442 F.3 at 169. Instead, when reviewing **legislative** acts on their **face**, the courts have looked for arbitrary or irrational legislation that impermissibly goes beyond serving a legitimate state interest. Id. at 169-70.

Even under this "lesser" standard, the Community Bill of Rights Ordinance fails to survive a substantive due process review. The language of the Ordinance itself runs afoul of constitutional protections afforded corporations such as PGE and attempts to immunize Grant Township from clashes with current federal and state law:

> - "Whereas, private corporations engaged in depositing waste from oil and gas extraction [such as PGE] are wrongly recognized by federal and state governments as having more 'rights' than the people who live in our community, and thus, recognition of corporate 'rights' is a denial of the rights of the people of Grant Township." [Ordinance Preamble].
>
> - "Corporations that violate this Ordinance, or that seek to violate this Ordinance, shall not be deemed to be 'persons,' nor possess any other legal rights, privileges, powers or protections which would interfere with the rights or prohibitions enumerated by this Ordinance. 'Rights, privileges, powers, or protections' shall include the power to assert state or federal preemptive laws in an attempt to overturn this Ordinance, and the power to assert that the

29

people of the municipality lack the authority to adopt this Ordinance. "
[Ordinance, at § 5(a)].

- "No permit, license, privilege, charter, or other authority issued by any state or
  federal entity which would violate the prohibitions of this Ordinance or any
  rights secured by this Ordinance…shall be deemed valid within Grant
  Township." [Ordinance, at § 3(b)].

- "All laws adopted by the legislature of the State of Pennsylvania, and rules
  adopted by any State agency, shall be the law of Grant Township only to the
  extent that the [sic] do not violate the rights or prohibitions of this Ordinance."
  [Ordinance, at § 5(b)].

- "All rights delineated and secured by this Ordinance are inherent,
  fundamental, and unalienable, and shall be self-executing and enforceable
  against both private and public actors. The rights secured by this Ordinance
  shall only be enforceable against actions specifically prohibited by this
  Ordinance." [Ordinance, at § 2(g)].

- "Any corporation or government that violated any provision of this Ordinance
  shall be guilty of an offense and, upon conviction thereof, shall be sentenced
  to pay the maximum fine allowable under State law for that violation."
  [Ordinance, at § 4(a)].

- "Use of the courts or the Pennsylvania legislature in attempts to overturn the
  provisions of this Ordinance shall require community meetings focused on
  changes to local governance that would secure the right of the people to local
  self-government." [Ordinance, at § 7].

ECF No. 5-1.

In addition to the words of the Ordinance, PGE points to other statements of Grant

Township or its representatives in the record that reinforce the text of the Ordinance and explain

the Township's effort to elevate "inalienable" rights over those provided by federal and state

constitutions and law:

- "Community lawmaking as the legitimate exercise of self-government by
  people **where they live** has generated mostly critical, occasionally derisive
  treatment from legislators, jurists, and commentators since the time of the
  founding. Consistent with this attitude, American jurisprudence has developed
  legal doctrines to infringe the right of local, community self-government, both
  by denying it outright, and by severely restricting local governmental power

30

allowed for communities by state law. Such doctrines include corporate constitutional 'rights,' Dillon's Rule, and preemption." Grant Township's Brief in Support of its Motion For Summary Judgment, ECF No. 53, p. 30 (emphasis original).

- In "the past 150 years, the judiciary has 'found' corporations within the U.S. Constitution and bestowed constitutional rights upon them." ECF No. 53, p. 33. "By enacting the Community Bill of Rights Ordinance, the people of Grant Township decided that the existing municipal system of law – constrained by precisely the same legal doctrines asserted against the Township by PGE in this action – was failing to provide the most basic constitutional guarantees of American governments." ECF No. 53, pp. 44-45.

- "A Community Bill of Rights takes nothing for granted except the supremacy of inalienable rights over other laws, and the necessity for challenging legal obstacles to the real-time enjoyment of those rights…Each CBOR calls for constitutional change at the state and national level that will recognize and enforce the right to community local self-government, free from state preemption and corporate interference when local laws are enacted to protect community rights." Exhibit to Plaintiff's Statement of Facts, ECF No. 156-1, Exhibit E.

These record facts, among others, demonstrate irrational and arbitrary behavior, which acknowledges language contrary to existing law and takes the purpose outside of the original point of the Ordinance.

In response, Grant Township makes three arguments: 1) that because the Township had legitimate reasons to pass the Ordinance, PGE cannot show arbitrariness and irrationality; 2) the Ordinance did not deprive PGE of a protected property interest because it had no such interest in using the Yanity Well to inject fracking waste; and 3) even assuming that PGE had a protected property interest, the Ordinance was never applied to it to deprive it of that interest. ECF No. 186, pages 25-27. Each of these arguments fails based on the analysis above.

First, that Grant Township had legitimate reasons to pass **an** ordinance is beside the point. The substantive due process review tests the arbitrariness and irrationality of the result and the efforts of the Ordinance beyond any alleged legitimate reason. Here, a starting point of

31

seeking a clean environment spun out of control into an Ordinance that does much more, including stripping corporations of their federal constitutional rights.

Second, the text of the permit itself[13], which states that it does not convey property rights, does not support an argument that PGE did not have a right to inject waste in the Yanity Well. One point does not follow the other. More importantly, it is not a necessary point in a successful substantive due process claim.

