UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C., <br><br> Plaintiff, <br><br> PENNSYLVANIA INDEPENDENT OIL AND GAS ASSOCIATION, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> GRANT TOWNSHIP, <br><br> Defendant. | Civ. No.: 1:14-cv-209 <br> Magistrate Judge <br> Susan Paradise Baxter <br><br> DECLARATION OF <br> JULES LOBEL, ESQ. <br> IN OPPOSITION TO <br> PGE'S RENEWED AND <br> SUPPLEMENTAL MOTION <br> FOR SANCTIONS <br><br> *Electronically Filed* |

## DECLARATION OF PROFESSOR JULES LOBEL, ESQ. IN OPPOSITION TO PGE'S RENEWED AND SUPPLEMENTAL MOTION FOR SANCTIONS

I, Jules Lobel, being an adult over the age of 21 years, and competent to make this unsworn Declaration, do hereby make the statements below, which are true and correct to the best of my knowledge and belief, subject to the penalties for unsworn declarations pursuant to Pennsylvania law:

1. My name is Jules Lobel, and I am a Professor of Law and the Bessie McKee Walthour Endowed Chair at the University of Pittsburgh School of Law.

2. I have taught as a Professor at the University of Pittsburgh School of Law from 1983 to the present.

1

3. I have served as the President of the Center for Constitutional Rights (CCR), a national human and constitutional rights organization headquartered in New York City, from 2011 to 2016.

4. I am the recipient of the University of Pittsburgh Chancellor's Distinguished Public Service Award (2002), and the Chancellor's Distinguished Teaching Award (1993); and in 2006, I received the Allegheny County Bar Foundation's Career Achievement Award for *Pro Bono* Service.

5. In 2001, I was named by the School of Law as a Distinguished Faculty Scholar.

6. I have authored numerous articles on international and constitutional law in publications including the Yale Law Journal, the Harvard International Law Journal, Cornell Law Review, the University of Pittsburgh Law Review, and the Virginia Law Review.

7. I have served on the Board of Advisors for the Community Environmental Legal Defense Fund ("CELDF") for the past ten years.

8. In 2004, I authored a law review article which was published in the UCLA Law Review, entitled "Courts as Forums for Protest," which included an examination of the application of Rule 11 sanctions to lawyers advancing creative legal arguments on behalf of movements of people in the United States. That article can be found at 52 UCLA L.Rev. 477 (2004).

9. I am familiar with the case in which the Pennsylvania General Energy company has sued Grant Township to overturn Grant's laws banning frack wastewater injection wells, and for damages against Grant Township. The case is known as *PGE v. Grant*

*Township*, Civ. No. 1:14-cv-209, and is currently before Magistrate Judge Susan Paradise Baxter.

10. I have reviewed the relevant filings in the case, including Grant Township's counterclaim against the company, the Township's motion for judgment on the pleadings and supporting brief, and the renewed and supplemental motion for sanctions filed by PGE against the Township, CELDF, and the Township's individual attorneys.

11. I am filing this Declaration because sanctioning the legal arguments that are the subject of PGE's renewed motion for sanctions would have repercussions on the advancement of creative and novel legal strategies on behalf of people and their municipal communities.

12. I am familiar with the argument advanced by Grant Township through its counsel, the Community Environmental Legal Defense Fund, that the people of Grant Township possess a federal and state constitutionally-protected right of local, community self-government.

13. I am familiar with the argument advanced by Grant Township that the constitutional right of local, community self-government is a fundamental right that has a historical basis, and which is recognized, secured, and rooted in the most fundamental documents of the United States.

14. I am familiar with the argument advanced by Grant Township that the constitutional right of local, community self-government requires other legal doctrines to give way to that right; specifically, that corporate "rights" cannot violate that right; that the doctrine of municipal subordination to the state cannot violate that right; and that the

doctrine of preemption (when used to establish a ceiling above which municipalities cannot legislate) cannot be used to violate that right.

15. I am familiar with the argument advanced by Grant Township that the governmental doctrines asserted by PGE in its lawsuit in this case constitute "state action"; and that alternatively, because PGE is chartered by the state and is bestowed certain power and authority by the state, that PGE could be considered a "state actor" by this court.

16. I am familiar with Grant Township's arguments that many jurists have questioned the jurisprudence that holds that business entities possess certain constitutional "rights" normally reserved for the people of this nation.

17. I am familiar with Grant Township's counterclaim that asserts that the action by PGE meets all of the components of liability pursuant to 42 U.S.C. §1983, and the counterclaim that PGE should be liable to Grant for damages for violation of the Township's right of local, community self-government.

18. Based on my extensive study and scholarly work in the area of constitutional law, I believe that all of Grant Township's arguments that have been asserted in this case related to the right of local, community self-government are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law," and therefore, that they satisfy the standard established by Rule 11(b)(2).

19. Specifically, I believe that Grant's argument that people possess a constitutional right of local, community self-government, and that, in this case, that right affords the protective legal authority to recognize new civil rights for people of the Township and to block PGE's proposed frack wastewater injection well, constitutes a good faith

argument for extending, modifying, or reversing existing law, and for establishing new law. *See, e.g., Commonwealth v. McElwee*, 327 Pa. 148, 193 A.628 (Pa. 1937).

20. Specifically, I believe that Grant's argument – that the constitutional right of local, community self-government is embedded into the fundamental liberty interests of the U.S. Constitution – has historical precedent, both in the events of this nation's history as well as in its jurisprudence – and therefore, constitutes a good faith argument for the extension, modification, or reversal of existing law.

21. Specifically, I believe that Grant's argument that business entities are incapable of possessing certain constitutional "rights" and that certain business entities should be deemed to be "state actors" when they act to enforce certain state and federal doctrines, to be a good faith argument for the extension, modification, or reversal of existing law, and for establishing new law.

22. In accord with Grant, I've reached that conclusion because business entities are chartered by the state itself, and both the state and federal governments – through the courts, mostly – have bestowed certain constitutional rights and protections on those entities, that it is difficult to see how the exercise of those rights can be seen as separate and apart from the bestowal of those rights.

23. Specifically, I also believe that Grant's argument - that preemption and plenary municipal subordination to the state violate the right of local, community self-government - is a non-frivolous legal argument, in that if a constitutional right of local, community self-government exists, that those doctrines must give way to the right.

5

24. I also believe that the use of sanctions in cases such as this – in which sanctions are sought to punish the advancement of creative legal theories – serves to "chill" the willingness of attorneys who seek to change unjust and illegitimate existing law.

25. I understand that this Court has ruled against Grant Township on its counterclaim, its motion for judgment on the pleadings, and its motion for summary judgment. Regardless, I believe that the assertion of these arguments by Grant's counsel is reasonable and in good faith, and within the realm of remedies which a relevant court could reasonably entertain, consider, and grant.

26. Throughout American history, numerous groups and lawyers have sought to change existing law, often making arguments that were contrary to existing law and appeared to have no chance of succeeding in the courts. For example, anti-slavery litigators such as Salmon Chase challenged slavery and fugitive slave laws in the courts, with, particularly at the beginning, virtually no hope for success. Chase lost one of his more prominent cases in both the lower court and the Supreme Court 9-0, but eventually his arguments got traction among both the public and the state courts, and he later became Chief Justice of the U.S. Supreme Court. Jones v. Van Zandt 46 U.S. 215 (1947) See generally, discussion of Chase's litigation and career, Lobel supra, 52 U.C.L.A. L Rev. at 494-502

27. So too, in our era, there are many examples of cases and causes which begin in opposition to existing law and are at first viewed as hopeless or frivolous, but eventually become the law. For example, the NRA's multi-decade campaign to read the Second Amendment as protecting an individual right to bear arms, was for some time dismissed as legally frivolous, with then retired Chief Justice Warren Burger

6

stating in 1990 that the argument was "one of the greatest pieces of fraud – I repeat the word "fraud" on the American public by special interest groups that I have ever seen in my lifetime." Warren Burger, "The Right to Bear Arms", Parade Magazine, January 14,1990. When gun advocates challenged a municipal ordinance banning handguns in a Chicago suburb in the 1980s, the Seventh Circuit relied on Supreme Court precedent to rule that the Second Amendment had no applicability to state or local governments, and "extends only to those arms which are necessary to maintain a well regulated militia." The Supreme Court denied review. Quilici v. Village of Morton Grove, 695 F. 2d 261,270 (7th Cir. 1982). However, based on the NRA's persistent campaign, the Supreme Court in 2008 ruled that the Second Amendment protects an individual's right to bear arms. District of Columbia v. Heller 554 U.S. 570 (2008)

28. So too, the campaign for marriage equality for homosexuals was for many years viewed as hopeless and summarily rejected by the courts. Nonetheless gay and lesbian couples filed what were viewed as quixotic lawsuits years ago claiming a right to marry. In one such lawsuit, the Minnesota Supreme Court unanimously rejected the couple's claim, with no justice asking the lawyer representing the couple a single question. When the couple sought review in the Supreme Court, the Court responded with a one sentence dismissal stating that their appeal presented no serious legal question. Baker v. Nelson, 291 Minn. 310 (1971), appeal dismissed, 409 U.S. 810 (1972). More than 40 years later, the Supreme Court determined that not only did the question of whether homosexuals had a right to marry present a serious legal

question, but that such a right existed under the U.S. Constitution Obergefell v. Hodges 135 S. Ct 2584 (2015)

29. I have been personally involved in cases which appeared hopeless and against all existing precedent when filed. When the Center for Constitutional Rights decided to challenge the Bush Administration's detention of alleged terrorists at Guantanamo Bay without any due process whatsoever, we did so in the face of what was contrary Supreme Court precedent. As Michael Ratner, then President of the Center, stated when asked if he thought the case had any chance of success in the courts, "None whatsoever." David Cole, Engines of Liberty: The Power of Citizen Activists to Make Constitutional Law 3 (2016). While the District Court and Court of Appeals unanimously rejected our arguments as contrary to precedent, the Supreme Court reversed, recognizing that the detainees had a right to habeas corpus review. Rasul v. Bush 215 F. Supp. 2d 55 (D. D.C. 2002), aff'd Al Odah v. United States, 321 F. 3d 1134 (D.C. Cir 2003) rev'd Rasul v. Bush 542 U.S. 466 (2004)

30. The 1993 Amendment to Rule 11 recognized the value of litigation to bring novel claims and sought to blunt the criticism that the threat of sanctions had discouraged novel litigation. The Advisory Committee on Civil Rules made clear the broad latitude to be given novel legal claims, stating that courts should consider whether the litigant "has support for its theories even in minority legal opinions, law review articles, or through consultation with other attorneys." Fed. R. Civ. Proc 11, Advisory Committee Notes, reprinted in 146 F.R.D. 583, 586-87 (1992). The Defendant's position in the current case clearly meets the Rule 11 standard for asserting in good faith, a non-frivolous argument for the extension, modification of existing law.

Sanctions are inappropriate for such public interest arguments seeking to reform existing law.

I sign this Declaration subject to the penalties for unsworn verifications pursuant to Pennsylvania law.

_____
Professor Jules Lobel, Esq.
University of Pittsburgh School of Law
Barco Law Building, Room #505
3900 Forbes Avenue
Pittsburgh, Pennsylvania 15260
(412) 648-1375