| | | |
|---|---|---|
| **PENNSYLVANIA GENERAL ENERGY** | : | |
| **COMPANY, LLC,** | : | |
| Plaintiff | : | **C.A. No. 14-209ERIE** |
| | : | |
| **vs.** | : | **Magistrate Judge Baxter** |
| | : | |
| **GRANT TOWNSHIP,** | : | |
| Defendant. | : | |

## OPINION AND ORDER

Magistrate Judge Susan Paradise Baxter[1]

Pending before the Court are: (1) the renewed motion for sanctions filed on behalf of Plaintiff Pennsylvania General Energy Company, LLC ("PGE") (ECF No. 249); (2) Defendant Grant Township's motion to strike PGE's motion for sanctions (ECF No. 253); (3) Little Mahoning Watershed and East Run Hellbenders Society, Inc.'s motion to strike PGE's motion for sanctions as untimely (ECF No. 256); and (4) Grant Township's counter-motion for sanctions (ECF No. 264).

For the reasons that follow, the Court grants in part PGE's motion for sanctions, and attorneys' fees and costs will be assessed against Attorneys Linzey and Dunne of the Community Environmental Legal Defense Fund ("CELDF") ONLY, and not, either directly or indirectly, against Defendant Grant Township. In addition, Attorney Linzey will be referred to the Disciplinary Board of the Supreme Court of Pennsylvania for such further proceedings as the Board may deem appropriate. Attorney Schromen-Wawrin's motion to strike, filed on counsel's

---

[1] This civil action was originally assigned to District Judge Frederick J. Motz and then assigned to District Judge Arthur J. Schwab for settlement purposes. Thereafter, in accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

behalf via proposed intervenors Little Mahoning Watershed and East Run Hellbenders, reluctantly is granted. The remaining motions are denied.

I.      **Background and Relevant Procedural History[2]**

PGE is a private corporation in the business of exploration and development of oil and gas. PGE currently owns and operates natural gas wells in Grant Township, Pennsylvania. PGE's exploration and development activities include drilling and operating gas wells and managing brine and other produced fluids from operating wells.

In 1997, PGE's predecessor in interest put into production a deep gas well in Grant Township on property known as the Yanity Farm. PGE intends to use the Yanity Well to inject produced fluids from its other oil and gas operations. Based on its intention to convert the use of the Yanity Well to an injection well for disposal of produced fluids generated at other PGE oil and gas wells, PGE proceeded to obtain regulatory approval for such use.

On March 19, 2014, PGE received an initial permit from the United States Environmental Protection Agency to convert the Yanity Well into an injection well, and on September 11, 2014, the EPA issued a final permit in this regard.

On June 3, 2014, with the assistance and direction of Community Environmental Legal Defense Fund ("CELDF"), Grant Township adopted the Community Bill of Rights Ordinance (the "CBR" or "Ordinance"). The CBR expressly prohibits any corporation from "engag[ing] in the depositing of waste from oil and gas extraction" and invalidates any "permit, license, privilege, charter, or other authority issued by any state or federal entity which would violate

---

[2] For purposes of the resolution of the pending motions, certain undisputed facts gleaned from the litigation of this matter and set forth in this Court's Opinion resolving cross-motions for summary judgment shall be reiterated herein. *See*, *Pennsylvania General Energy Company, LLC v. Grant Township*, 2017 WL 1215444 (W.D. Pa. Mar. 31, 2017).

[this prohibition] or any rights secured by [the Ordinance], the Pennsylvania Constitution, the United States Constitution, or other laws."

PGE filed this action challenging the constitutionality, validity, and enforceability of the CBR. Through this action, PGE seeks relief pursuant to 42 U.S.C. § 1983 against the Township on the grounds that the Ordinance stripped Plaintiff of its federal constitutional rights, and otherwise is in direct conflict with a number of Pennsylvania statutes and therefore is preempted. ECF No. 5.

Attorney Linzey, on behalf of Grant Township, filed an Answer and Counterclaim invoking 42 U.S.C. § 1983 and § 1988 against PGE, claiming, *inter alia*, that by bringing this lawsuit challenging the Ordinance, PGE, "acting under color of state law" sought to violate the right of the people of Grant Township to "local community self-government" as secured by the Pennsylvania Constitution, the federal constitutional framework, and the CBR itself. ECF No. 10. Grant Township's counterclaim sought various remedies comprised, in part, of both a declaration that the CBR is a valid exercise of the right to self-government; a declaration that PGE, by virtue of its corporate status, is not a "person" under the law; and an injunction preventing PGE from violating the Ordinance.

Thereafter, community group East Run Hellbenders Society Inc. ("Hellbenders"), also represented by Attorney Schromen-Wawrin, also of CELDF, filed a motion to intervene in this action as of right or permissively. Attorney Schromen-Wawrin identified the Little Mahoning Watershed ("Ecosystem") as an additional Proposed Intervenor. ECF No. 37. This Court denied intervention[3], and the Third Circuit affirmed. In affirming, the Circuit acknowledged serious and

---

[3] Pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, the Court also granted a motion to intervene filed by Pennsylvania Independent Oil & Gas Association ("PIOGA"), a Pennsylvania nonprofit trade association representing individuals and corporations involved in the oil and gas industry. Intervention was requested to permit PIOGA to challenge the Defendant's Ordinance on behalf of at least five member oil and gas well operators in Grant

substantive concerns at the attempted intervention of an ecosystem as a proper party to federal litigation under the plain language of the Federal Rules of Civil Procedure. The Third Circuit further concluded that counsel for Grant Township adequately represented the interests asserted by the community group, at least in part given legal representation by the same environmental law organization. *Pennsylvania General Energy Company, LLC v. Grant Township*, 658 F. App'x 37, 41 (3d Cir. 2016).

Cross-motions for judgment on the pleadings were resolved as to certain of the parties' claims, with this Court granting in part PGE's motion and declaring invalid six operative provisions of the challenged Ordinance.[4] Grant Township's motion for relief as to its counterclaim was denied. ECF No. 114. Attorney Linzey, on behalf of Grant Township, followed with a motion for reconsideration, necessitating a response in opposition by PGE. Upon consideration, this Court denied the motion finding, at best, that Attorney Linzey misapprehended the scope of review inherent in a motion for judgment on the pleadings, and merely sought to relitigate the denial of Grant Township's initial motion. ECF No. 172. In the interim, the people of Grant Township voted to repeal the Community Bill of Rights Ordinance and, with the guidance of Attorney Linzey and CELDF, adopted a new Home Rule Charter incorporating many of the provisions previously declared invalid. ECF No. 180-2.

PGE next sought summary judgment on its remaining federal constitution claims; specifically, that the CBR violates the Supremacy Clause, the Equal Protection Clause, the

---

Township that were affected by the terms of the Community Bill of Rights Ordinance, and whose interests were broader than those represented by PGE. ECF No. 115.

[4] The Court held that Sections 3(a) and (b), 4(b) and (c), and 5(a) and (b) of the Community Bill of Rights Ordinance were invalid as each is preempted by state law and Grant Township was enjoined from enforcing these sections of the Ordinance. ECF No. 114. Specifically, this Court held that: §§ 3(a) and (b) were enacted without legal authority in violation of the Second Class Township Code, and were exclusionary in violation of Pennsylvania law; §§ 4(b) and (c) were enacted without legal authority in violation of the Second Class Township Code; § 5(a) was preempted by the Limited Liability Companies Law; and §§ 5(a) and (b) were preempted by the Second Class Township Code.

Petition Clause of the First Amendment, the Contract Clause, and both the substantive and procedural components of the Due Process Clause of the United States Constitution. PGE also sought summary judgment in its favor on Grant Township's counterclaim. Grant Township filed its own motion for summary judgment, again asserting, *inter alia*, that PGE violated the Township's right to "local community self-government." This Court issued a judgment order, denying Grant Township's motion in full, and granting PGE's motion in part and denying it in part, with relief granted in PGE's favor as to Grant Township's counterclaim, the Equal Protection Claim, the Petition Clause claim, and the Substantive Due Process challenge. Summary judgment was denied on PGE's Procedural Due Process and Contract Clause challenges due to PGE's failure to submit a copy of an existing Underground Injection Control ("UIC") permit conveying a property interest to PGE, as well as PGE's omission of copies of any leases with Grant Township landowners to substantiate its contract claims, the absence of which left limited questions of fact to be resolved.

A trial as to PGE's remaining claims is scheduled for May 2018.

## II. Discussion

### A. PGE's Motion for Sanctions

PGE's pending motion for sanctions renews and supplements a previously filed motion for sanctions, and seeks to recover over $500,000 in attorneys' fees and costs incurred as a consequence of "frivolous, unfounded, harassing pleadings and motions in pursuit of … illegitimate ends, thereby increasing litigation costs, abusing process, and wasting judicial resources." ECF No. 249, p.1.

PGE argues that CELDF counsel guided Grant Township's promulgation of an unlawful CBR Ordinance and filed numerous motions and pleadings which were conceded to be without

legal support, but nevertheless were submitted for judicial consideration, in pursuit of a political agenda to "reorder and restructure" our system of government. ECF No. 250. PGE points to examples of filings asserting Grant Township's "right" to "local, community self-government" rising above well-established concepts of state and federal preemption, as well as arguments propounded by CELDF counsel throughout this litigation rejecting the longstanding legal recognition and protection of corporations as "persons" under the United States Constitution.[5] PGE contends that counsel cannot claim incompetence or lack of awareness of the frivolous nature of the claims asserted by them in this action, given that identical arguments were raised by CELDF and/or Attorney Linzey in prior litigation and uniformly rejected by courts in this Circuit and elsewhere.

PGE states that as a result of Attorney Linzey's conduct, the litigation of this matter extends to over 250 docket entries, reflecting a strategy to delay resolution of this action in order to interfere with PGE's ability to conduct lawful activities within Grant Township, and to impose unwarranted financial strain on PGE as it litigates this action to preserve its rights. As just one of many examples of frivolous motions, PGE points to the motion to strike the affidavit of PGE's Vice President of Engineering, filed in response to arguments raised by Grant Township in opposition to PGE's motion for summary judgment. ECF No. 250, *citing* ECF No. 193 and ECF No. 244. Based upon the course of conduct evinced by Defendant's counsel, PGE asserts the propriety of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the Court to assess attorney's fees when a party has acted in bad faith, or for oppressive reasons.

---

[5] PGE has supplied the Court with hundreds of pages of newspaper articles, CELDF organizational materials, and citations to interviews of Attorney Linzey to demonstrate intent to manipulate the judicial system to harass and obstruct corporate targets. The Court has not relied upon these materials, because they involve activities outside the progress of litigation of this matter, and are not necessary to the disposition of the pending motions.

In addition, PGE claims it is entitled to sanctions against Attorney Schromen-Wawrin, pursuant to 28 U.S.C. § 1927, as a result of a "patently frivolous claim" on behalf of the Little Mahoning Watershed, as well as proposed intervention on behalf of the East End Hellbenders, a community group comprised of residents of Grant Township.

### 1. Rule 11

Under Rule 11 of the Federal Rules of Civil Procedure, by signing a pleading, motion or other filing, an attorney certifies, *inter alia*, that to the best of his or her knowledge, and formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b). In the event a party believes a motion or pleading has been interposed for an improper purpose, upon appropriate notice and a 21-day waiting period to permit the withdrawal of the offending paper, claim, defense, contention, or denial, a motion for sanctions may be filed. Fed. R. Civ. P. (11)(c).

PGE asserts that throughout this litigation, Attorneys Linzey and Dunne, in conjunction with CELDF, have acted unreasonably, pursuing discredited legal theories, misrepresenting facts, and unnecessarily multiplying litigation, and therefore are subject to sanctions to bear the expense incurred by PGE to retain its right to operate its legal business within Grant Township. In opposition to the requested sanctions, Defendant's counsel contend that PGE's motion has been interposed to harass, is untimely, and is filed without required safe harbor notice, and that

Grant Township's legal arguments are supported by existing law, are reasonable arguments to extend, modify or reverse existing law, or to establish new law.[6] In addition, counsel assert that sanctions against the Township or its counsel are inappropriate because CELDF and its associated attorneys have not previously been sanctioned, and have candidly disclosed the existence of opposing case law.

Counsel for Defendant and Proposed Intervenors argue that PGE's motion for sanctions as to Attorney Schromen-Wawrin should be denied as untimely and in violation of Rule 11's safe harbor provisions, requiring service of an intended motion 21 days on the offending party prior to filing.

Before addressing the merits of a party's Rule 11 motion, the Court must determine whether the party complied with the "safe harbor" provision of Rule 11(c)(2). Under that provision, a party cannot file a motion for sanctions until it first presents the motion to the offending party, and allows 21 days for the other party to withdraw or correct the challenged issue. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008) (citing Fed. R. Civ. P. 11(c)(2)). Counsel for Grant Township challenge the motion as violating Rule 11's safe harbor provisions because PGE failed to serve a copy of the renewed motion prior to filing, "and seeks to rely on the original notice given in 2015 to comply with the notice rule."[7] ECF No. 260, p. 4.

PGE's renewed motion for sanctions primarily addresses the counterclaim and defenses set forth in Grant Township's Answer and repeatedly asserted throughout this litigation. In this respect, the motion is nearly identical to PGE's initial motion for sanctions, which was dismissed

---

[6] In support of the claim that PGE's motion for sanctions is part of a scheme to harass, Attorneys Linzey and Dunne point to POIGA's referral of Attorney Linzey to the Supreme Court of Pennsylvania Disciplinary Board for his conduct in litigating this matter. Such proceedings are not relevant to the disposition of the pending motions given *inter alia*, the referral from a party other than PGE.

[7] Objection as to lack of notice also forms the basis of Grant Township's motion to strike. ECF No. 253.

by the Court as premature. ECF No. 224. There is scant authority as to whether the refiling of substantially the same motion on nearly identical grounds implicates or requires a second safe harbor period, but examination of the purpose indicates that the goal of a safe harbor period is met under these circumstances. "The purpose of the safe harbor is to give parties the opportunity to correct their errors," *Schaefer*, 542 F.3d at 99, and "encourage the withdrawal of papers that violate the rule without involving the … court." *In re Miller*, 730 F.3d 198, 204 (3d Cir. 2013)(internal citation omitted). In this case, PGE's initial motion for sanctions was preceded by sufficient service of a copy of the proposed motion, requesting withdrawal of Grant Township's offending defenses and counterclaim. Under these circumstances, the initial notice provided ample opportunity for Grant Township to abandon those claims not reasonably founded in the law. Despite notice of the offending conduct, counsel for Grant Township continued to assert identical legally implausible arguments throughout this litigation.

While the grounds asserted in PGE's renewed motion remained the same, the Third Circuit has held that, "[i]f the twenty-one day period is not provided, the [Rule 11] motion must be denied." *Schaefer,* 542 F.3d at 99; *Metropolitan Life Ins. Co. v. Kalenvitch*, 502 F. App'x 123, 125 (3d Cir. 2012). Cases within this Circuit applying the rule are readily distinguishable on the basis that the moving party failed to serve notice of the objectionable content to permit withdrawal of the offending documents prior to seeking judicial intervention. However, the mandate to provide notice with service of a copy of the proposed motion in compliance with Rule 11(c) appears to be without exception. The Court is mindful that in this instance, relief is also sought pursuant to 28 U.S.C. § 1927 and the inherent power of the court, which do not implicate the mandatory nature of Rule 11's safe harbor. Accordingly, to the extent PGE is

entitled to sanctions predicated upon the conduct of opposing counsel, the propriety of an award will be reviewed pursuant to the available alternatives.

### 2. Section 1927

PGE's motion for sanctions seeks relief pursuant to 28 U.S.C. § 1927 as to Attorney Schromen-Wawrin with regard to the attempted proposed intervention of East End Hellbenders and the Little Mahoning Watershed, and as to Attorneys Linzey and Dunne for the "frivolous arguments of Grant Township and Counsel." ECF Nos. 249; ECF No. 250, p. 31-32. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "[T]he principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Zuk v. Eastern Pennsylvania Psychiatric Institute*, 103 F.3d 294, 297 (3d Cir. 1996)(internal quotation marks and citations omitted). The Third Circuit has held that § 1927 requires a finding of bad faith or intentional misconduct on the part of the offending attorney. *In re Prudential Ins. Co. America. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (2002). "'Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment.'" *Id.*, quoting *Smith v. Detroit Federation of Teachers Local 231, Am. Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir. 1987).

### a. Timeliness

Attorneys Schromen-Wawrin, Linzey, and Dunne initially object to the imposition of sanctions under Section 1927 on timeliness grounds. As set forth below, the motion is timely with regard to Attorneys Linzey and Dunne. However, the Court finds that PGE's delay of one year after final judgment was entered as to Proposed Intervenors Little Mahoning Watershed and East Run Hellbenders precludes the imposition of sanctions as to Attorney Schromen-Wawrin.

Attorney Linzey concedes that on December 2, 2015, PGE served notice of its intent to seek sanctions against Grant Township based upon alleged legally spurious claims and defenses contained in Grant Township's Answer and Affirmative Defenses, and requested that the claims and defenses be withdrawn. The notice was served one year after Grant Township filed its Answer to the Complaint, and shortly after its motion for reconsideration of the Court's order granting in part PGE's motion for judgment on the pleadings. The Court stayed and subsequently dismissed both motions for sanctions without prejudice, determining that resolution was appropriate after disposition of the pending cross-motions for summary judgment. ECF Nos. 161; ECF No. 171; ECF No. 175; ECF No. 218; and ECF No. 224.

Attorney Linzey cites the Third Circuit opinion in *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90 (3d Cir. 1988), in support of the contention that PGE's one-year delay before filing the initial motion for sanctions renders the motion for sanctions untimely, "baseless," "for an improper purpose," and "frivolous." The *Pensiero* Court, however, addresses **only** Rule 11, and adopts "as a supervisory rule for the courts in the Third Circuit a requirement that all motions requesting Rule 11 sanctions be filed in the district court *before the entry of a final judgment*. Where appropriate, such motions should be filed at an earlier time – as soon as practicable after discovery of the Rule 11 violation." *Id*. at 99 (emphasis added). The goal of the rule is to avoid

fragmented appeals and "inefficiency resulting from delay in filing a sanction motion until after resolution of the merits appeal." *Id.* In addition,

> "The Advisory Committee Notes recommend that '[a] party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so … *However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.*"

*Id.* (emphasis added). Judgment has not yet been entered as to all claims against Grant Township, and sanctions are sought as a result of conduct that commenced at the pleading stage, with its assertion of certain frivolous claims and defenses. Furthermore, given this Court's discretion, all such motions were held in abeyance and dismissed for resolution after the disposition of summary judgment motions. Accordingly, to the extent timing of motions for sanctions pursuant to Rule 11 is at all relevant to motions proceeding under § 1927, the motion for sanctions as to Linzey and Dunne is timely. *Schaefer*, 542 F.3d at 102.

Attorney Schromen-Wawrin contends that PGE's sanction motion with regard to the attempted intervention of the Little Mahoning Watershed and East End Hellbenders is untimely because it was filed after judgment was entered as to both Proposed Intervenors. The Third Circuit has specifically concluded that, "to the extent the [Rule 11] supervisory rule remains viable [requiring the filing of motions before the entry of judgment], it does not apply where sanctions are sought under § 1927. That having been said, however, a motion for sanctions should be filed within a reasonable time." *Id.*

Attorney Schromen-Wawrin filed a motion to intervene on behalf of the Watershed and East End Hellbenders in November 2014. After extensive briefing by the parties, this Court held the motion in abeyance to permit resolution of potentially dispositive motions. ECF No. 37; ECF No. 78. The motion to intervene was renewed on April 16, 2015, and ultimately denied on

October 14, 2015. ECF No. 96; ECF No. 115. Schromen-Wawrin filed a timely appeal to the Third Circuit, resulting in a panel affirmance of this Court's decision. Despite the Third Circuit's unequivocal finding that intervention was unwarranted, Schromen-Wawrin sought reconsideration *en banc*, which the full Court of Appeals denied. A mandate order affirming this Court's decision was entered on August 30, 2016. ECF Nos. 116; ECF No. 221.

PGE filed its motion for sanctions as to all CELDF, and Attorneys Linzey, Dunne, and Schromen-Wawrin, on June 2, 2017. ECF No. 249. Unlike PGE's prior sanction motion, the pending motion is the first asserting bad faith or misconduct related to the proposed intervention of Hellbenders and the Watershed. PGE does not offer an explanation for its failure to seek sanctions earlier, which weighs against a finding of reasonable delay, especially where discovery of alleged misconduct was not hindered by fraud or obfuscation. *See, e.g., In re Grigg,* 568 B.R. 498, 508-510 (Bankr. W.D. Pa. 2017)(finding the delay of one year unreasonable where no explanation for delay provided, and misconduct apparent); *cf., Marino v. Usher,* 2013 WL 12146386, at *3 (E.D. Pa. Nov. 19, 2013) (Section 1927 motion for sanctions timely four months after alleged misconduct, where moving party attempted settlement and motion was filed one month after settlement negotiations proved unsuccessful).

Having found that the motion for sanctions as to Attorney Schromen-Wawrin is untimely, the Court shall enter an Order granting the motion to strike filed on behalf of Little Mahoning Watershed and East End Hellbenders (ECF No. 258) on that basis only. The Court stresses, however, that the denial of relief should not be interpreted as condoning the commencement of proceedings to intervene where, as under the facts presented here, no reasonable interpretation of existing case law rendered such motion appropriate. As readily discerned by the Third Circuit, the arguments advanced by Attorney Schromen-Wawrin represent a "misread[ing]" of applicable

13

law, are "untenable" in light of the facts, "[fatal]ly" flawed, unpersuasive, "conclusory and nonspecific," "purely speculative," and unsupported by any evidence. *Pennsylvania Gen. Energy Co., LLC v. Grant Twp.*, 658 F. App'x at 41-42, 43. Such an approach is unreasonable under any circumstance, but especially in light of the expense and resources borne by PGE, this Court, and the Third Circuit to resolve what is otherwise a plainly frivolous attempt to intervene in pending litigation for purposes unrelated to the just litigation of a claim. Accordingly, the disposition of the motion for sanctions with regard to Attorney Schromen-Wawrin reflects only the untimeliness of the motion, and not the merits.

### b. § 1927 Merits as to Attorneys Linzey and Dunne

In assessing the propriety of a motion pursuant to § 1927, the Court acknowledges longstanding guidance informing a decision to award sanctions:

> It is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, ….

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-422 (1978). The Third Circuit has held that the court's sanctioning powers should be used sparingly in order to avoid chilling novel legal or factual arguments from counsel. *In re Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d 781, 796 (3d Cir. 1999). "The power to sanction under § 1927 necessarily 'carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" *LaSalle Nat. Bank v. First Connecticut Holding Group, LLC.*, 287 F.3d 279, 289 (3d Cir. 2002) *quoting Mone v. Comm'r of Intern. Revenue*, 774 F.2d 570, 574 (2d Cir. 1985). In particular, "[t]he uncritical imposition of attorneys' fees can have an undesirable chilling effect

on an attorney's legitimate ethical obligation to represent his client zealously." *Ford v. Temple Hosp.*, 790 F.2d 342, 349 (3d Cir. 1986).

Citing these limiting principles, Attorneys Linzey and Dunne defend their conduct and that of CELDF, and through briefs and an attached affidavit of a member of CELDF's board, claiming that the arguments asserted are in the tradition of *Brown v. Board of Ed.,* 347 U.S. 483 (1954), the striking down of prohibitions on gay marriage, and other defining moments in legal history. *See, e.g.,* ECF No. 260. However, sanctions may be imposed under § 1927 where, as here, counsels' conduct results from bad faith and not well-intentioned zeal. "A showing of bad faith requires clear and convincing evidence that counsel or a party intentionally advanced a baseless contention for an improper purpose. Bad faith is plain when the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Wise v. Washington County*, 2015 WL 1757730, at *11 (W.D. Pa. 2015)(internal citations and quotation marks omitted).

To differentiate responsible and legally plausible claims from those that are plainly unreasonable and subject to sanctions, this Court finds instructive the analysis employed by the district court in *Matthews v. Freedman*, 128 F.R.D. 194, 200 (E.D. Pa. 1989), *aff'd* 919 F.2d 135 (3d Cir. 1990). In that case, counsel asserted legally frivolous constitutional claims, but the district court, mindful of the potential to chill "creative and enthusiastic advocacy in support of novel constitutional claims," adopted the "more concrete" and objective approach outlined by Professor Edward Cavanaugh to determine whether counsel's argument is "plainly unreasonable" and therefore subject to sanctions.[8] *Id.*, *citing* E.D. Cavanaugh, *Developing*

---

[8] The *Matthews* court adopted the Cavanaugh criteria for purposes of determining a Rule 11 violation, but upon reaching the conclusion that the Rule 11 motion was late, the court applied its findings of bad faith and awarded sanction pursuant to § 1927. *Matthews*, 128 F.R.D. at 207.

*Standards under Amended Rule 11 of the Federal Rules of Civil Procedure*, 14 Hofstra L.Rev.

499 (Spring 1986).  There, the district court summarized:

> On Cavanaugh's spectrum, a legal argument is "clearly reasonable" in the following situations:
>
> — argument is based on plain meaning of statutes or Supreme Court decisions;
>
> — argument is based on caselaw from within circuit;
>
> — circuit caselaw is unsettled, but caselaw from another circuit or district supports argument;
>
> — circuit caselaw is contrary to argument, but another circuit supports it.
>
> — plausible argument in case of first impression;
>
> — argument counter to established caselaw, but compelling facts or values suggest re-examination of settled precedent; or
>
> — settled precedent is factually distinguishable, and argument meets one of the other standards above.

In the middle, "gray area" of his spectrum, Cavanaugh classifies legal arguments according to rebuttable presumptions.  An argument is "presumptively reasonable" if it is based on

> — novel (plausible) theories based on analogies to unrelated areas of law; or
>
> — plausible theories in a complicated area of the law.

By comparison, an argument is "presumptively unreasonable" if it is founded on

> — farfetched analogies that imply an improper purpose; or
>
> — misrepresentations of governing law that suggest an intention to mislead the court.

Lastly, Cavanaugh classifies the following types of argument as "clearly unreasonable":

> — fatal, irremediable defect on face of pleading;

> — **settled law opposes argument and counsel does not confront or attempt to distinguish adverse authority**; or
>
> — argument consists of dubious legal propositions unsupported by legal research.
>
> Cavanaugh suggests that this type of conduct is not merely suspect: instead, it is conclusively sanctionable under Rule 11 absent a "clear and convincing" justification for the pleader's conduct.

*Matthews v. Freedman*, 128 F.R.D. at 200 (E.D. Pa. 1989)(internal case citations omitted)(emphasis added).

In opposition to the motion for sanctions, counsel contend that the various pleadings and memoranda filed on behalf of Grant Township meet ethical obligations to disclose contrary law, appropriately seek to reverse or extend existing law in good faith, and have been filed at the direction of their clients to pursue what counsel asserts are valid arguments for self-government. ECF No. 260, pp. 20-22. However, the objective criteria outlined in *Matthews* render it apparent that Attorneys Linzey and Dunne have repeatedly filed pleadings and motions that are "clearly unreasonable" and therefore in bad faith within the meaning of § 1927.

As reflected in the record, Attorneys Linzey, Dunne and Schromen-Wawrin provided free legal assistance to Grant Township and an affiliated community group to pursue a discredited and previously litigated "community rights" approach to prevent oil and gas operations within the Township. In particular, the CBR seeks to disavow constitutional rights afforded corporations so as to prevent PGE from the lawful exercise of its right to pursue gas extraction related activities within its borders. This is in keeping with CELDF's strategy, described by the Third Circuit as advocating, "that communities pass laws that assert community rights against corporations and others engaged in activity disfavored by members of the community." *Seneca*

*Resources Corporation v. Township of Highland, Elk County, PA*, 863 F.3d 245, 248 (3d Cir. 2017).[9]

The record reflects that on June 3, 2014, prior to passage of the challenged CBR, counsel for PGE advised the Grant Township Board of Supervisors that the proposed Ordinance suffered numerous insurmountable legal deficiencies, as determined by this Court at least once before with regard to a similar ordinance also drafted by Attorney Linzey and CELDF. ECF No. 273, pp. 15-19, *citing Penn Ridge Coal, LLC v. Allegheny Pittsburgh Coal Co.,* C.A. No. 08-1452P, ECF No. 30 (W.D. Pa. April 8, 2009) (concluding that the Township had no legal authority to annul constitutional rights afforded corporations by the United States Supreme Court).

Despite this information, the Ordinance passed and CELDF-affiliated counsel continued to press forward with a counterclaim and defenses remarkably unchanged from prior CELDF litigation seeking to overturn longstanding corporate rights and ignoring the established preemptive effect of valid federal and state permits and environmental regulation.[10]

Upon detailed review of the briefs filed by the parties and governing law, this Court granted PGE's motion for judgment on the pleadings as to those portions of the Ordinance challenged specifically, and granted PGE's motion for summary judgment as to its remaining constitutional claims, save those for which specific evidence was required. The Court rejected as unfounded and contrary to established law all arguments propounded by counsel for Grant

---

[9] *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d at 248 (3d Cir. 2017), citing Uma Outka, *Intrastate Preemption in the Shifting Energy Sector*, 86 U. Colo. L. Rev. 927, 959–60 (2015) (referring to CELDF-sponsored antifracking legislation in Pittsburgh, Pa., Mora, N.M., and Lafayette, Colo.); Catherine J. Iorns Magallanes, *Foreword: New Thinking on Sustainability*, 13 N.Z. J. Pub. & Int'l L. 1, 12 (2015) ("160 communities in the United States have adopted such rules that have been drafted by the CELDF....").

[10] *See e.g., Range Resources – Appalachia, LLC v. Blaine Tp*, 649 F. Supp.2d 412 (W.D. Pa. 2009) (invalidating an ordinance drafted by CELDF banning shale operations in Washington County, Pennsylvania and seeking "to guarantee to the residents of Blaine Township their right to a republican form of governance by refusing to recognize the purported constitutional rights of corporations."). The CBR at issue here similarly invokes the "People's Right to Self-Governance and Right of Separation."

Township seeking to deem PGE a state actor amenable to suit pursuant to 42 U.S.C. § 1983, and otherwise seeking to strip PGE of certain constitutional rights recognized pursuant to over one hundred years of Supreme Court precedent. In reaching its conclusion, this Court observed that counsel for Defendant provided no legal precedent to the contrary, nor other legal basis for a different result, and merely reasserted the existence of historical documents and events previously rejected by this Court as justification for Grant Township's claims. *Pennsylvania General Energy Company, LLC v. Grant Twp.*, 139 F. Supp.3d 706, 714 (W.D. Pa. 2015).

In determining the propriety of sanctions for advancing plainly unreasonable arguments, the Court has examined CELDF's federal environmental litigation occurring over the past fifteen years in Pennsylvania. CELDF, with Attorney Linzey as lead counsel, has championed the notion of "community self-governance" as justification for CELDF-drafted local ordinances to invalidate corporate property rights, and to strike at the preemptive effect of state and federal law where in conflict with a community-enacted ordinance. *See, Penn Ridge Coal LLC v. Allegheny Pittsburgh Coal Co., supra; Range Resources-Appalachia, LLC v. Blaine Township, supra; Friends and Residents of Saint Thomas Township, Inc. v. Saint Thomas Development, Inc.,* 2005 WL 6133388 (M.D. Pa. Mar. 31, 2005), *aff'd sub nom. Friends & Residents of St. Thomas Twp., Inc. v. St. Thomas Dev., Inc.*, 176 F. App'x 219 (3d Cir. 2006). In each cited action, the district court reviewed CELDF's arguments and found them wanting, lacking argument predicated in law or facts, and failing to justify setting aside historically well-settled legal precepts.[11] The most recent cases, including the instant action, find identical arguments reasserted, but not advanced in any material manner by distinguishing facts, analogy, or supporting case law from any court of coordinate or superior jurisdiction.

---

[11] In particular, this Court has reviewed CELDF's memoranda in *Penn Ridge Coal,* C.A. No. 08-14252P, at ECF No. 14 (pps. 28-108); ECF No. 19; and ECF No. 43 (pps. 17-22); *Range-Resources,* C.A. No. 09-355P, at ECF No. 11; ECF No. 22; and *St. Thomas,* C.A. No. 04-627, at ECF No. 13; ECF No. 18.

Attorneys Linzey and Dunne contend that because adverse precedent is acknowledged in supporting briefs, the duty of candor owed to the Court and other parties to the litigation has been met thereby precluding an award of sanctions. This position is equally untenable and unsupported by appropriate citation. Merely acknowledging historical fact does not cloak frivolous litigation with a mantle of seriousness. Instead, such litigation creates enormous expense to parties and taxes limited judicial resources. Rather, counsel's repeated presentation of identical theories over the course of fifteen years eliminates any claims of novelty or plausibility, and cannot be excused as a good faith course of conduct.

Counsel would have been advised to take to heart the court's decision over a decade ago in *Friends and Relatives of Saint Thomas Twp.*, where the Court narrowly declined the imposition of sanctions, concluding that Attorney Linzey "endeavored against unfavorable precedent to convert his clients' feeling and concerns into a constitutional framework," but finding fault with counsel's arguments:

> The Court finds the question of whether sanctions should be imposed in this case to be very close. Many of Plaintiffs' arguments are asserted without acknowledgment or sufficient apparent regard for established legal principles and holdings. Throughout much of their papers, Plaintiffs do not so much argue that the Court should establish a change in the law regarding the rights of corporations under the United States Constitution, but rather they argue that such rights simply do not exist, ignoring scores of decisions to the contrary. To be sure, Plaintiffs have pointed to numerous historical documents and secondary sources demonstrating a long-running argument among scholars on this legal issue. However, Plaintiffs pay insufficient attention to the fact that established constitutional law on this subject demonstrates conclusively that corporations do, in fact, enjoy such rights.

*St. Thomas*, 2005 WL 6133388 at *14. The present litigation shows that no lessons in good faith legal argument have been learned. Rather, Attorneys Linzey and Dunne continue to pursue nearly identical and rejected theories unabated, without regard to their obligation to conduct

reasonable inquiry into applicable law prior to filing. As a result, PGE and this Court were left to resolve claims and defenses that in all candor, should have been abandoned, given the absence of any attempt to distinguish or confront adverse authority. Such conduct evinces bad faith, and the invocation of the courts for purposes unrelated to the speedy and just resolution of legal causes.

Under the circumstances presented, the Court finds that an award of sanctions pursuant to 28 U.S.C. § 1927 against Attorneys Linzey and Dunne is appropriate.

### 3. Inherent Power of Court to Impose Sanctions

PGE also invokes the inherent power of the Court to impose sanctions upon Grant Township and its counsel. Specifically, PGE asserts that sanctions should be awarded on the grounds that Grant Township and its counsel "(a) defended this action and filed a counterclaim to the action for an improper purpose and for the purpose of harassing and intimidating PGE, thereby increasing its litigation costs, (b) filed multiple frivolous claims and documents, and (c) multiplied the proceedings for an improper purpose and for the purpose of harassing and intimidating PGE, thereby increasing its litigation costs." ECF No. 249, page 2.

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes; the ability to fashion an appropriate sanction for conduct which abuses the judicial process. And one permissible sanction is an 'assessment of attorney's fees' …, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186 (2017) (internal citations omitted).

As explained *supra* with regard to § 1927, the Court finds that Attorneys Linzey and Dunne have acted in bad faith with regard to the pursuit of frivolous legal claims and defenses.[12] Such conduct has resulted in the expenditure of significant litigant and judicial resources, and warrants the imposition of sanctions that are beyond the compensatory relief afforded by § 1927. Accordingly, where appropriate, the Court's imposition of sanctions pursuant to its inherent power will be ordered.

### 4. Sanctions Awarded

This Court has determined that Attorneys Linzey and Dunne have pursued certain claims and defenses in bad faith. Based upon prior CELDF litigation, each was on notice of the legal implausibility of arguments previously advanced as to: (1) the purported invalidity of corporate rights; (2) the identification of a regulated corporation as a "state actor"; (3) community self-governance as a justification for striking or limiting long-standing constitutional rights, federal and state laws, and regulations; and, (4) the purported invalidity of "Dillon's Rule" to the extent it applies to limit a municipality's ability to enact ordinances in conflict with state and federal law. Despite their own prior litigation, CELDF and Attorney Linzey, in particular, continue to advance discredited arguments as a basis for CELDF's ill-conceived and sponsored CBR, and in so doing have vexatiously multiplied the litigation of this matter.

According to PGE, nearly all litigation expenses incurred in this matter are related to Attorney Linzey's bad faith. ECF No. 250. While it is clear that PGE was required to bear

---

[12] Dunne entered her appearance as counsel affiliated with CELDF on March 4, 2016. ECF No. 187. Since that time, through briefs and in person when appearing before the Court, she has actively participated in the litigation of this matter pursuant to the "community self-government" theories previously asserted by CELDF and Attorney Linzey. *See, e.g.*, ECF No. 233, Grant Township's supplemental brief in support of cross-motion for summary judgment ("More fundamentally, and cutting across all of PGE's claims, is the fact that even if PGE could show a violation of its constitutional rights – which it cannot – such rights cannot trump the people's fundamental right of local, community self-government, including the people's right to exercise that right to protect their air, water, and soil."). Accordingly, the Court finds Dunne's participation equally troubling, and demonstrating the requisite degree of bad faith.

significant expense to challenge the CBR, recovery of all litigation costs is not warranted in the absence of definitive evidence that the entirety of an action was the result of fraud. Rather, as the Supreme Court recently made clear, sanctions must be sufficiently causally connected to conduct. "This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses—yet still allows it to exercise discretion and judgment. The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued." *Goodyear Tire & Rubber Co.,* 137 S. Ct. at 1187.

This standard applies whether sanctions are awarded pursuant to § 1927, or the Court's inherent authority to control litigation before it. "[U]nder 28 U.S.C. § 1927, a court may require an attorney who unreasonably multiplies proceedings to pay attorney's fees incurred 'because of' that misconduct. Those provisions confirm the need to establish a causal link between misconduct and fees when acting under inherent authority, given that such undelegated powers should be exercised with especial 'restraint and discretion.'" *Id. quoting Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). In this regard, PGE bears the burden to establish the link, and seeks to do so by providing the Court with copies of its billing records for the entirety of this litigation. ECF No. 250-9 through ECF No. 250-14.

The Court has undertaken review of the billing records, and finds approximately $52,000 in costs and fees reasonably incurred by PGE to research and draft motions and memoranda in support and in opposition to dispositive motions for judgment on the pleadings and summary judgment.[13] The litigation of CELDF's previously discredited theories was central to each

---

[13] The Court has determined that the number of hours indicated for research, drafting, editing, and revising is reasonable, as is the hourly rate charged for the work completed by the various attorneys retained by PGE.

motion, and therefore is an appropriate measure of sanctions, directly resulting from the misconduct occasioned by Attorneys Linzey and Dunne.

This sum is approximately 10% of the total litigation costs incurred by PGE in pursuit of its legitimate challenge to Grant Township's enactment of the CBR, and while small in comparison, bears a direct relationship to PGE's challenge of the claims and defenses asserted in the Answer and Counterclaim. Other expenses incurred in discovery, with regard to motions to intervene and to dismiss, or in pursuit of a preliminary injunction, while necessitated by litigation of this matter, do not directly implicate the relitigation of arguments previously found lacking by this and other courts of coordinate jurisdiction.[14]

### B. Grant Township's Motion for Sanctions

Grant Township, through Attorney Dunne, has filed a counter-motion for sanctions. The motion is denied, as it rests upon the alleged impropriety of PGE's sanctions motion. Because the Court concludes that PGE is entitled to limited sanctions, for the reasons set forth above, Grant Township is not entitled to sanctions under Rule 11, § 1927, or the inherent power of the Court.

### III. Conclusion

The Court does not derive pleasure in the task before it today. However, as made clear by the pattern of CELDF-affiliated litigation (all of which has been led by Attorney Linzey) in the years leading to this action, foregoing sanctions in this instance would be inconsistent with the Court's duty to ensure that lawyers who practice before it do so ethically and responsibly. An attorney's zealous advocacy for the protection of a client's interests is certainly appropriate; however, the legitimate pursuit of justice imposes important obligations on counsel to ensure that the Court is not a mechanism of harassment or unbridled obstruction. The continued pursuit of

---

[14] This Court has determined not to impose sanctions directly on Grant Township.

frivolous claims and defenses, despite Linzey's first-hand knowledge of their insufficiency, and the refusal to retract each upon reasonable request, substantially and inappropriately prolonged this litigation, and required the Court and PGE to expend significant time and resources eliminating these baseless claims. Accordingly, sanctions are imposed and justified in this instance.

For the reasons set forth above, this 5th day of January, 2018, it is hereby ORDERED:

1. The Motion for Sanctions filed by PGE (ECF No. 249) is granted in part, and the Court sanctions Attorneys Linzey and Dunne ONLY in the total sum of $52,000, to be paid to PGE within 120 days of this Order. The motion is denied in all other regards.

2. The Clerk is directed to transmit this Opinion and Order to the Disciplinary Board of the Pennsylvania Supreme Court, with a request to determine appropriate disciplinary measures, if any, to be imposed upon Attorney Linzey for the reasons set forth herein.

3. The Motion to Strike filed on behalf of the East End Hellbenders (ECF No. 256) is granted.

4. The Motion to Strike filed by Grant Township (ECF No. 253) is denied.

5. The Motion for Sanctions filed on behalf of Grant Township (ECF No. 264) is denied.


BY THE COURT:


s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
U.S. Magistrate Judge