UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C.,<br><br>　　　　Plaintiff,<br>vs.<br><br>GRANT TOWNSHIP,<br><br>　　　　Defendant. | Case No. 1:14-cv-209<br><br>***ELECTRONICALLY FILED*** |

## DECLARATION OF LISA C. MCMANUS, ESQ.

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
|  | )   SS: |
| COUNTY OF WARREN | ) |

Before me, the undersigned authority, personally appeared Lisa C. McManus, Esq., who, being duly sworn according to law, deposes, affirms and states as follows:

1. I am an attorney serving as General Counsel and Vice-President, Legal for Pennsylvania General Energy Company, L.L.C., with an office located at 120 Market Street, Warren, Pennsylvania ("PGE"), and have been a member in good standing of the Bar of the Commonwealth of Pennsylvania since 1990. I am admitted to practice before the United States District Court for the Western District of Pennsylvania and the Third Circuit Court of Appeals.

2. I attended Central College in London, England, and received my B.A., summa cum laude, from Saint Vincent College and my law degree, cum laude, from the Dickinson School of Law in 1990. During law school, I served as a law

clerk at the Pennsylvania Public School Employees Retirement System, and upon graduating, I joined Eckert Seamans Cherin & Mellott in Pittsburgh as a litigation associate. In 1992, I left Eckert Seamans to become a partner at Coppolo & Coppolo in St. Marys, where I practiced until 2002. Prior to joining PGE in 2014, I maintained a private practice concentrating on oil and gas law and general business and transactional matters in St. Marys, Pennsylvania.

3. I am active in a multitude of professional organizations and serve on numerous boards. I am the author of *Resolving Issues Involving Dormant Oil and Gas Interests*, The Law of Oil and Gas in Pennsylvania, Ed. Joel Burcat, Stephen W. Saunders. PBI Press, 2014; *Loss of Oil and Gas Rights Improper Use of the Action to Quiet Title*, Pennsylvania Bar Association Quarterly LXXXVI.3 (2015): 93-104; and numerous articles on oil and gas law. I frequently lecture and plan continuing legal education programs for the Pennsylvania Bar Institute, have presented as a guest lecturer on oil and gas title law at the Pennsylvania State University, and have served as faculty on multiple courses and podcasts offered by the American Bar Association, American Inn of Courts, local bar associations, and LexisNexis.

4. The statements set forth by me in this Affidavit are based on my personal knowledge of the information set forth herein or information gathered by others at my direction and control who work for PGE.

5. In my position as Vice President, Legal and General Counsel for PGE, I am directly involved in and oversee litigation involving PGE. In particular, I have

been directly involved in the litigation with Grant Township, Pennsylvania, at the above-captioned number prior to and since its inception.

6. In January, 2018, PGE approached Grant Township about the concept that became the Joint Stipulation that was filed with the Court on February 23, 2018 at ECF No. 307. PGE decided that it would not pursue a trial on either: (1) whether Grant Township was liable on the counts which had not been ruled on by this Court in the motions for judgment on the pleadings or motions for summary judgment; or (2) the damages for which PGE would be entitled from Grant Township related to the passage of the subject unconstitutional and unlawful Ordinance. PGE's decision not to pursue a liability determination on the three remaining counts (Procedural Due Process, Contracts Clause, Sunshine Law) at trial was based on, *inter alia*, the fact PGE had already obtained relief on other counts, including constitutional claims and state law claims, thereby preventing Grant Township from utilizing the discredited community-based rights concept to prevent PGE's lawful operations within the Township or from accessing the courts for redress of grievances. Despite PGE's belief that the law clearly entitled PGE to judgment in its favor on the Procedural Due Process, Contracts Clause counts once PGE provided the underlying proof of property interests afforded by contract as required by the Court, PGE determined that moving forward with a jury trial to "win" on these claims would be an unwarranted expenditure of judicial and party resources.

7. Likewise, PGE's decision to accept a nominal damage award rather than to pursue a compensatory damages award through trial was based on multiple factors. Initially, Grant Township requested, as is its right, a jury trial on the issue of damages. A jury trial would likely have lasted multiple days and would have required significant pre-trial preparation, including witness and expert preparation, motions in limine and jury selection, which would have increased PGE's attorneys' fees and costs by an estimated $100,000. PGE believes that it would have been able to prove compensatory damages and receive a jury award of in excess of $300,000. Thus, the potential total award in this matter, including an attorneys' fees award, would have approached $1,000,000. Significantly, in the Declaration of Supervisor Jon Perry in Opposition to PGE's Renewed and Supplemental Motion for Sanctions submitted to this court on June 26, 2017 (ECF No. 260-7), Grant Township Supervisor Jon Perry swore that Grant Township would face municipal bankruptcy should PGE be awarded $518,281 in sanctions. Mr. Perry also stated that the Township's average account balance ranges between $100,000 to $118,000. This led PGE to the conclusion that a multi-day jury trial would not be an effective use of PGE or judicial resources. Moreover, as PGE was already the prevailing party based on the obtaining of declaratory, injunctive, and other relief, PGE would be entitled to attorneys' fees already incurred. PGE has no desire to bankrupt Grant Township. However, PGE desires to recover a portion of the attorneys' fees and costs for which it is entitled and to deter the continued pursuit of discredited community-based

4

rights arguments. As a result, PGE has opted to accept the nominal damages award and pursue its attorneys' fees and costs, albeit in a substantially reduced amount as reflected below. For these reasons, as there is no reasonable argument that PGE has not prevailed, PGE has developed and pursued a litigation strategy through the Stipulation filed at ECF No. 307 and subsequent Revised Stipulation filed at ECF No. 314. This effort should allow the litigation to be completed in a streamlined and expedited manner which will not bankrupt Grant Township, will allow PGE to recover a small portion of its attorneys' fees and costs, and will discourage Grant Township (and perhaps others) from the continued pursuit of unlawful and unconstitutional actions such as those represented by the Ordinance.

8. In further support of PGE's motion for attorneys' fees, I affirm that I obtained the *Letter from Grant Township to: Federal Court, Pennsylvania General Energy, and Those Who Will Stand for What's Right*, PUBLIC HERALD, dated Jan. 13, 2018, available at http://publicherald.org/a-letter-to-those-who-will-stand-for-whats-right/, by viewing the letter and downloading it from the Public Herald website on March 16, 2018 and attached to this Declaration as Exhibit A. This letter from the Grant Township Supervisors is also available on the Community Environmental Legal Defense Fund website at https://celdf.org/2018/01/grant-township-pa-sanctions-lawyers-badge-courage/ and is accompanied by the contact information for Grant Township Supervisor Stacy Long and email address for Grant Township. The content of this letter, as reflected in the Memorandum of Law submitted in support of

the Motion for Attorneys' fees, underscores the importance of a deterrent effect that would be generated by an award of attorneys' fees, just as the sanctions award in this case is having a deterrent effect with regard to the continued propagation of the community-based rights agenda in other communities, see, e.g., Memorandum to Gary Klaphake, City Administrator, from David S. Williamson and Mathew M. Munch, Office of the City Attorney, City of Lafayette, Colorado, dated February 6, 2018, which I obtained on March 21, 2018, by downloading the document from the following URL: http://www.cityoflafayette.com/DocumentCenter/View/20126, and which is attached as Exhibit B.

9. With over 25 years of practice experience and several years serving as General Counsel, I am knowledgeable regarding attorney rates in western Pennsylvania. My experience is based not only on my own billing rates while in practice, but also on the billing rates of attorneys that I have retained to represent or perform services for PGE.

10. PGE retained Babst Calland, Clements, & Zomnir, P.C. ("Babst Calland") to represent the company in connection with this lawsuit. In my professional opinion, Babst Calland's hourly rates are commensurate with or better than the market rate in western Pennsylvania for similar services by lawyers of reasonably comparable skill, experience, and reputation.

11. The decision to hire James V. Corbelli, Esquire and Kevin Garber, Esquire was based on their extensive experience in litigation, environmental law, municipal law, and regulatory issues, as well as confidence in their ability to

identify other attorneys at Babst Calland whose expertise and/or billable rates would dovetail to effectively and efficiently litigate this suit at a reasonable cost.

12. I personally and carefully reviewed the Babst Calland fees and costs billed to PGE for this litigation and approved payment of the fees and costs because I found them to be reasonable and appropriate. On that basis, PGE paid the fees and costs billed.

13. In preparing the documentation in support of the Motion for Attorneys' Fees & Costs Pursuant to 42 U.S.C. § 1988 as the Prevailing Party for Claims Pursued under 42 U.S.C. § 1983, I assured that fees and costs that were not directly associated with the litigation of this matter were redacted from the original invoices and not included in any summary of fees claimed. In particular, I eliminated all charges for services charged by Babst Calland relating to PGE's efforts to obtain a permit to alter the subject gas well to an injection well from the Department of Environmental Protection, and other activities not related to this litigation. Moreover, I eliminated all costs that are not properly the subject of recovery pursuant to Fed.R.Civ.P. 54(d)(1), 28 U.S.C. § 1920, and 42 U.S.C. § 1988. This redaction is reflected on the invoices attached hereto as Exhibit C, which represent the contemporaneous billing records of Babst Calland and form the foundation for the fees and costs that PGE contends should be awarded pursuant to the Motion for Attorneys' Fees and Costs.

14. In order to minimize the potential for further disputes over the fee claims, I eliminated the following line items: (a) those for legal services provided in conjunction with this matter for which Babst Calland waived or reduced its fees; (b) entries by attorneys and support staff at Babst Calland who did not bill at least 10 hours in this matter; (c) those for legal services provided *primarily* in conjunction with the intervention matters, which time is significant.

15. PGE is submitting to this Court in its claim for Attorneys' Fees those legal fees and computerized research charges paid to Babst Calland directly related to the filings in this litigation in the amount of $619,121.77. The line item charges have been set forth by attorney on spreadsheets for ease of review. This document is attached hereto as Exhibit D.

16. PGE and its counsel have made a concerted effort to minimize the billable hours and costs in this matter. In order to minimize PGE's attorneys' fees and expenses, I personally have spent in excess of 1,000 hours on this litigation, including the drafting of numerous motions and briefs in support, e.g., Motion for Sanctions and Memorandum of Law in Support and Motion for Attorneys' Fees and Memorandum of Law in Support.

17. Although I believe and therefore aver that PGE is entitled to the full measure of attorneys' fees expended in the litigation of this matter, because PGE does not wish to bankrupt Grant Township, I am authorized on behalf of PGE to request that instead of an award of the full amount of attorneys' fees to which PGE is entitled ($619,121.77 as of the date of this filing) the Court

8

award a reduced amount of $100,000.00 in attorneys' fees, plus computerized legal research fees and costs, in order to avoid bankrupting Grant Township. This concession to an award limited to $100,000.00 is limited to those fees incurred to date and does not limit the request for attorneys' fees and costs incurred in the future in this matter, including, but not limited to, attorneys' fees incurred on any appeal filed in this matter.

18. PGE is submitting a list of costs paid to Babst Calland in this litigation in the amount of $1,399.91. These items were set forth as a separate disbursement in the Babst Calland invoices. The line item charges have been set forth on spreadsheets for ease of review. This document is attached hereto as Exhibit E. I have eliminated all costs related to the appeal by proposed intervenors.

19. I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of this Affidavit are true and correct.

Executed on this ___ day of April, 2018.

_____
Lisa C. McManus

Sworn to and subscribed before me this _10_ day of April, 2018.

_____
Notary Public

My commission expires __June 7, 2018__

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Jessica Lookenhouse, Notary Public
City of Warren, Warren County
My Commission Expires June 7, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES