UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C., | Civ. No.: 1:14-cv-209 |
| | Magistrate Judge |
| Plaintiff, | Susan Paradise Baxter |
| PENNSYLVANIA INDEPENDENT OIL AND GAS ASSOCIATION, | **DECLARATION OF JON PERRY** |
| Plaintiff-Intervenor, | |
| v. | |
| GRANT TOWNSHIP, | |
| | *Electronically Filed* |
| Defendant. | |

## DECLARATION OF GRANT TOWNSHIP SUPERVISOR JON PERRY

I, Jon Perry, being an adult over the age of 21 years, and competent to make this unsworn Declaration, do hereby make the statements below, which are true and correct to the best of my knowledge and belief, subject to the penalties for unsworn declarations pursuant to Pennsylvania law:

1. My name is Jon Perry, and I serve as Chairman of the Supervisors for Grant Township. Grant Township is a small rural town in Pennsylvania with a population of approximately 700 people. I have lived in Grant Township for 24 years. I have been a Supervisor since April 2014. The Supervisors act as the legislative body for the Township. I served on the Board of Supervisors at the time Grant Township passed the Ordinance.

2. The Township Supervisors are not aware of any individuals in the Township engaged in the depositing of waste from oil and gas extraction, and, in particular, to any degree that would be a threat to residents' health, safety, welfare, and environmental rights.

3. In June 2014, the Township passed the Ordinance to address the depositing of waste from oil and gas extraction by corporations within the Township. The Ordinance prohibited the activity by corporations because corporations, and not individuals, pose risks to, and threaten, the people's right to clean, air, water, and soil.

4. The Ordinance did not include individuals because it was not the intent of the Ordinance to be construed to prohibit individuals from engaging in activities, such as changing the oil in their cars.

5. The Township Supervisors determined that corporations pose a risk to, and threaten, the people's right to clean, air, water, and soil, because we are aware of, and reviewed documentation regarding, water pollution and other environmental contamination and degradation that has occurred as a result of activities related to oil and gas extraction, in particular, the depositing of waste from oil and gas extraction.

6. In passing the Ordinance, the Supervisors were very concerned that other corporations would seek to deposit their waste in Grant Township, if PGE was successful in gaining its permits. The Supervisors discussed this concern with residents of Grant Township at public meetings.

7. *Because the Township Supervisors* are not aware of any individuals who have engaged in the depositing of waste from oil and gas extraction or who have been permitted by the Environmental Protection Agency or the DEP to do so, the Township believed that it was reasonable, necessary, logical, legitimate, and prudent to prohibit such activities by corporations, and not individuals.

8. In passing the Ordinance, the Township Supervisors were aware of numerous complaints before the Pennsylvania Department of Environmental Protection regarding corporations engaged in oil and gas activities. In many instances, the complaints have not been investigated. In a few instances, the DEP has issued notices of violations to corporations, including PGE--but only in a few instances, and *after* the environmental contamination has occurred.

9. Community members informed me about the threats posed by the permanent storage of fracking waste, and I recall an article shared with me entitled "*Injection Wells: The Poison Beneath Us*", dated June 21, 2012, (www.propublica.org/article/injection-wells-the-poison-beneath-us).

10. Individuals, as opposed to corporations, and the government agencies that work with those corporations to permit the activities that pose risks to, and threaten, the people's right to clean, air, water, and soil, are not the problem. Corporations (and government permitting agencies) are the threat. So, the Ordinance applies to corporations.

3

11. The Township considered the information described in the above paragraphs in passing the Ordinance, and those considerations are summarized in the "Whereas" clauses of the Ordinance.

12. The Township and the people have determined that EPA's and DEP's permitting processes, and other state and federal laws, do not protect their health, safety, welfare and environmental rights. In issuing permits to corporations such as PGE, the EPA and DEP place economic interests above environmental rights, when the people of Grant Township have demanded, and the Pennsylvania Constitution requires, otherwise.

13. Prior to, at the time of passing, after passing, and after this Court found the Ordinance to be invalid, many residents of the Township expressed concerns about the depositing of fracking waste in the community. The concerns are about impacts on their health, safety, and welfare, and about impacts on clean air, water, soil, and on the natural landscape.

14. The Township determined that trucking fracking waste around the town, up and down the town's roads, and, then injecting it into a well, located in very close proximity to residents, near our important watershed and sole source of drinking water is a threat. A very serious threat.

15. PGE's activities are a threat, but they are not the only threat. Other corporations seeking to engage in, or engaging in the depositing of waste from oil and gas activities are also a threat. That is why the town passed the Ordinance: to stop this activity by any corporation and to stop the government agencies that continue to permit such activities, without regard to the impact on the people's health, safety, welfare, and environmental rights, from doing so.

16. The Township has legitimate (and compelling) reasons to believe that corporations pose risks to, threaten to harm, have harmed, and will continue to harm residents' environmental rights. Fracking waste disposal is a relatively new activity in Pennsylvania, with known and unknown risks. The Township has legitimate (and compelling) reasons to prohibit corporations from engaging in the depositing of oil and gas waste within the Township.

17. The Township has an obligation -- a duty -- to protect its residents' environmental rights. We not only believe it makes sense – it is logical, legitimate, rational, and necessary -- but, it is our *duty* to protect people's health and the environment.

18. Many residents of Township asked the Supervisors to take action to address the threat posed by fracking waste.

19. The people have a right to clean air and water. We do not have to stand by while the people's water supply is threatened, and its air quality and scenic landscape harmed.

We do not have to wait for a Flint, Michigan incident. We understand our public trustee duties to be much greater. We understand that once the environmental degradation has occurred, once the waste has been injected, we cannot just go backwards. It takes years for the environment to heal and it may never heal. These are unacceptable impacts and risks.

20. In passing the Ordinance, the Township determined that corporations should not have greater rights than people. The people have the fundamental and inherent right of local, community self-government. Section 2(a) of the Ordinance enumerated that right. The popularly enacted Grant Township Charter now also enumerates that right.

I sign this Declaration subject to the penalties for unsworn verifications pursuant to Pennsylvania law.

Dated: January 9, 2018.

_____
Jon Perry
Grant Township Supervisor, Chairman