UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNSYLVANIA GENERAL ENERGY COMPANY, L.L.C.<br><br>Plaintiff,<br>vs.<br><br>GRANT TOWNSHIP,<br><br>Defendant. | Case No. 1:14-cv-209<br><br>Magistrate Judge Susan Paradise Baxter |

**DECLARATION OF SUPERVISOR JON PERRY IN OPPOSITION TO
<u>PGE'S MOTION FOR ATTORNEY'S FEES</u>**

I, Jon Perry, being an adult over the age of 21 years, and competent to make this unsworn Declaration, do hereby make the statements below, which are true and correct to the best of my knowledge and belief, subject to the penalties for unsworn declarations pursuant to Pennsylvania law:

1. My name is Jon Perry, and I serve as one of the Supervisors for Grant Township. Grant Township is a small rural town in Pennsylvania with a population of approximately 700 people. I have been a Supervisor for about three years. The Supervisors act as the legislative body for the Township.

2. As a Supervisor, I review the Township's audited financial statements. I work closely with the Township's Secretary/Treasurer and I am familiar with the Township's budget and financial situation.

3. In my Declaration, dated June 26, 2017, filed in support of Grant Township's Opposition to PGE's Renewed and Supplemental Motion for Sanctions, I made the general statement that the Township's average account balance ranges between $100,000 to $118,000, and attached our audited annual budget for 2016 fiscal year.

4. An average account balance means the average of the total funds Grant Township has in its account over a 12-month period (January 1 through December 31). My June 26, 2017 Declaration said that the 2016 fiscal year showed total revenues of $534,603 and expenditures of $441,109, for a balance of $93,494. The 2016 total revenue number included both the Township's total general revenue and revenue from the state.

5. The 2016 balance was not surplus, but rather over 75% of it was already allocated for specific uses.

6. PGE has misinterpreted my statement, and relied on our 2016 annual budget, to mean that Grant Township has its average account balance available to pay PGE's attorney's fees without bankrupting the Township.

7. As explained in this Declaration, PGE's rudimentary understanding of Grant Township's financial situation is incorrect. It fails to account for the minimal budget necessary to perform critical governmental functions and for the state funds that were included as part of the 2016 total revenues and that are restricted only for certain uses.

8. A more detailed look at Grant Township's revenue and expenses explains why an award of attorney's fees in the amount sought by PGE will bankrupt Grant Township.

9. Even without a more detailed breakdown, PGE's conclusion that Grant Township could afford to pay it approximately $102,000 does not make sense. Even if Grant Township had as much as $100,000 in unrestricted and unallocated funds – which it does not – a judgment of $102,979.18 would leave it with no money, and, for the reasons I explain in this declaration, a judgment in any amount would leave it unable to operate.

10. The Township maintains separate accounts for funds in the general fund versus funds from the state.

11. Funds in the general fund come from property taxes, permit fees and rents. The majority of the funds in the general revenue fund come from property taxes. Each year there are a number of residents (approximately 35 households) who already face possible foreclosure because of their inability to pay property taxes. Raising property taxes to pay a judgment is not feasible and would likely cause a significant percentage of people in the community to lose their homes.

12. Approximately 90% of state funds come from money collected under the Liquid Fuels Tax Act of 1931. The funds allocated to Grant Township must be deposited into a separate fund and can only be used for equipment, construction, maintenance and repair of roads.

13. Because of the strict restrictions on how these state funds are to be spent, my understanding is that the Township cannot use them to pay attorney's fees or to satisfy a court judgment.

14. Grant Township's general fund from the Township's revenues supports the Township's operations to serve the community of Grant Township, including payroll, street lights, and fire protection.

15. In 2017 the total revenue in the general fund was $114,220.73. In 2017, the Township expenditures to be paid out of the general fund totaled $130,599.05, consisting of $79,546.00 in payroll and $51,053.05 for general operating expenses, auditing expenses, and tax collector commission fees.

16. So, in 2017, Grant Township's general fund was deficient in the amount of $16,378.32.

17. For 2017, Grant Township's state funds totaled $247,729.11, and expenditures from state funds totaled $232,874.32, leaving the Township's state fund account with a balance of

$14,854.79. These remaining funds can only be used for limited purposes and it is impossible to use them to cover deficiencies in the general fund.

18. The Township is working hard to improve its financial situation and keep a minimum balance in reserve. A minimum balance is important for critical governmental functions and unexpected expenditures, such as for equipment maintenance and repairs. The budget is based on a scope of work and estimated expenditures. Many times expenses are more than planned. For instance, the equipment owned by Grant Township is old which causes it to break down more frequently.

19. For 2018, Grant Township's estimated general fund revenue is $147,040. Its 2018 estimated expenditures of funds from the general fund is $138,135. The Township's 2018 balance remaining after expenses will then be $8,905, but this does not take into account the existing deficit from last year.

20. The Township's estimated allocations from the state for 2018 is $320,500. Its estimated expenditures to be paid with state funds for 2018 total $179,100, leaving a remaining balance of $141,400 that can only be used for limited purposes, namely construction, maintenance and repair of county roads and bridges. Many of the roads in the Township are in need of repair. Pinevale Road, which is a main thoroughfare, is an example of a road in desperate need of repair, with road work for only part of it, costing anywhere from $60,000 to 78,000 to make it a dirt road, to $70,000 to $130,000 to tar and chip it, to $500,000 to $750,000 to pave it. The balance from state allocated funds cannot be used to pay for other critical government functions that must come out of the general fund.

21. Further, due to a state audit for years 2015 and 2016, which is still undergoing review, Grant Township may need to reimburse the state approximately $39,000, which would

need to be paid out of general funds. This would impact the 2018 and/or 2019 budget, pending final review of the appeal of the audit. This would mean that Grant Township would have an even greater deficit in its general fund.

22. The Township needs all the money that it has. It would not be able to operate without it. It would not be able to pay salaries, maintain roads, or perform critical government functions.

23. Grant Township does not have the means to pay attorney's fees to PGE in any amount -- not $500,000, not $100,000, and not $1,000.

24. If ordered to pay PGE's attorney's fees in the amount requested by PGE, Grant Township will be forced to file for municipal bankruptcy. An attorney's fees award in any lesser amount would likely still force Grant Township to file for municipal bankruptcy or, at the least, would cause it to suffer severe financial harm and hinder critical governmental functions.

I sign this Declaration subject to the penalties for unsworn verifications pursuant to Pennsylvania law.

Dated: May 16th, 2018

_____
Jon Perry, Grant Township Supervisor