Finally, Grant Township's argument that the Community Bill of Rights Ordinance did not actually deprive PGE of any property interest because the Ordinance was never applied to it simply misses the facial versus as-applied attack on the Ordinance. It is the former that is brought by PGE.

Accordingly, PGE's motion for summary judgment will be granted on this claim.


### F. The Procedural Due Process Challenge

At Count V, Plaintiff alleges that the Ordinance's prohibition of underground injection and storage of oil and gas materials "significantly and materially devalues PGE's legal rights and interests related to and/or held within Grant Township, including PGE's UIC permit" without any due process in violation of the procedural due process clause of the Fourteenth Amendment under § 1983. ECF No. 5, ¶¶ 58-62.

In order to trigger the protections of the procedural aspects of the Due Process Clause, a plaintiff must demonstrate a property or liberty interest. Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). See also Mathews v. Eldridge, 425 U.S. 319 (1976); Mudric v.

---

[13] See ECF No. 170-2.

Attorney Gen. of U.S., 469 F.3d 94, 98 (3d Cir. 2006) ("It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie.").[14]

The Fourteenth Amendment's "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972). For purposes of procedural due process, property interests are "… not created by the Constitution." Id. at 577. Instead, these property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." Id.

In support of its motion for summary judgment, PGE argues that it has a property interest in: 1) its Underground Injection Control ("UIC") permit[15] and 2) its leases with landowners in Grant Township. As a property interest is an element of its procedural due process claim, it is PGE's burden to produce evidence of that requisite property interest. PGE has not produced either the UIC permit or any leases with landowners within Grant Township in support of its motion for summary judgment. However, the EPA permit for the Yanity Well has been produced by Grant Township as part of the record and therefore, this will be considered by this Court. See

---

[14] Once a protected interest has been identified, a court must examine the process that accompanies the deprivation of that protected interest and decide whether the procedural due process safeguards built into the process, if any, are constitutionally adequate. Zinermon v. Burch, 494 U.S. 113, 126 (1990).

[15] In its reply brief, PGE clarifies that this reference is to the EPA permit, and not the permit issued by the Pennsylvania Department of Environmental Protection. See ECF No. 189, page 22.

Fed.R.Civ.P. 56(c)(3) ("[T]he court need consider only the cited materials but it may consider other materials in the record.").

### *The UIC Permit*

The UIC permit is issued by the U.S. Environmental Protection Agency and serves as an "Authorization to Operate Class II-D Injection Wells" in compliance with the provisions of the Safe Drinking Water Act and its corresponding regulations. ECF No. 170-2. The federal regulations indicate that neither the permit itself or the issuance of the permit "convey any property rights of any sort, or any exclusive privilege." 40 C.F.R. § 144.51(g); 40 C.F.R. § 144.35(b).

PGE points to nothing in the permit itself or the law regulating such permits that automatically creates a legitimate claim of entitlement sufficient to demonstrate a property interest. The face of the permit itself spells out that it "does not convey property rights or mineral rights of any sort or any exclusive privilege." ECF No. 170-2. Because PGE has not satisfied its burden to prove the required property interest, the motion for summary judgment will be denied.

### G. The Contract Clause Challenge

At Count VI, Plaintiff alleges that the Ordinance violates the Contract Clause pursuant to § 1983 based upon PGE's being unable to realize the benefits of the preexisting contracts (leases) it obtained with the owners of the subsurface estates at great cost to PGE. ECF No. 5, ¶¶ 64-67.

Article I, section 10 of the United States Constitution provides, in relevant part: "No State shall pass any ... Law impairing the Obligation of Contracts." U.S. CONST. ART. I, § 10. "The purpose of the Contract Clause is to protect the legitimate expectations that arise from ...

contractual relationships from unreasonable legislative interference." <u>Transport Workers Union of America, Local 290 By and Through Fabio v. Southeastern Pa. Transp. Auth.</u>, 145 F.3d 619, 622 (3d Cir. 1998). Accordingly, "[i]n order to come within the provision of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired but it must have been impaired by a law of the State. The prohibition is aimed at the legislative power of the state…" <u>New Orleans Waterworks Co. v. La. Sugar Ref. Co.</u>, 125 U.S. 18, 30 (1888). "Acts of state legislation include … ordinances of municipal corporations that constitute 'an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality.'" <u>Price v. Pa. Prop & Cas. Ins. Co. Ass'n</u>, 158 F.Supp.2d 547, 551 (E.D. Pa. 2001) quoting <u>New Orleans Waterworks</u>, 125 U.S. at 30-31.

To prove a violation of the Contract Clause of Article I of the U.S. Constitution, a plaintiff must demonstrate that a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" <u>Transport Workers Union.</u>, 145 F.3d at 621, quoting <u>Allied Structural Steel Co. v. Spannaus</u>, 438 U.S. 234, 244 (1978). The court must first engage in three threshold inquiries to establish a violation: "(1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." <u>Id</u>.

Summary judgment will be denied on this claim as PGE has provided no evidence of any contractual relationship. <u>See</u> <u>Keystone Bituminous Coal Ass'n v. DeBenedictis</u>, 480 U.S. 470, 504 (1987) ("In assessing the validity of petitioners' Contract Clause claim in this case, we begin by identifying the precise contractual right that has been impaired and the nature of the statutory

impairment."). Without providing the contract that bases its claim, an appropriate review is impossible.

An appropriate order will be entered.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge